Edward J. Wynne  (SBN 165819)
ewynne@wynnelawfirm.com
J.E.B. Pickett       (SBN 154294)
jebpickett@wynnelawfirm.com
WYNNE LAW FIRM
Wood Island
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
Telephone   (415) 461-6400
Facsimile    (415) 461-3900

Plaintiffs' Counsel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITRA ERAMI, MARIA MCGLYNN, BRITTANY SANCHEZ, individually and on behalf of other members of the general public similarly situated,<br><br>     Plaintiffs,<br>vs.<br><br>JPMORGAN CHASE BANK, National Association,<br><br>     Defendant. | Case No.: 2:15-cv-07728-PSG-PLA<br><br>**DECLARATION OF EDWARD J. WYNNE IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: March 5, 2018<br>Time: 1:30 p.m.<br>Courtroom: 6A<br>Hon. Philip S. Gutierrez |

I, Edward J. Wynne declare:

1. I am an attorney at law duly licensed to practice in all the courts of the State of California and am admitted to practice in this District Court. I am an attorney at Wynne Law Firm, attorneys of record for Plaintiffs herein.

## Adequacy of Counsel

2. I graduated with honors from the University of California at Berkeley in 1989. I graduated from the University of Santa Clara Law School in 1992. I am admitted to practice law before the following courts: United States Court of Appeals, Ninth Circuit, United States District Court for all Districts of California, and all of California's state courts.

3. My practice has been devoted to complex class action litigation for the past twenty-three years. Much of this litigation has involved class action prosecution of the wage and hour laws in both state and federal courts.

4. I have tried to judgment the only known misclassification class action in California at both the liability and damages phases which resulted in the published opinion *Duran et al. v. U.S. Bank, N.A.*, 59 Cal.4th 1 (2014). The Supreme Court called it "an exceedingly rare beast." *Id.* at 12. The case was remanded back to the Superior Court where class certification was denied. The matter is now in the Court of Appeal. While the judgment has been reversed, the opinion is a watershed case that will stand with *Sav-on v. Superior Court,* 34 Cal.4th 319 (2004) and *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004 (2012) as one of the pillars in wage and hour litigation because it holds that "[s]tatistical sampling may provide an appropriate means of proving *liability* and damages" in class action litigation (*id.* at 13), and found that defendants do "not have an unfettered right to present individualized evidence in support of a defense," let alone "a due process right to litigate an affirmative defense as to each individual class member." *Id.* at 34, 38. In addition, the opinion reaffirmed in the strongest sense California's public policy in favor of the class action device and

employee protections, by, *inter alia*, citing with approval Justice Werdegar's concurring opinion in *Brinker*.

5. In 2012, I tried, along with co-counsel, a certified wage and hour class action that was in its fourth month of trial in San Diego County when it settled. The case - *Puchalski et al. v. Taco Bell Corp.* (San Diego County Superior Court Case GIC 870429) - was tried under California's executive exemption. The case was single phased for liability and damages with a planned second penalty phase. Plaintiffs completed their case-in-chief which consisted of putting on 28 class member witnesses, two expert witnesses, and a number of corporate witnesses. Defendant had completed approximately 5 of its own witnesses in its case when the parties reached a settlement.

6. I was counsel in *Sav-on v. Superior Court,* 34 Cal.4th 319 (2004), a certified class action of over 1,500 managers of Sav-on stores in California seeking earned and unpaid overtime compensation and derivative penalties under the California Labor Code. The California Supreme Court opinion affirmed the trial court's grant of class certification which had been reversed by the court of appeal in a published decision. The issue at the heart of the *Sav-on* opinion is of paramount importance to all California attorneys practicing in the area of wage and hour law because it focuses on the whether the predominance element of certification can be established in an action seeking overtime compensation. The issue has been, and continues to be, one of hot debate among practitioners in this field due to the "fact intensive inquiry" articulated in *Ramirez v. Yosemite Water Company,* 20 Cal.4th 785 (1999) under California's quantitative standard. Should Wynne Law Firm and its co-counsel not have prevailed before the California Supreme Court, there is little doubt employees would have faced tremendous hurdles in recovering back wages in anything but single-plaintiff cases which puts the employee at a decided disadvantage to the employer.

7. I have litigated or am in the process of litigation over 50 wage and

hour class actions in both state and federal court on the issues of overtime compensation (*Albrecht v. Rite Aid Corp.*, San Diego County Superior Court, 729219), meal and rest breaks (*Winfrey v. Chief Auto Parts,* San Francisco County Superior Court, CGC 95-974016), vacation pay (*Leung v. Rite Aid Corp.*, Los Angeles County Superior Court, BC 214742*),* final payments at time of termination (*Nelson-Rupp v. The Gap*, Orange County Superior Court, 00CC12661), off-the-clock compensation (*Scura v. Shurgard,* USDC, N. Cal., 02-4506), and minimum wage violations (*Iriarte v. Rubio Arts*, Los Angeles County Superior Court, BC340377), to name a few.  I have litigated or am litigating class actions under the executive exemption (*Aguardo v. Pizza Hut, Inc*., San Francisco County Superior Court, 994947), the administrative exemption (*Burakoff et al. v. USBancorp.* Los Angeles County Superior Court, BC341430), the outside sales exemption (*Duran v. US Bank*, Alameda County Superior Court, 2001-035537), the commissioned sales exemption (*Schmoekel v. VALIC*, USDC, C. Cal., 06-5282), the professional exemption (*Kress et al. v. PricewaterhouseCoopers LLP*, USDC E. Cal. 08-00965) and the exemption for drivers (*O'Donnell v. Starving Students*, Marin County Superior Court, CV 004930).

8.   I have been recognized as one of California's "Top Labor and Employment Lawyers" by the *Daily Journal* in 2014.  I have been recognized by *Northern California Super Lawyers Magazine* in the area of Labor and Employment since 2012.

9.   I have invited to speak and write specifically on wage and hour issues before various forums including, the Labor and Employment Section of the California State Bar Association's 2004 Annual Meeting in Anaheim, California, the Los Angeles County Bar Association in Los Angeles, California, the Santa Clara County Bar Association in Santa Clara, California, Bridgeport's 2007, 2009, 2010, 2012 and 2016 Continuing Education Conferences in San Francisco, California, the *Employment Law Reporter* of the Labor and Employment Section

of the California State Bar, the radio program "Your Legal Rights" of KALW, San Francisco, California, and Mealy's *Wage & Hour Litigation Teleconference*.

### Investigation and Recommendation of Counsel

10.  Incorporated by reference herein is the Statement of Facts set forth in the Motion for Preliminary Approval.

11.  Prior to and subsequent to the filing of this action, I conducted an informal investigation by conducting interviews with my clients and other employees and reviewing documents provided by my clients and publically available documents regarding Defendant's policies and practices.

12.  In April 2015, I prepared and distributed a Newsletter that was sent to every Chase branch in California advising ABMs that an action had been filed, apprising them of the allegations, and providing my contact information. This mailing generated responses from ABMs who were interviewed and also sent questionnaires to gather further information about their experiences as Chase ABMs. The interviews and questionnaire responses were subsequently turned into declarations. Subsequent newsletters were also sent out in July 2015 and November 2015. These subsequent mailings also generated additional evidence.

13.  Both sides propounded written discovery on each other. Plaintiff propounded interrogatories and requests for production on Defendant. In response to Plaintiff's requests, Defendant produced over 9,600 documents and over 17,000 ESI documents.

14.  As a result of a motion to compel, I was given contact information for 200 of the approximately 2,000 putative class members. Upon receipt of the class data, I created and caused to be sent a questionnaire to putative class members and started the process of gathering declarations. I ultimately obtained 118 declarations from putative class members.

15.  During the course of my investigation with putative class members, I determined that Defendant had effectively eliminated the ABM position in many

branches and in so doing gave its employees a choice of taking a lesser role with less pay or accepting a severance package with a release of claims.

16. Because Defendant was making an argument about Erami's standing to bring a PAGA action, rather than fight that battle, I determined that it was in the class' best interest to add two additional plaintiffs whom Defendant could not make the same objection. Accordingly, the complaint was amended to add Sanchez and McGlynn as additional named plaintiffs.

17. These additional plaintiffs, Sanchez and McGlynn, also allowed Plaintiffs to challenge Defendant's arbitration clause in its employment agreement which I did by filing separate complaints against Chase with the National Labor Relations Board alleging that the class action waiver in Chase's arbitration agreements violated Section 7 of the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. Plaintiffs actively participated in the NLRB's prosecution of this claim by providing relevant documents and testimony.

18. On September 16, 2016, the parties filed a stipulation and request to stay the action pending mediation which was granted. The parties thereupon agreed to mediation before Mark Rudy.

19. In preparation for mediation, Defendant provided Plaintiffs with key material facts regarding the number of putative class members, number of workweeks, average compensation, and number of former employees versus currents. Also in preparation for mediation and class certification, I hired Stanford University Professor Jon Krosnick, Ph.D. to conduct a survey on the ABMs with respect to their activities and hours. With Plaintiffs' assistance, Dr. Krosnick conducted his survey in December 2016.

20. On January 18, 2017, the parties conducted a mediation with Mark Rudy. While no settlement was reached that day, the parties continued to negotiate. Specifically, in February 2017 Plaintiffs joined efforts with plaintiffs from two other consolidated cases pending in the Southern District of New York

similarly alleging that ABMs had been misclassified under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, and various state laws in an attempt to reach a global settlement. *Varghese v. JP Morgan Chase* and *Taylor et al. v. JP Morgan Chase*, USDC SD NY Consolidated Case No. 14 Civ. 1718 (PGG). Chase provided additional information related to the size of the respective cases in terms of workweeks, the number of workweeks covered by releases, and the number of workweeks covered by arbitration agreements. The data showed that of the approximate 240,000 workweeks covered by ABMs in California, 30% of those workweeks are covered by a release of claims and 56% of those workweeks were covered by an arbitration agreement.

21. In May 2017, the three plaintiff cases reached an agreement with Chase to settle all cases for $25 million with the *Erami* case receiving $8,333,333 of that amount. The *Erami* plaintiffs and Chase subsequently negotiated the terms of a Memorandum of Understanding which was executed on August 16, 2017. After receipt of the formal Settlement Agreement, the parties continued to negotiate the terms of the settlement.

22. All of the named Plaintiffs worked as ABMs for Chase in California during the class period. All of the named Plaintiffs allege that they were primarily engaged in teller and/or sales-type activities and all customarily and regularly worked over 40 hours in a week. I am not aware of any conflicts of interests between the Plaintiffs and the absent class members.

23. Based on my investigation, the discovery exchanged, and the data received from Defendant in preparation for mediation an my analysis of the legal issues presented and the procedural posture of this case at the time of mediation, I had a clear understanding of the risks involved in further litigation and the amount the class would have recovered had they ultimately prevailed at trial.

24. Based on my education, experience and my evaluation of the risks involved compared to the likelihood of recovery in the context of the factual and

procedural posture of this case, I concluded that an all-cash, semi-reversionary settlement of $8,333,333 at this juncture is fair, reasonable and adequate and in the best interests of the class and I fully support this settlement.

25. I am not aware of any evidence to suggest that the settlement was reached in anything other than an arm's-length transaction and all facts point to vigorous advocacy on both sides.

### **Summary of Settlement Terms**

26. The details of the settlement are set forth in the Joint Stipulation of Class Action Settlement and Release marked and attached hereto as Exhibit 1. A summary of the terms are set forth below:

- In return for a release of claims pled in the Third Amended Complaint, Defendant shall make available $8,333,333 ("Settlement Amount"). After deductions for the Service Enhancements to the Class Representatives, Settlement Administration Expenses, the Reserve Fund, attorneys' fees and out-of-pocket litigation expenses, and the LWDA's share of PAGA penalties ("Net Settlement Amount"), settlement payments shall be allocated to the Settlement Class for allegedly unpaid wages, overtime, premium wages, and related fees, interest, and penalties and paid to all participating class members who timely submit claim forms.

- The Settlement Amount has a guaranteed minimum payout of 65%. In the event that class members do not claim a minimum of 65% of the Net Settlement Amount, the difference between the claimed amount and 65% of the Net Settlement Amount shall be distributed pro rata to the participating class members.

- The settlement class is defined as follows: All employees of JPMorgan Chase Bank N.A. who were employed in California at any time from February 25, 2011 to the date of Preliminary Approval of this Settlement holding one or more of the following titles: Assistant Branch Manager, Assistant Branch Manager –

1  Ops, Assistant Branch Manager – Sales, Assistant Branch Manager In-Store III, and Assistant Branch Manager In-Store IV.

- From the Settlement Amount, Defendant has agreed to pay, subject to Court approval, an attorney's fee award of $2,777,777 or 33% of the Settlement Amount and actual costs up to $55,000.

- From the Settlement Amount, Defendant has agreed to pay, subject to Court approval, services awards to plaintiffs Erami, McGlynn and Sanchez in the amount of $5,000 each.

- From the Settlement Amount, Defendant has agreed to pay $75,000 to the LWDA in satisfaction of Plaintiffs' claim under Labor Code § 2699 *et seq.*

- Subject to Court approval, the parties have agreed on KCC as the Settlement Administrator. After updating the database provided by Defendant through the National Change of Address database, the Claims Administrator will mail the Notice and Claim Form to each class member including the URL of an interactive, password protected website. The interactive website will allow class members to complete and file a Claim Form online as well as view and download the Notice and Claim Form. The Claims Administrator will also have live telephone support for any class member requests or inquiries. The cost of the notice and claims procedure is estimated to be $26,500. A true and correct copy of the bid from KCC is marked and attached hereto as Exhibit 2.

27. Attached as exhibits to the Joint Stipulation of Class Action Settlement and Release are the following exhibits marked as exhibits A, B, C, D, E, and F respectively: (A) Class Notice, (B) Claim Form, (C) Third Amended Complaint, (D) Reminder Card, (E) Proposed Order Granting Preliminary Approval, (F) Proposed Order Granting Final Approval.

### The Amount Offered In Settlement

28. Plaintiffs faced the following challenges as outlined in detail in the Motion for Preliminary Approval: (1) denial of class certification; (2) Defendant

prevailing on one of its affirmative defenses of the administrative or executive exemptions; (3) enforcement of Defendant's arbitration agreements; (4) enforcement of Defendant's severance agreements. Even were Plaintiffs to prevail at every stage of litigation and prevail at trial, appeal also presents real and substantial risks – and not just delay – as this Counsel has personally experienced.

29. The gross settlement amount is $8,333,333. The net settlement amount is approximately $5,335,000 and there are approximately 2,000 class members. On a simple head-count basis, the average net recovery per class member is approximately $2,670. Viewed from the perspective of a workweek basis, the net recovery amounts to $22.22 per workweek ($5,335,000 / 240,000) or over $4,600 for a class member who was employed as an ABM during the statutory coverage of the action. Putting this amount in perspective, this Court approved a settlement in the similar *Hightower* case which had an average recovery of $200 per class member. *Hightower v. JPMorgan Chase Bank*, C.D. Cal. Case No. 11-cv-01802-PSG (PLAx) (Gutierrez, J.) (Dkt. 214).

30. Given all the risks of continued litigation as identified above, the amount offered in settlement of $8,333,333 is a substantial settlement in the best interests of the class.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 11th day of January, 2018, at Larkspur, California.

/s/Edward J. Wynne
Edward J. Wynne