# EXHIBIT 1

Edward J. Wynne (SBN 165819)
ewynne@wynnelawfirm.com
J.E.B. Pickett (SBN 154294)
jebpickett@wynnelawfirm.com
WYNNE LAW FIRM
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile:  (415) 461-3900

Attorneys for Plaintiffs
MITRA ERAMI, et al.

CARRIE A. GONELL (SBN 257163)
carrie.gonell@morganlewis.com
ALEXANDER L. GRODAN (SBN 261374)
alexander.grodan@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626
Tel:   (714) 830-0600
Fax:   (714) 830-0700

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MITRA ERAMI, MARIA MCGLYNN, BRITTANY SANCHEZ, individually and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br>        vs.<br><br>JPMORGAN CHASE BANK, National Association,<br><br>        Defendant. | Case No.: 2:15-cv-07728-PSG-PLA<br><br>**JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE** |

0

# I. INTRODUCTION

1.     This Joint Stipulation of Class Action Settlement and Release (hereinafter "Settlement Agreement") is made and entered into by and between the following parties: Plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez, individually and on behalf of other members of the general public similarly situated (collectively, "Plaintiffs"), Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase") (together, "the Parties"), and their respective counsel of record.  This Settlement Agreement is subject to the terms and conditions set forth below and to the approval of the Court.  This Settlement Agreement supersedes any and all prior memoranda of understanding and accurately sets forth the Parties' class action settlement to resolve all claims as detailed below.

# II. DEFINITIONS

2.     "Action" means the lawsuit entitled *Erami, et al., v. JPMorgan Chase Bank, National Association*, Case No. 2:15-cv-07728-PSG-PLA, pending in the Central District of California.

3.     "Claim Form" means the document attached hereto as Exhibit B.

4.     "Claims Period" shall mean the sixty (60) day period following the mailing of the Settlement Documents by the Settlement Administrator.  If the 60th day falls on a Sunday or holiday, the Claims Period shall end on the next business day that is not a Sunday or holiday.

5.     "Class" means all employees of Defendant who worked in California during the Class Period in a Class Position.

6.     "Class Counsel" or "Plaintiffs' Counsel" means Wynne Law Firm of Larkspur, California.

7.     "Class Member" means each person eligible to participate in this Settlement who is a member of the Class defined above.

8.     "Class Notice" shall mean the document attached hereto as Exhibit A.

1

9.      "Class Period" means the period between February 25, 2011, and the Date of Preliminary Approval, inclusive.

10.     "Class Position(s)" means any exempt Assistant Branch Manager ("ABM") position – including the job titles Assistant Branch Manager, Assistant Branch Manager – Ops, Assistant Branch Manager – Sales, Assistant Branch Manager In-Store III, and Assistant Branch Manager In-Store IV – for Defendant in California during the Class Period.

11.     "Class Representatives" means Plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez, who have been designated by Plaintiffs' Counsel as Class Representatives for settlement purposes.

12.     "Complaint" means the Third Amended Complaint in this Action.  A copy of the Third Amended Complaint is attached as Exhibit C.

13.     "Court" means the District Court in the Central District of California.

14.     "Date of Preliminary Approval" means the date the Court approves this Stipulation of Settlement, and the exhibits thereto, and enters an Order providing for notice to the Class, an opportunity to opt-out of the Class, an opportunity to submit timely objections to the settlement, a procedure for submitting claims, and setting a hearing for Final Approval of the Settlement, including approval of attorneys' fees and costs.

15.      "Deficient Claim Form" means a Claim Form that is not signed by the Class Member submitting the Claim Form or cannot be verified by the Settlement Administrator as being an authentic submission by the Class Member.

16.     "Deficient Claimant" means a Class Member that has submitted a Deficient Claim Form and has failed to cure its deficiencies within the time required by this agreement.

17.     "Deficient Opt-Out Form" means a Request for Exclusion that is not signed by the Class Member submitting the Request for Exclusion or cannot be

2

verified by the Settlement Administrator as being an authentic submission by the Class Member.

18.   "Deficient Opt-Out" means a Class Member that has submitted a Deficient Opt-Out Form and has failed to cure its deficiencies within the time required by this agreement.

19.   "Defendants' Counsel" means Morgan, Lewis & Bockius LLP.

20.   "Late Claim Form" means a Claim Form that is submitted to the Settlement Administrator after the end of the Claims Period.

21.   "Late Claimant" means a Class Member that has submitted a Late Claim Form.

22.   "Late Opt-Out Form" means a Request for Exclusion that is submitted to the Settlement Administrator after the end of the Claims Period.

23.   "Late Opt-Out" means a Class Member that has submitted a Late Opt-Out Form.

24.   "LWDA" means the California Labor and Workforce Development Agency.

25.   "The LWDA PAGA penalty amount" is the 75% share of the $100,000 allocated from the Maximum Settlement Amount for PAGA penalties that will be paid to the LWDA.

26.   "Maximum Settlement Amount" is the sum of Eight Million Three Hundred and Thirty-Three Thousand and Three Hundred and Thirty-Three U.S. Dollars ($8,333,333), which represents the maximum amount payable in this Settlement by Settling Defendants, and includes all attorneys' fees, litigation costs, claims administration fees, and incentive payments to the Class Representatives. The Maximum Settlement Amount does not include the employer's share of payroll taxes which Chase is responsible for.

27.   "Named Plaintiffs" means Plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez collectively.

3

28.   "Net Settlement Amount" is the portion of the Maximum Settlement Amount eligible for distribution to Qualified Claimants.  It equals the Maximum Settlement amount less Class Counsel's attorneys' fees and actual litigation costs, Settlement Administration Expenses, the Reserve Fund, payment to the LWDA for the settlement of PAGA penalties, and Service Enhancements to the Class Representatives.

29.   "PAGA" shall mean the California Labor Code Private Attorneys General Act, California Labor Code §§ 2698 *et seq.*

30.   "Parties" means collectively Plaintiffs and Defendant herein.

31.   "Qualified Claimant" means a Class Member who has timely submitted a correctly completed Claim Form to the Settlement Administrator and who has not opted-out of the Settlement, *i.e.*, one who has not timely submitted a valid Request for Exclusion from the Settlement to the Settlement Administrator.

32.   "Request for Exclusion" and "Opt-Out Form" means a written request from a Class Member to be excluded from this Settlement.

33.   "Reserve fund" means the amount of $50,000 from the Maximum Settlement Amount used to pay late or self-identified claims, or disputed allocations.

34.   "Service Enhancement" means the incentive payments in an amount not to exceed $15,000 total to the Class Representatives.

35.   "Settlement Administration Expenses" are those expenses incurred by the Settlement Administrator in effectuating the Settlement.

36.   "Settlement Administrator" means KCC, LLC.

37.   "Settlement Class Member" means any member of the Settlement Class who does not opt out of the settlement or who opts out but subsequently rescinds the opt-out in a timely manner.

38.   "Settlement Documents" means the Class Notice (Exhibit A) and the Claim Form (Exhibit B) attached hereto.

4

39.    "Settlement Effective Date" means the latter of: (i) the date of final affirmance of an appeal of the Order and Final Judgment, or the expiration of the time for a petition for a writ of certiorari to review the Order and Final Judgment and, if certiorari be granted, the date of final affirmance of the Order and Final Judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Order and Final Judgment or the final dismissal of any proceeding on certiorari to review the Order and Final Judgment; or (iii) if no appeal is filed, five days after the expiration date of the time for the filing or noticing of any appeal from the Order and Final Judgment.

40.    "Settling Defendants" means Defendant, JPMorgan Chase Bank, N.A., its affiliates, divisions, subsidiaries, parents (including, without limitation, JPMorgan Chase & Co.), predecessors (including Washington Mutual Bank and Washington Mutual, Inc. and their affiliated and related entities), any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, shareholders and/or successors, assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof.

41.    "Stipulation of Settlement" and "Settlement Agreement" shall mean this Joint Stipulation of Settlement and Release.

## III.   LITIGATION BACKGROUND

42.    On February 25, 2015, Mitra Erami filed a putative class action complaint in Solano County Superior Court seeking to recover overtime compensation, compensation for missed meal and rest breaks, waiting time penalties pursuant to Labor Code § 203, wage statement penalties, and injunctive and declaratory relief on behalf of herself individually and by a class of allegedly similarly situated ABMs in California.  Erami sought, *inter alia*, class-wide damages and restitution for overtime and meal and rest break violations, interest thereon, injunctive relief, costs and attorneys' fees pursuant to Business and Professions Code §§ 17200 *et seq.*, and other provisions of law.

5

43.    On April 1, 2015, Defendant removed Erami's complaint to the Eastern District of California.

44.    On May 19, 2015, Erami filed a First Amended Complaint ("FAC") adding representative claims under PAGA for the underlying Labor Code violations asserted in the original complaint.

45.    On June 4, 2015, the court in the Eastern District granted Erami's request to transfer her action to the Northern District due to an error in filing the original complaint in Solano County, where Erami did not reside.  On September 28, 2015, the court in the Northern District granted Defendant's request to transfer to the Central District of California pursuant to 28 U.S.C. § 1404(a).

46.    Erami filed a Second Amended Complaint ("SAC") on March 7, 2016, adding two new plaintiffs, Maria McGlynn and Brittany Sanchez, to the FAC.

47.    On December 11, 2017, Plaintiffs filed a Third Amended Complaint, adding claims under the Fair Labor Standards Act ("FLSA").

48.    Defendant denies Plaintiffs' claims, and asserts that, during all relevant times, Class Members were properly classified as exempt from overtime and meal and rest break requirements under California law.  Defendant also asserts that Class Members were provided with meal and rest breaks in accordance with California law.  Defendant also asserts that, at all times, Class Members received wage statements that were compliance with the Labor Code and that Class Members who ended their employment with Defendant during the Class Period were properly compensated for all wages due as required by California law.  Consequently, Defendant does not believe that any liability to Plaintiffs or Class Members exists, or that Plaintiffs or Class Members are entitled to any recovery.  In addition, Defendant contends that Plaintiffs claims are not suitable for class treatment.  Defendant also contends certain Settlement Class Members (including some of the Named Plaintiffs) agreed to arbitrate their claims on a non-class basis pursuant to Defendant's Binding Arbitration Agreement.

6

49.     After extensive written discovery and shortly before briefing on class certification was scheduled to commence, the Parties agreed to attempt to resolve this action through private mediation.  On September 20, 2016, the Court approved the Parties' stipulation to stay this Action pending mediation.  And then administratively closed the case on November 18, 2016.

50.     On January 18, 2017, the Parties participated in a mediation with Mark Rudy, who made a mediator's proposal that was subsequently rejected by both parties on January 30, 2017.  The Parties nonetheless continued to negotiate and agreed in principle to settlement terms on July 6, 2017.  The Parties executed a Memorandum of Understanding on August 16, 2017.

51.     It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims against the Released Parties arising from or related to the Action.  On December 11, 2017, the Parties jointly requested that the Court reopen this Action for settlement purposes only.

52.     It is the intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement and release of the claims averred in the Action.  This release includes in its effect a release of all the Released Parties.

## IV.   JURISDICTION AND VENUE

53.     This Court has jurisdiction over the Parties and the subject matter of this action.  This Court will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations provided for herein have been fully executed.

## V.    TERMS OF SETTLEMENT

54.     NOW, THEREFORE, in consideration of the mutual covenants, promises, and undertakings set forth herein, the Parties agree, subject to the Court's approval, as follows:

a.     **Non-Admission.**  Nothing in this Settlement shall be construed to be or deemed an admission by Settling Defendants of any

7

liability, culpability, negligence, or wrongdoing toward the Class Representatives, the Class Members, or any other person, and Settling Defendants specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Class Representatives, the Class Members, or any other person, or that class or collective certification is appropriate.  Each of the Parties has entered into this Stipulation of Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies.  This Settlement and any related court documents or orders between the parties may not be cited or otherwise admitted as evidence of liability or that class or collective certification is appropriate.  There has been no final determination by any Court as to the merits of the claims asserted by Plaintiffs against Settling Defendants or as to whether a class should be certified, other than for settlement purposes only.  Furthermore, nothing in this Settlement shall be considered any form of waiver of any Chase alternative dispute resolution provisions or any other applicable alternative dispute resolution policy.

b.     **Certification.**  The Parties stipulate to the certification of the Class described in Paragraph II.5 above for settlement purposes only.  The parties further stipulate that, for settlement purposes only, Plaintiffs' Counsel may be appointed Class Counsel and that Named Plaintiffs may be appointed as Class Representatives.  Chase's stipulation to this settlement class shall in no way be considered any form of waiver of any form of alternative dispute resolution, including the provisions contained in Chase's Binding Arbitration Agreement, applicable to some

8

Class Members.  Chase's stipulation to this settlement class shall not be construed as an admission or acknowledgment of any kind that any class should be certified or given class action treatment.  The Settlement Class may be provisionally certified as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the monetary relief provided in this Settlement Agreement. Plaintiffs' Counsel, Wynne Law Firm, may be preliminarily and conditionally appointed as Class Counsel.

c.    **Non-Approval By The Court.**  In the event that this Settlement Agreement is not approved by the Court, fails to become effective, or is reversed, withdrawn or modified by the Court:

i.    The Settlement Agreement shall have no force or effect, other than the confidentiality and non-disclosure provisions in Section XIV and the non-admission provisions in Paragraph V.54.a;

ii.   The Settlement Agreement shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural;

iii.  The preliminary and conditional certification of the class shall become null and void, and the fact of certification shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and

iv.   None of the parties to this Settlement Agreement will be deemed to have waived any claims, objections, defenses or arguments with respect to the issue of class or collective certification or the merits of Plaintiffs' claims.

9

d.   **Settlement Payments.** Defendant agrees to pay a Maximum Settlement Amount of Eight Million Three Hundred and Thirty-three Thousand and Three Hundred and Thirty-Three U.S. Dollars ($8,333,333), inclusive of all settlement payments, fees and costs identified in this Settlement Agreement, including Service Enhancements to the Class Representatives, Settlement Administration Expenses, the Reserve Fund, attorneys' fees and out-of-pocket litigation expenses, and the LWDA's share of PAGA penalties.  The Maximum Settlement Amount does not cover the employer-side payroll taxes which Defendant will be solely responsible for.  The parties agree, subject to Court approval, to the following allocations to be paid from the Maximum Settlement Amount:

i.   From the Maximum Settlement Amount, settlement payments shall be allocated to the Settlement Class for allegedly unpaid wages, overtime, premium wages, and related fees, interest, and penalties ("Net Settlement Amount").

ii.   From the Maximum Settlement Amount, provided there is no breach of this Agreement by Named Plaintiffs or their counsel, Class Counsel may seek from the Court a maximum of $2,777,777.67 (33 1/3%) of the Maximum Settlement Amount in attorneys' fees in addition to actual litigation costs of up to $55,000.00, for serving as Class Counsel, which Chase will not oppose.

iii.   From the Maximum Settlement Amount, provided there is no breach of this Agreement by Named Plaintiffs or their counsel, Named Plaintiffs may each seek from the Court a

10

Service Enhancement not to exceed a collective total of $15,000 for serving as Class Representatives, which Chase will not oppose.

iv.     From the Maximum Settlement Amount, a payment of $75,000 to the California Labor and Workforce Development Agency, representing the LWDA's 75% share of the settlement attributable to PAGA penalties.  In connection with settlement approval, the LWDA shall be notified of the existence of the settlement.  Should the LWDA object to the amount of this payment, the parties agree to work in good faith to negotiate another agreeable amount.

v.      From the Maximum Settlement Amount, a Reserve Fund not to exceed $50,000 will be reserved for disputed, untimely, and self-identified claims.

vi.     From the Maximum Settlement Amount, Settlement Administration Expenses in a reasonable amount.

vii.    If the Court approves a lesser amount of attorney's fees, litigation costs, or Service Enhancements than those sought by Named Plaintiffs and their counsel, Plaintiff reserves the right to appeal any amount disallowed by the Court.  If no appeal is filed or upon final resolution of any appeal, the Parties agree that the settlement shall remain binding with such modification(s) and its terms will be otherwise unchanged.  Any amounts disallowed will remain with Defendant.

viii.   The Settlement Administrator will administer the notice, challenges, opt outs and objections to settlement

11

procedures, informing Class Members of their rights in regard to the proposed settlement as specified below; will disburse monies from the Settlement Fund as and when authorized in this Settlement Agreement and by order of the Court; will file and issue any necessary tax reporting documents; and will inform the Parties and the Court of its fulfillment of the duties imposed by this Settlement Agreement. Settlement Administrator Expenses shall be paid from the Maximum Settlement Amount.

ix. The "Net Settlement Amount" is the balance of the Maximum Settlement Amount including interest accruing to it, after subtracting the Reserve Fund and after payments have been made for attorneys' fees and litigation expenses including interest earned on those amounts, Settlement Administration Expenses, Class Representatives' Service Enhancements, and the LWDA PAGA penalty amount. The Net Settlement Amount shall be used to pay all amounts due to Qualified Claimants based on their weeks worked in Class Positions. In the event that Qualified Claimants do not claim a minimum of 65% of the Net Settlement Amount, the difference between the claimed amount and 65% of the Net Settlement Amount shall be distributed pro rata to the Qualified Claimants.

x. The Settlement Administrator shall, after final approval of the Settlement Agreement by the Court and after the Settlement Effective Date, pay each Qualified Claimant a pro rata portion of the Net Settlement Amount based on

12

1       the number of weeks he or she worked in Class Position.

2   That pro rata portion shall be determined by dividing the

3   total number of weeks worked in Class Positions during

4   the Class Period by all members of the Class into the

5   amount of the Net Settlement Amount to arrive at an

6   amount per week; then, for each eligible Class Member,

7   multiplying that amount times the number of weeks the

8   Settlement Administrator determines that such Class

9   Member was employed during the Class Period in a Class

10   Position.

11   xi.    The number of weeks worked by Class Members in Class

12   Positions shall be determined by the Settlement

13   Administrator based on employment records to be

14   provided by Defendant as specified below as well as any

15   documents and evidence provided by the Class Member

16   and/or Class Counsel.  Class Members shall have the right

17   to challenge the number of weeks worked reflected in

18   Defendant's records.  For such disputed claims,

19   Defendant's records will be presumed accurate.  If a Class

20   Member disputes those records, he or she has the burden

21   to establish otherwise.  Payments on disputed claims will

22   be made at the discretion of the Settlement Administrator

23   following a conference with Defendants' Counsel and

24   Class Counsel and, to the extent possible, resolved prior

25   to finalizing the amounts distributable to Class Members.

26   xii.    Class Members entitled to recover under this Settlement

27   Agreement will include only those individuals who are

28   identified on Defendant's records as having worked as an

13

exempt ABM in California during the Class Period, or those additional individuals who can provide to the Settlement Administrator evidence that they worked in that capacity notwithstanding the absence of Defendant's records confirming such employment.

xiii.  The Settlement Administrator shall issue settlement checks to Qualified Claimants under this Agreement, as well as Service Enhancements to the Class Representatives and attorneys' fees and expenses awarded to Plaintiffs' Counsel by sending such payments by mail or other reliable means to the respective recipients as specified below.

e.  **Objections**.  Only Qualified Claimants who file timely and proper Claim Forms may object to the Settlement.  Class Members who opt-out of the Settlement are not eligible to object to the Settlement.  All objections must be filed with the Court and served upon all counsel of record no later than sixty (60) days after the mailing of the Settlement Documents, and such deadline applies notwithstanding any argument regarding non-receipt of the notice.  Anyone who fails to file and serve timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement and from filing any appeal from any final approval order issued by the Court.  The Parties may file a response to any objections submitted by objecting Class Members at or prior to the hearing for final approval of the Settlement.  Class Members shall be permitted to withdraw their objections in writing by submitting a withdrawal statement to

14

the Settlement Administrator not later than one (1) business day prior to the Court's final approval hearing, or as otherwise ordered by the Court.

f.   **Opt Outs**.  Class Members who wish to "opt-out" of and be excluded from the settlement must submit a written Request for Exclusion from the Settlement bearing a post-mark from a date within the Claims Period.  The request to opt-out must include (a) the Class Member's name, (b) a statement that the Class Member desires to exclude himself or herself from the case, and (c) the last four digits of the Class Member's social security number.  If a Class Member submits a Deficient Opt-Out, the Settlement Administrator shall notify the Class Member of the deficiency within five (5) business days of receipt.  The Class Member shall have until the end of the Claims Period or five (5) business days after the close of the claims period if the notice of deficiency is sent by the Settlement Administrator within (5) business days of the end of the Claims period to cure said deficiencies, at which point his or her Request for Exclusion will be rejected if not received.  Class Members submitting untimely or Deficient Opt-Outs shall be bound by the Settlement and its releases but will not be considered Qualified Claimants for settlement distribution purposes.  If a Class Member submits both a Claim Form and a Request for Exclusion, the Claim Form will control and the Class Member will be considered a Qualified Claimant. Class Members shall be permitted to rescind their opt out statements in writing by submitting a rescission statement to the Settlement Administrator not later than one (1) business day prior to the Court's final approval hearing, or as

15

1    otherwise ordered by the Court.  The Settlement Administrator

2    shall not accept Late Opt-Out Forms without the written

3    authorization of Defendant.

4    g.    **<u>Claim Forms</u>**.  Class Members shall be sent a Claim Form

5    which will state the approximate amount of the Class Member's

6    recovery from the Net Settlement Amount and the dates of

7    employment that the Class Member worked in a Class Position

8    during the Class Period.  The Claim Form will provide

9    instructions on how to make a claim and contain a summary

10   release of claims.  In order to be considered a Qualified

11   Claimant, the Class Member must sign the Claim Form and have

12   it postmarked or actually received by the Settlement

13   Administrator within the Claims Period.  The Parties agree to

14   accept Late Claim Forms so long as the Late Claim Forms are

15   received within one business (1) day of the Final Approval

16   hearing, provided that Late Claims Forms shall not cause

17   Defendant to pay more than the Maximum Settlement Amount.

18   h.    **<u>Claim Form for Named Plaintiffs</u>**.  Named Plaintiffs may file

19   a Claim Form and be eligible to receive their pro rata share of

20   the Settlement in addition to the amount they receive as a

21   Service Enhancement.  Class Counsel shall ensure that the

22   Named Plaintiffs timely file their Claim Forms.  Named

23   Plaintiffs shall not opt-out of or object to the settlement.

24   i.    **<u>Class Member Released Claims</u>**.  Upon Final Approval, each

25   Class Member who has not opted out of the Settlement shall be

26   deemed to have fully, finally, and forever released Settling

27   Defendants from all Settlement Class Released Claims as set

28   forth in Section IX.

16

j.    **Class Representative Released Claims**.  Upon Final Approval, the Class Representatives shall be deemed to have fully, finally, and forever released Settling Defendants from all claims covered by the General Release as set Forth in Section IX.

k.    **Entry of Judgment.**  At the Fairness Hearing, the Parties will request that the Court, among other things:  (a) certify the Settlement Class for purposes of settlement only; (b) enter a Final Order and Judgment in accordance with the terms of this Settlement Agreement; (c) approve the settlement as fair, adequate, reasonable, and binding on all Settlement Class Members; (d) dismiss the Action with prejudice; (e) enter an order permanently enjoining all Settlement Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement; and (f) incorporate the terms of this Settlement Agreement.

## VI.    SETTLEMENT ADMINISTRATION

55.    The Parties have agreed to the appointment of KCC, LLC to perform the duties of Settlement Administrator.

56.    The Settlement Administrator shall be responsible for and the Settlement Fund shall cover:  (a) calculating each Class Member's potential recovery of the Net Settlement Amount; (b) preparing and mailing Settlement Documents with estimated settlement payment amounts, and instructions on how to make a claim, opt out of, or object to the Settlement, to all Class Members, including taking appropriate steps to trace, update and locate any individual Class Members whose address or contact information as provided to the Settlement Administrator is inaccurate or outdated; (c) receiving and reviewing all Claim Forms to ensure completeness and timeliness; (d) receiving and serving on Plaintiffs' Counsel and Defendant's Counsel, and the Court, opt out statements,

17

copies of written objections, and any withdrawal and rescission statements; (e) providing to Class Counsel and Defendant's Counsel a weekly report of activity; (f) establishing a toll free telephone line and responding to inquiries and requests for information or assistance from Class Members; (g) maintaining the Settlement Fund account in an interest bearing account at a federally insured banking institution; (h) determining and paying the final amounts due to be paid to Qualified Claimants after adjustment for funds due to Class Members who opt out of the settlement, and re-apportionment of any amounts that cannot be distributed due to inability to locate Class Members; (i) reporting to Class Counsel, Defendant's Counsel, and the Court regarding the completion of the tasks identified in this paragraph; and (j) carrying out other related tasks including the proper maintenance of undisbursed Settlement Fund amounts in an interest bearing account and reporting required for that account, in accordance with the terms of this Settlement Agreement.

57.     All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations contemplated by the Settlement Agreement have been fully executed.

58.     When and if the Court grants Final Approval of the Settlement, and the Settlement Effective Date as defined herein has passed, the Settlement Administrator shall prepare a final list of all Qualified Claimants who timely submitted a valid Claim Form and did not opt-out of the settlement.  The Settlement Administrator shall provide this list to Chase within 5 days after the Settlement Effective Date.  For each Qualified Claimant on this list, the Settlement Administrator will re-calculate the amounts due to each Qualified Claimant and issue checks payable to said Qualified Claimants.

18

59.     Except for the Service Enhancement described above to be paid to the Class Representatives, all settlement payments to Qualified Claimants shall be allocated as follows:  unpaid wages (50% of each settlement payment), penalties (25% of each settlement payment) and interest (25% of each settlement payment). Chase is responsible for paying the employer tax contributions as required by law. The Class Representatives and Qualified Claimants must pay their own portion of payroll and income taxes on the 50% of each settlement payment that is unpaid wages, and such amounts will be withheld from settlement payments.  The Class Representatives and Qualified Claimants shall be exclusively liable for any and all tax liability, if any, other than for the employer tax contributions.  The Settlement Administrator shall calculate applicable federal and state deductions and timely provide information/data regarding such deductions to the Parties prior to distribution of funds.  All Parties represent that they have not received, and shall not rely on, advice or representations from other Parties or their agents or attorneys regarding the tax treatment of payments under federal, state, or local law.

60.     The Service Enhancement to the Class Representatives shall be treated as compensation for non-wage related claims, injuries, and reimbursement, and shall be reported on an IRS 1099 without withholdings.

61.     All portions of settlement payments to Named Plaintiffs and/or Qualified Claimants that are allocated as unpaid wages under this agreement shall be considered compensation for disputed hours worked during the period of employment with Chase by the individual Named Plaintiff and/or Qualified Claimant only.  To the extent any settlement payment results in any overpayment of unemployment benefits to any Named Plaintiff and/or Qualified Claimant, the amount of any such overpayment shall be the responsibility of the individual Named Plaintiff and/or Qualified Claimant.

19

## VII.   NOTICE TO THE SETTLEMENT CLASS MEMBERS

62.     Within fourteen (14) days after the Date of Preliminary Approval by the Court, Defendant shall provide to the Settlement Administrator information in electronic format regarding all Class Members, including name(s), last known residence addresses, Social Security numbers, and dates worked in Class Positions during the Class Period.

63.     Class data shall only be used by the Settlement Administrator for the purpose of calculating settlement shares and finding and notifying Class Members of the settlement.  Class data for Class Members shall not be disclosed to the Named Plaintiffs, Class Counsel, or any other Class Members without the written consent of Chase.

64.     Prior to mailing the Settlement Documents, the Settlement Administrator will update the addresses for the Class Members using the National Change of Address database and other available resources deemed suitable by the Settlement Administrator.  Any returned envelopes from the initial mailing with forwarding addresses will be used by the Settlement Administrator to locate Class Members and re-mail the Settlement Documents to the correct or updated address. The Settlement Administrator will use all appropriate tracing methods, including skip tracing, to ensure that the Settlement Documents are received by Class Members.  The Settlement Administrator shall also take reasonable steps including skip tracing to locate any Settlement Class member whose Class Notice is returned as undeliverable.

65.     Within twenty-one (21) days of receiving the class data from Defendant and after it has completed all of the address updates for Class Members, the Settlement Administrator shall mail the Class Notice to Class Members.  At least three (3) business days prior to this mailing, the Settlement Administrator shall provide Chase with a report listing the estimated settlement payment amounts to each Class Member.

66.     The Settlement Administrator shall host a website through which Class Members may submit claims as an alternative to responding by mail.

67.     Class Members shall have sixty (60) days from the date of mailing of the Settlement Documents to return valid Claim Forms (the "Claims Period") to the Settlement Administrator.  If the 60th day falls on a Sunday or holiday, the deadline to return Claims Forms will be the next business day that is not a Sunday or holiday.  Class Members who return valid, signed, and timely Claim Forms shall be deemed "Qualified Claimants" under the settlement.  After recalculating estimated settlement allocations to account for disputed claims, Qualified Claimants will receive their allocation from the settlement fund agreed upon pursuant to this agreement and calculated by the Settlement Administrator.

68.     The Settlement Administrator shall notify Class Members who submit a Deficient Claim Form of the deficiency within five (5) business days of receipt. Deficient Claimants will be permitted additional time to cure all deficiencies up until 1 day prior to the hearing on Final Approval.  Deficient Claim Forms that are not cured by the end of the Claims Period, or any extension thereof, shall render the Deficient Claimant's claim waived, but the Deficient Claimant will still be bound by the releases in this settlement.

69.     The Settlement Administrator shall send one (1) reminder postcard to all Class Members who have not submitted a Claim Form or requested to be excluded from the settlement after thirty (30) days of the date of mailing.  These reminder postcards shall be in the form attached to this Agreement as Exhibit D. The postcards shall be sent after thirty (30) calendar days after the mailing of the Notice of Settlement and Claim Form.  Such postcards shall be sent by first-class United States mail, postage prepaid, to the last known address of each Class Member.

70.     All Settlement Administration Expenses shall come out of the Maximum Settlement Amount.  If the Settlement is not given final approval by the Court, Defendant shall bear Settlement Administration Expenses incurred to date.

**VIII.  CALCULATION OF SETTLEMENT PAYMENTS AND DISTRIBUTION OF NET SETTLEMENT FUND**

71.     **Calculation of Settlement Amounts.**  The Settlement Administrator will calculate pro rata settlement payments to Class Members based on each Class Member's relative percentage of eligible employee service time in the Class as reflected on Chase's internal records.  After deducting for attorney's fees, litigation costs, the Service Enhancement, the PAGA payment, the Reserve Fund, and Settlement Administration Expenses, the remainder of the Maximum Settlement Amount will be allocated to Class Members as the "Net Settlement Amount."

72.     **Eligibility for Settlement Payments.**  Class Members who have timely submitted valid Claim Forms and have not opted-out of the settlement will be considered "Qualified Claimants" eligible to receive a Settlement Payment.  Only Qualified Claimants who have timely submitted valid Claim Forms and have not opted-out of the settlement will be eligible to receive a Settlement Payment.  Late Claim Forms submitted after the deadline but 1 day before the Final Approval hearing will be accepted.  Class Members who have not had their Claim Forms accepted, or have not filed timely and valid opt-out notices, will still be bound by the Settlement and its releases, except the release of claims under the Fair Labor Standards Act, but will not be entitled to receive payment of their share of the settlement.

73.     Each Claim Form mailed to a Class Member will identify the dates of employment and/or number of compensable weeks that Defendant's records indicate the individual worked as an exempt ABM during the Class Period and estimate each Class Member's pro rata share of the Net Settlement Amount.

74.     Qualified Claimants will have the right to challenge only the dates of employment and/or number of weeks worked as shown on the Claim Form.

Challenges to the dates of employment and/or number of weeks worked listed on Claim Forms shall be sent directly to the Settlement Administrator at the address indicated on the Claim Form.  Any challenge must be made during the Claims Period.  The Settlement Administrator will inform Class Counsel and Defendant's Counsel in writing of any timely filed challenges.  The dates of employment and/or work weeks listed on the Claim Form are presumed to be accurate unless the Qualified Claimant submits documentation demonstrating otherwise, *i.e.*, a Qualified Claimant who fails to provide written proof will have his or her challenge denied.  In the event of any dispute over an individual's dates of employment, Defendant's Counsel, after consultation with Plaintiffs' Counsel, will investigate the challenge. The Settlement Administrator, after consultation with Defendant's Counsel and Plaintiffs' Counsel, will determine whether any additional amount is owed to the Qualified Claimant making the challenge.  The Settlement Administrator's decision is final and binding without a right of appeal.  In no event shall the resolution of any dispute over any Qualified Claimants' dates of employment result in Defendant being required to pay more than the Maximum Settlement Amount.

75.    The Settlement Administrator shall date stamp all original Claim Forms received and all correspondence of any nature from any Class Member.

76.    The Settlement Administrator shall (a) date stamp all original opt out statements and objections to the settlement that it receives; (b) serve copies on Class Counsel and Defendant's Counsel no later than 5 business days after receipt, or immediately if received within 5 business days of the Court's final approval hearing; and (c) file the date-stamped originals with the Clerk of the Court no later than 5 business days prior to the date of the Court's final approval hearing or immediately if received less than 5 business days prior to the date of the Court's final approval hearing.

23

77.     The Settlement Administrator shall also (a) date stamp all original rescission of opt out and withdrawal of objection statements it receives; (b) serve copies on Class Counsel and Defendant's Counsel no later than 5 business days after receipt, or immediately if received within 5 business days of the Court's final approval hearing; and (c) file the date-stamped originals with the Clerk of the Court no later than 5 business days prior to the date of the Court's final approval hearing or immediately if received less than 5 business days prior to the date of the Court's final approval hearing.

78.     The Settlement Administrator shall make the final calculation of payments from the Net Settlement Amount to be distributed to the Qualified Claimants within 5 days after the entry of the Court's order granting final approval of the settlement.  Upon completion of its final calculation of payments, and at least 5 days prior to the distribution of payments to Qualified Claimants from the Net Settlement Amount, the Settlement Administrator shall provide the parties with a redacted report listing the amount of all payments to be made to each Qualified Claimant from the Net Settlement Amount.  The Settlement Administrator shall also provide Defendant's Counsel with an unredacted copy of the report.

79.     Within 1 day after the Settlement Effective Date, the Settlement Administrator shall distribute and pay Settlement checks to all Qualified Claimants, pay the Class Representatives their enhancement payments, issue a check to the LWDA for the payment of PAGA penalties, and pay Class Counsel's attorney's fees and costs.

80.     The Settlement Administrator shall be responsible for issuing and mailing the checks and any necessary tax reporting forms to Qualified Claimants, the Class Representatives, Class Counsel, and Defendant. The Settlement Administrator shall provide a declaration of payment, which will be filed with the Court and served on Class Counsel and Defendant within 30 days of mailing the payments to Qualified Claimants, the Class Representatives and Class Counsel.

24

81.   **Uncashed Settlement Checks.**  Qualified Claimants who are sent Settlement payments shall have at least 90 calendar days after mailing by the Settlement Administrator to cash their settlement checks and will be so advised of such deadline.  If such Qualified Claimants do not cash their checks within that period, those checks will become void and a stop payment will be placed on the uncashed checks.  Those Qualified Claimants who fail to cash their settlement checks will be deemed to have waived irrevocably any right in or claim to a settlement share but the Settlement Agreement and the Class Member Released Claims shall remain binding upon them.  In such event, those Qualified Claimants will be deemed to have waived irrevocably any right in or claim to a settlement payment.

82.   **Qualified Settlement Fund**.  The Settlement Administrator shall create a Qualified Settlement Fund ("QSF"), to be funded by Defendant and administered by the Settlement Administrator.  Defendant shall provide payment to the Settlement Administrator within thirty (30) days after Preliminary Approval is granted.  The Settlement Administrator shall deposit the Maximum Settlement Fund in an interest bearing account at a federally insured banking institution of the Settlement Administrator's choice with all interest earned accruing to the benefit of Participating Class Members and Class Counsel. Should the Settlement Effective Date never be reached for any reason, the Maximum Settlement Fund and all interest earned shall be returned to Defendant less any fees and costs incurred by Settlement Administrator to-date.

## IX.   RELEASE BY SETTLEMENT CLASS MEMBERS AND CLASS REPRESENTATIVES

83.   **Release by the Named Plaintiffs Erami, McGlynn, and Sanchez.** The releases agreed upon and made part of the settlement by the Named Plaintiffs (the "General Release") shall include a general release of Settling Defendants, as defined above, from all claims, actions, causes of action, lawsuits, debts, dues,

STIPULATION OF SETTLEMENT
CASE NO. 2:15-cv-07728-PSG-PLA

sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against the Settling Defendants, the Named Plaintiffs and the Named Plaintiffs' heirs, executors, administrators, successors, and assigns, may now have or hereafter later determine that she has or had upon, or by reason of, any cause or thing whatsoever relating to her employment or termination of employment, including, but not limited to, claims arising under the Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended, but not limited to, breach of fiduciary duty and equitable claims to be brought under § 1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, as amended, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act (to the extent permitted by law), the California Family Rights Act ("CFRA"), California's PAGA, Cal. Bus. and Prof. Code § 17200 *et seq.* ("UCL"), the California Labor Code, and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Settling Defendants, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world up to and including the date of this General Release;

26

provided, however, that Named Plaintiffs do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or the National Labor Relations Board ("NLRB"), subject to the confidentiality provisions of the Settlement Agreement, and subject to the condition that Named Plaintiffs agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom and agrees that she understands that such limitation does not in any way restrict her ability to file and pursue such charge consistent with the confidentiality obligations set forth in this Settlement Agreement; and further provided, however, that Named Plaintiffs do not waive any rights with respect to, or release Chase from any claims for California Workers' Compensation benefits (except that Named Plaintiffs hereby release and waive any claims that, as a result of their termination, they are entitled to additional benefits or payments); and further provided, however, that Named Plaintiffs do not release any claim for unemployment compensation benefits; and further provided, however, that Named Plaintiffs do not release any claim that cannot be released by private contract or for breach of the terms of the Settlement Agreement between Named Plaintiffs and Settling Defendants.

84. Named Plaintiffs hereby agree that, they shall not seek and hereby waive any claim for employment or re-employment (as a full-time or part-time employee) or assignment or work (as a temporary worker, independent contractor or consultant) or, in the event of a merger or acquisition, seek employment or work in which she receives payment either directly or indirectly from any Settling Defendant, and that this General Release shall be a complete bar to any such application for employment or re-employment. However, Named Plaintiffs shall not be required to end any pre-existing employment under this paragraph with any entity that Settling Defendants shall acquire subsequent to the commencement of Named Plaintiffs' employment with that entity.

27

85.     Nothing in this General Release shall prohibit or restrict Named Plaintiffs from: (i) providing information to or cooperating with Congress, the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the EEOC, the Occupational Safety and Health Administration ("OSHA"), the NLRB or any other federal, state, or local government, regulatory, or law enforcement agency ("Government Agencies"), the Financial Industry Regulatory Authority ("FINRA"), or any other self-regulatory organization ("SRO"); (ii) reporting to JPMC's management or directors regarding conduct employee believes to be in violation of the law or prohibit or restrict employee from providing information to or cooperating with any Government Agencies or any SROs; (iii) communicating with any Government Agencies or SRO or otherwise participating in any investigation or proceeding that may be conducted by any Government Agency or SRO, including providing documents or other information; or (iv) receiving an award for information provided to any Government Agencies other than for charges filed with the EEOC or corresponding state or local agency as set forth above.

86.     For the purpose of implementing a full and complete release and discharge of the Settling Defendants, Named Plaintiffs expressly acknowledge that this General Release is intended to include in its effect, without limitation, all claims which Named Plaintiffs do not know or suspect to exist in Named Plaintiffs' favor at the time of execution hereof, and that this General Release contemplates the extinguishment of any such claim or claims.  It is further understood and agreed that as a condition of this General Release, Named Plaintiffs hereby expressly waive and relinquish any and all claims, rights or benefits that he may have under California Civil Code Section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

28

87.     In connection with such waiver and relinquishment, Named Plaintiffs hereby acknowledge that they or their attorneys may hereafter discover claims or facts in addition to, or different from, those which they now know or believe to exist, but that Named Plaintiffs expressly agree to fully, finally and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which exist or may exist on his behalf against Settling Defendants at the time of execution of the Settlement Agreement, including, but not limited to, any and all claims relating to or arising from Named Plaintiffs' employment with Settling Defendants or the cessation of that employment.  Named Plaintiffs and Settling Defendants further acknowledge, understand and agree that this representation and commitment is essential to each Party and that this Settlement Agreement would not have been entered into were it not for this representation and commitment.

88.     If any of the provisions, terms, clauses, waivers or releases of claims and rights contained in this General Release are declared illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, such provisions, terms, clauses, waivers or releases of claims or rights shall be modified, if possible, in order to achieve, to the extent possible, the intentions of the parties and, if necessary, such provisions, terms clauses, waivers and releases of claims and rights shall be deemed severable, such that all other provisions, terms, clauses and waivers and releases of claims and rights contained in this General Release shall remain valid and binding upon both parties, provided, however, that, notwithstanding any other provision of this General Release, if any portion of the waiver or release of claims or rights is held to be unenforceable, Settling Defendants, at their option, may seek modification or severance of such portion, or terminate the Settlement Agreement pursuant to Section XIII.

89.     Named Plaintiffs further covenant that they will not participate in any other legal actions against Chase, and will opt-out of those actions if they become aware of such actions.  Named Plaintiffs further agree that any other dispute

29

concerning any aspect of their employment with Chase shall be subject to alternative dispute resolution under Chase's Binding Arbitration Agreement.

90.     Named Plaintiffs shall further agree that at no time will they, verbally or in writing, defame or make disparaging remarks or encourage, solicit, induce or entice others to make disparaging remarks about Chase.

91.     Subject to the provisions of Section XIV, and to the maximum extent permitted by law, Named Plaintiffs and their counsel agree not to disclose the terms of the settlement except to the extent necessary in court papers or if required by legal process.

92.     Named Plaintiffs shall certify that they have returned all Chase property in their possession or control, including without limitation, equipment, telephones, credit cards, keys, pagers, tangible proprietary information, documents, computers and computer discs, personal data assistants, files and data, which they prepared or obtained during the course of their employment.

93.     **Release by Settlement Class Members**.  The releases agreed upon and made part of the settlement by Settlement Class Members ("Settlement Class Released Claims") shall include a release of Settling Defendants, as defined above, of the Settlement Class Released Claims.  Settlement Class Released Claims are any and all wage and hour claims that accrued during or prior to the Class Period and that have been or could have been asserted in the instant Action, including but not limited to any and all claims for overtime, minimum wage, meal and rest breaks, and waiting time penalties, and any and all claims that are derivative or directly related to the foregoing claims, which include any and all claims:  for penalties, premium pay, punitive damages, and interest; for failure to furnish accurate wage statements; for violation(s) under the California Labor Code Private Attorneys General Act ("PAGA"); for violation(s) under the Employee Retirement Income Security Act ("ERISA"); under California Labor Code Sections 201, 202, 203, 204, 210, 223, 224, 226, 226.3, 226.7, 510, 512, 558, 1194, 1197, 1197.1, and

30

1198; for violation(s) of the California Business & Professions Code; and/or under the common law, such as conversion and unjust enrichment.  All Settlement Class Members shall be bound by the release whether or not they return the Claim Form necessary to receive payment of their allocated settlement amount, unless they formally opt-out.  All Settlement Class Members who submit a Claim Form shall also release any and all claims under the FLSA, including but not limited to claims under 29 U.S.C. § 206, 211(c) and 215(a), including liquidated damages, whether known or unknown, that accrued or accrue prior to the later of the Preliminary Approval Date or the date the Settlement Class Member signed the Claim Form.

94.    Settlement is further conditioned upon all Settling Class Members releasing any claim under Labor Code § 2699, and upon covenant not to participate in any proceeding seeking penalties under § 2699 for claims pled in the Third Amended Complaint or that could have been pled;

95.    This Settlement is intended to include in its effect all Settlement Class Released Claims including claims that each member of the Settlement Class does not know or suspect to exist in his or her favor against Settling Defendants at the time of the release that are directly related to the Released Claims.  The members of the Settlement Class shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Settlement Class Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

96.    Nothing in this Settlement Agreement shall be construed to bar any claims by the Named Plaintiffs or Settlement Class Members that may arise after or arose before the Class Period.  This release also specifically excludes any claims the Named Plaintiffs and Settlement Class Members may have that arise from time

periods in which they were not working in an exempt ABM position during the Class Period.

## X.   DUTIES OF THE PARTIES PRIOR TO PRELIMINARY APPROVAL AND BETWEEN PRELIMINARY AND FINAL APPROVAL

97.     The Parties shall promptly submit this Settlement Agreement to the Court together with a Motion for Preliminary Approval of Settlement and Certification of Settlement Class.  The motion shall also seek an order, attached as Exhibit E:

        a.     Preliminarily approving the settlement;

        b.     Approving as to form and content the proposed Notice of Settlement;

        c.     Approving as to form and content the proposed Claim Form and instructions;

        d.     Directing the mailing of the Notice of Settlement and Claim Forms and instructions by first class mail to members of the Settlement Class;

        e.     Preliminarily certifying the Settlement Class for purposes of settlement and preliminarily appointing Named Plaintiffs and Plaintiffs' Counsel as representatives of the Settlement Class;

        f.     Preliminarily approving settlement administration services to be provided by the Settlement Administrator;

        g.     Preliminarily approving the proposed service awards to plaintiffs Erami, McGlynn, and Sanchez as Class Representatives;

        h.     Preliminarily approving the application for payment of reasonable attorneys' fees and costs to Plaintiffs' Counsel;

        i.     Enjoining Plaintiffs and all Class Members and anyone acting on behalf of any Class Member, pending Final Approval, from:  further prosecution of the Litigation; filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action,

claim or proceeding against Defendants in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims; and

j.      Scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the members of the Settlement Class.

98.      Defendant shall provide to the Settlement Administrator within fourteen (14) days after Preliminary Approval is granted the class membership list and identification and contact information specified in Paragraph VII.62 above. Defendant shall submit this information in electronic format as specified by the Settlement Administrator and shall thereafter, during the notice, approval, opt out/objection and payment processes, assist the Settlement Administrator as necessary or as requested to use, correct, or update this information in order to enable the Settlement Administrator to locate and contact Class Members, and to provide information needed or requested by the Settlement Administrator in order to make determinations on Class Members' challenges.

99.      The Parties shall cooperate with each other and the Settlement Administrator during the process of giving Class Members notice and opportunity to opt out of or object to the Settlement, in every way necessary and appropriate to assure effective communication to individual Class Members of information concerning their rights and obligations under this Settlement Agreement.

100.   Plaintiffs' Counsel shall provide the Court at least 5 days prior to the final approval and fairness hearing a declaration by the Settlement Administrator of due diligence and proof of mailing of the Notice of Settlement and Share Form required to be mailed to Class Members by this Settlement Agreement, and of the delivery results of the Settlement Administrator's mailings including tracing and re-mailing efforts.

33

# XI.   DUTIES OF THE PARTIES AFTER FINAL COURT APPROVAL

101.   The Parties will submit a proposed order and judgment for final approval, attached as Exhibit F, which shall include findings and orders:

a.   Approving the settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing that its terms and provisions be carried out;

b.   Approving the payment of Service Enhancements to the Named Plaintiffs as Class Representatives;

c.   Approving Class Counsel's application for an award of attorneys' fees and reimbursement of out-of-pocket litigation expenses;

d.   Releasing and extinguishing state law claims;

e.   permanently enjoining all Class Members and Qualified Claimants from pursuing and/or seeking to reopen claims that have been released by this Agreement; and

f.   Providing that the Court will retain jurisdiction to oversee administration and enforcement of the terms of the Settlement and the Court's orders.

102.   Following entry of the Court's Order granting final approval of the Settlement Agreement, the parties will each act to assure its timely execution and the fulfillment of all its provisions, including but not limited to the following:

a.   Should an appeal be taken from the final approval of the Settlement Agreement, all parties will support the approval order on appeal;

b.   Class Counsel and Counsel for Defendant will assist the Settlement Administrator as needed or requested in the process of identifying and locating Class Members entitled to payments from the Class Settlement Fund and assuring delivery of such payments;

c.   Class Counsel and Counsel for Defendant will assist the Settlement Administrator as needed or requested in responding to late requests for payments and the fair administration of that Fund;

34

        d.      Class Counsel and Counsel for Defendant will cooperate with each other and assist the Settlement Administrator as needed.

        e.      The Parties and Class Counsel will certify to the Court completion of all payments required to be made by this Settlement Agreement.

## XII.   PRELIMINARY TIMELINE FOR COMPLETION OF SETTLEMENT

103.   The preliminary schedule for notice, approval, and payment procedures carrying out this settlement is as follows.  The schedule may be modified depending on whether and when the Court grants necessary approvals and orders notice to the class, and sets further hearings.  In the event of such modification, the parties shall cooperate in order to complete the settlement procedures as expeditiously as reasonably practicable.

| | |
|---|---|
| Within 14 days after the date of Preliminary Approval | Defendant to provide the Settlement Administrator the most recent names, last known residence addresses, and social security numbers for all Class Members, as well as any information regarding the Class Members' dates of employment. |
| 30 days after Preliminary Approval | Defendant to provide the Maximum Settlement Amount to Settlement Administrator. |
| 21 days after receipt of class data from Defendant | Settlement Administrator to complete any skip trace or other address searched for Class Members, including updating any Class Member contact information.<br><br>Mailing by first class mail of Settlement Documents. |

35

| | |
|---|---|
| 3 business days before mailing Settlement Documents. | Settlement Administrator to provide Defendant's counsel with estimated settlement payments to each Class Member. |
| 30 days after mailing Settlement Documents. | Settlement Administrator to mail reminder postcard. |
| 60 days after mailing Settlement Documents. | Deadline for Class Members to submit a claim, opt-out or object. |
| 1 business day prior to the hearing on Final Approval. | Last day to rescind objections or opt-outs. |
| 5 days after Final Approval | Settlement Administrator to make the final calculation of payments from the Net Settlement Amount to be distributed to the Qualified Claimants and provide Defendant's counsel with a report listing the amount of all payments to be made to each Qualified Claimant. |

| The latter of: (i) the date of final affirmance of an appeal of the Order and Final Judgment, or the expiration of the time for a petition for a writ of certiorari to review the Order and Final Judgment and, if certiorari be granted, the date of final affirmance of the Order and Final Judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Order and Final Judgment or the final dismissal of any proceeding on certiorari to review the Order and Final Judgment; or (iii) if no appeal is filed, five days after the expiration date of the time for the filing or noticing of any appeal from the Order and Final Judgment. | Settlement Effective Date |
|---|---|
| Within 1 day of the Settlement Effective Date | Settlement Administrator to distribute and pay Settlement checks to all Qualified Claimants from the Settlement Fund, pay the Class Representatives their enhancement payments and pay Class Counsel the attorney's fees and costs approved by the Court. |

37

| 5 days before distribution. | The Settlement Administrator shall provide the parties with a redacted report listing the amount of all payments to be made to each Qualified Claimant from the Net Settlement Amount.  The Settlement Administrator will provide Defendant's counsel with an unredacted copy of the report. |
| --- | --- |
| Within 30 days after distribution. | Settlement Administrator to provide a declaration of payment, which will be filed with the Court and served on Class Counsel and Defendant. |
| 90 days after payment of first round settlement checks | Expiration of Qualified Claimants' settlement checks. |

## XIII.  VOIDING OR MODIFYING THE SETTLEMENT AGREEMENT

104.   Chase has the right to withdraw from the Settlement at any time prior to final approval if: (a) 5% or more of all Settlement Class members opts out of the Settlement; or (b) the Settlement is construed in such a fashion that Chase is required to pay more than the Maximum Settlement Amount including Chase's obligation to the employer's share of payroll taxes on the Net Settlement Fund; or (c) the Court does not certify the Settlement Class or does not certify a class releasing the claims set forth herein, or does not certify a class releasing the claims set forth herein, or otherwise makes an order that is materially different from the terms of this Settlement Agreement; or (d) Plaintiffs or their counsel breach the Memorandum of Understanding or this Settlement Agreement.  In the event of Defendant's withdrawal, Defendant will pay the costs already incurred by the Settlement Administrator.  Plaintiffs have the right to withdraw from this Settlement at any time prior to final approval if Chase or its counsel breaches the Memorandum of Understanding or this Settlement Agreement.

105.   If for any reason the Settlement is not approved by the court, or if Chase or Plaintiffs withdraw from the Settlement, this Settlement Agreement and any related settlement documents will be null and void, other than the confidentiality and non-disclosure provisions in Section XIV and the non-admission provisions in Paragraph V.54.a, and any class action certified for settlement purposes will be vacated.  In such an event, neither this Settlement Agreement, nor the Memorandum of Understanding, nor the settlement documents, nor the negotiations leading to the Settlement may be used as evidence for any purpose, and Chase shall retain the right to challenge all claims and allegations in the action, to assert all applicable defenses, and to dispute the propriety of class or collective certification on all applicable grounds.  If Chase invokes its right to withdraw it shall be solely responsible for the Administrator's fees and costs incurred to that time.

106.   If any time period specified in the above two paragraphs passes before the party holding a right or option to request adjustment or rescind exercises that right or option, that party shall be deemed to have waived its right or option and the Settlement Agreement shall proceed on the terms specified herein.

107.   Other than as specified above, this Settlement Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties hereto, and approved by the Court.  This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## XIV.  CONFIDENTIALITY AND PUBLICITY

108.   Names of Settlement Class Members and their allocation amounts shall be kept strictly confidential by the Settlement Administrator, who will not release such information to Class Counsel and will only file such information under seal if necessary.  Class Counsel agrees that any information they receive or have

39

received in connection with this Settlement, may be used for this action only, and may not be used for any purpose or in any other action or proceeding.

109.   Named Plaintiffs and Class Counsel agree not to disclose the terms of this settlement, except in court papers, or if required by legal process, as necessary to effectuate and administer the terms of this Settlement, or for accounting or tax reporting purposes.  Neither Named Plaintiffs nor Class Counsel, directly or indirectly, shall issue a press release, hold a press conference, publish information about the settlement on any website (other than used by the claims administrator for claims administration purposes), or otherwise publicize the settlement.  Named Plaintiffs and Class Counsel agree not to respond to any press inquiries concerning the settlement except to refer reporters to the papers filed with the Court.

110.   After the filing of the motion for preliminary approval, Class Counsel agrees to limit any discussion of the Action and the Settlement on its website to a link to the claim form and a brief description of the nature of the case and the outcome, which shall contain or reference only publicly-available information regarding the case.  Class Counsel further agrees to provide counsel for Chase with a copy of any information specifically referencing this case that will be posted on their website seven days in advance of any such posting.

111.   **Returns and/or Destruction of Confidential Settlement Materials.** Named Plaintiffs and Class Counsel agree to return and/or destroy all confidential documents produced to them for settlement purposes in this action.  If Named Plaintiffs and Class Counsel elect to destroy said documents, they shall timely provide an affidavit of destruction to Chase.

## XV.   CONDITIONED ON EXECUTION OF SETTLEMENT IN THE *TAYLOR* ACTION.

112.   The effectiveness of this Settlement Agreement is expressly conditioned on the execution of formal settlement documents in the *Taylor* action, pending in the Southern District of New York, Case No. 1:15-cv-03023-PGG.

40

## XVI.  PARTIES' AUTHORITY

113.   The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

## XVII. MUTUAL FULL COOPERATION

114.   The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to implement the terms of this Settlement Agreement.  The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court or otherwise to effectuate this Settlement Agreement and the terms set forth herein.  As soon as practicable after execution of this Settlement Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's preliminary and final approval of this Settlement Agreement.

## XVIII.    NOTICES

115.   Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs' Counsel:
    Edward J. Wynne
    WYNNE LAW FIRM
    80 E. Sir Francis Drake Boulevard, Suite 3G
    Larkspur, CA 94939
    Tel:  (415) 461-6400
    Fax:  (415) 461-3900
    ewynne@wynnelawfirm.com

41

To Defendant's Counsel:

> Carrie A. Gonell
> MORGAN, LEWIS & BOCKIUS LLP
> 600 Anton Blvd., Suite 1800
> Costa Mesa, CA  92626
> Tel:  949.399.7000
> Fax:  949.399.7001
> carrie.gonell@morganlewis.com

If the identity of the persons to be notified for any party changes, or their address changes, that party shall notify all other parties of said change in writing.

## XIX.  MISCELLANOUS PROVISIONS

116.   **Captions and Titles**.  Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

117.   **Drafting**.  The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties.  Neither party shall be considered the "drafter" of the Settlement Agreement for purposes of having terms construed against that party, and this Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her or its counsel participated in the drafting of this Settlement Agreement.

118.   **Cooperation**.  The Parties agree to cooperate fully with one another to accomplish and implement the terms of this Settlement.  Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other action as may reasonably be necessary to fulfill the terms of this Stipulation of Settlement.  The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by Court order, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein.

119.   **Extensions of Time**.  If a party cannot reasonably comply with an obligation under this Settlement Agreement by the deadline set forth herein applicable to that obligation, that party may apply to the Court for a reasonable extension of time to fulfill that obligation.  Consent to such a request for an extension will not be unreasonably withheld by the other party.

120.   **Governing Law**.  The rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of California, without regard to principles of conflict of laws.

121.   **No Impact on Benefit Plans**.  Neither the Settlement nor any amounts paid under the Settlement will modify any previously credited hours or service under any employee benefit plan, policy, or bonus program sponsored by Settling Defendants.  Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under Settling Defendants' sponsored benefit plans, policies, or bonus programs.  The payments made under the terms of this Settlement shall not be applied retroactively, currently, or on a going forward basis, as salary, earnings, wages, or any other form of compensation for the purposes of any Settling Defendants' benefit plan, policy, or bonus program. Settling Defendants retain the right to modify the language of its benefit plans, policies and bonus programs to effect this intent, and to make clear that any amounts paid pursuant to this Settlement are not for "hours worked," "hours paid," "hours of service," or any similar measuring term as defined by applicable plans, policies and bonus programs for purposes of eligibility, vesting, benefit accrual, or any other purpose, and that additional contributions or benefits are not required by this Stipulation of Settlement.

122.   **Integration**.  This Settlement Agreement, along with attached exhibits, contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and

43

whether by a Party or such Party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

123.  **No Prior Assignments**.  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

124.  **Class Member Signatories**.  It is agreed that because the members of the Class are so numerous, it is impossible or impractical to have each member of the Class execute this Settlement Agreement.  The Class Notice attached hereto will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each member of the Class.

## XX.   COUNTERPARTS

125.  This Settlement Agreement may be executed in counterparts with signatures transmitted by facsimile or as an electronic image of the original signature.  When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.  A facsimile signature shall have the same force and effect as the original signature.

Dated: __12/14__, 2017          By: _____

MITRA ERAMI
Plaintiff

44

1

Dated: _12-14_____, 2017

By:

2

_____

*Maria L McGlynn*

MARIA MCGLYNN

Plaintiff

3

4

Dated: _____, 2017

By:

5

_____

BRITTANY SANCHEZ

Plaintiff

6

7

Dated: _____, 2017

WYNNE LAW FIRM

8

By:

9

_____

10

EDWARD J. WYNNE

Attorneys for Plaintiffs and the putative class

11

Dated: _____, 2017

JPMORGAN CHASE BANK, N.A

12

13

By:

14

_____

Name:

Title:

15

Dated: _____, 2017

MORGAN, LEWIS & BOCKIUS LLP

16

By:

17

_____

18

CARRIE A. GONELL

Attorneys for Defendant

19

JPMorgan Chase Bank, N.A.

20

21

22

23

24

25

26

27

28

45

1

Dated: _____, 2017                By: _____

2

                                        MARIA MCGLYNN
                                        Plaintiff

3

4

Dated: 12/11_____, 2017              By: _____Brittany Sanchez_____

5

                                        BRITTANY SANCHEZ
                                        Plaintiff

6

7

Dated: _____, 2017                 WYNNE LAW FIRM

8

                                        By: _____

9

10

                                        EDWARD J. WYNNE
                                        Attorneys for Plaintiffs and the putative class

11

Dated: _____, 2017                 JPMORGAN CHASE BANK, N.A

12

13

                                        By: _____

14

                                        Name:
                                        Title:

15

Dated: _____, 2017                 MORGAN, LEWIS & BOCKIUS LLP

16

17

                                        By: _____

18

                                        CARRIE A. GONELL
                                        Attorneys for Defendant

19

                                        JPMorgan Chase Bank, N.A.

20

21

22

23

24

25

26

27

28

45

Dated: _____, 2017        By: _____

                                MARIA MCGLYNN
                                Plaintiff

Dated: _____, 2017        By: _____

                                BRITTANY SANCHEZ
                                Plaintiff

Dated: 1/4, 2017                WYNNE LAW FIRM

                                By: _____

                                EDWARD J. WYNNE
                                Attorneys for Plaintiffs and the putative class

Dated: _____, 2017        JPMORGAN CHASE BANK, N.A

                                By: _____

                                Name: _____
                                Title: _____

Dated: _____, 2017        MORGAN, LEWIS & BOCKIUS LLP

                                By: _____

                                CARRIE A. GONELL
                                Attorneys for Defendant
                                JPMorgan Chase Bank, N.A.

45

1   Dated: _____, 2017    By: _____

2

3                                MARIA MCGLYNN
                                  Plaintiff

4   Dated: _____, 2017    By: _____

5                                  BRITTANY SANCHEZ
                                  Plaintiff

6

7   Dated: _____, 2017    WYNNE LAW FIRM

8                             By: _____

9

10                            EDWARD J. WYNNE
                            Attorneys for Plaintiffs and the putative class

11  Dated: January 10, 2017    JPMORGAN CHASE BANK, N.A

12                         By: _____

13

14                            Name: David Schilling
                            Title: Executive Director, HR

15  Dated: January 10, 2018    MORGAN, LEWIS & BOCKIUS LLP

16

17                         By: _____

18                            CARRIE A. GONELL
                            Attorneys for Defendant
                            JPMorgan Chase Bank, N.A.

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# NOTICE OF SETTLEMENT OF CLASS ACTION

**If you were employed by JPMorgan Chase Bank, N.A as an exempt Assistant Branch Manager in the State of California at any time between February 25, 2011 and _____, a settlement of a class action lawsuit may affect your rights.**

*A California Court has authorized this notice. This is not a solicitation from a lawyer.*

**California law prohibits retaliation by an employer against any person who participates in or assists in the litigation of an overtime lawsuit such as this one.**

**A hearing regarding a proposed settlement of this class action will be held on _____, 2018 at ____ p.m. at the United States District Court for the Central District of California, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 880.   The hearing will be held to determine whether the proposed settlement is fair, reasonable and adequate.   The Court has approved the following Notice for distribution.**

- Former Assistant Branch Managers Mitra Erami, Maria McGlynn, and Brittany Sanchez have sued JPMorgan Chase Bank, N.A. ("Chase") alleging failure to pay overtime, failure to provide meal and rest breaks and failure to pay all wages at time of termination on behalf of themselves and all other Assistant Branch Managers who worked for Chase in California at any time between February 25, 2011 and _____, and whom Chase classified as exempt from the overtime and meal/rest break provisions of the Labor Code.

- This notice informs you that the parties have reached a settlement of the class action and informs you of your choices:

1

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **SEND IN YOUR CLAIM FORM TO RECEIVE YOUR SHARE OF THE SETTLEMENT** | **Sign and return the Claim Form attached to this Notice to the Settlement Administrator and you will be sent a check for your share of the settlement in exchange for releasing certain legal claims against Chase.**<br><br>By sending in the completed Claim Form you agree to accept the settlement amount and to release certain legal claims you may have had against Chase for overtime pay, meal and rest breaks and waiting time penalties, interest and related legal claims. |
| **DISPUTE THE NUMBER OF WEEKS YOU WORKED** | **The Claim Form contains the number of weeks Chase's records reflect that you worked as an exempt Assistant Branch Manager for Chase in California between February 25, 2011 and _____.  If you disagree with those work weeks, you may file a written dispute with the Settlement Administrator.**<br><br>If you file a timely written dispute as to the number of work weeks, you should submit written proof proving your dispute.  The Settlement Administrator will decide all disputes and its decision will be binding and final.  Even if your dispute is not approved, you will still be able to participate in the settlement so long as your Claim Form is postmarked or actually received by the Settlement Administrator by the due date. |
| **OBJECT TO THE SETTLEMENT** | **You may file a written objection to the terms of the settlement.**<br><br>If you file a timely written objection to the settlement with the Court and serve both Plaintiffs' and Defense counsel with that objection, the Court may consider and may rule on any objection you have to the settlement. You must also file a timely Claim Form in order to be eligible to file an objection.  Even if your objection is overruled, you will still be able to participate in the settlement so long as your Claim Form is postmarked or actually received by the Settlement Administrator by the due date. |
| **OPT-OUT OF THE SETTLEMENT** | **If you do not wish to receive any money from the settlement and wish to retain your rights, you may file a written request to opt-out from the class action settlement.**<br><br>By opting out or excluding yourself from the class action, you will not |

| | share in any of the settlement proceeds and will not be sent a settlement check.  You will also not be able to object to any of the terms of the settlement.  You will not be bound by any of the terms of the settlement and will not release any of the legal claims against Chase.   If you opt-out of the settlement, your share of the settlement proceeds may be divided up amongst the class members who timely submit Claim Forms.  If you submit a Claim Form and an Opt-Out, your opt-out will be disregarded and the Claim Form will control. |
|---|---|
| **DO NOTHING** | **If you do nothing, you will not be entitled to receive your share of the settlement, however, you will be bound by the terms of the settlement and will have released all of the legal claims covered by this action that you may have against Chase with the sole exception of claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.** |

- Any questions?  Read on or call the counsel listed at the end of this Notice.  DO NOT CALL THE COURT.

### WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**                                                                                     **5**

   1.   What is the purpose of this Notice?                                      5
   2.   What is this lawsuit about?                                             5
   3.   Why am I receiving this Notice?                                         5

**WHAT ARE THE CLAIMS IN THE LAWSUIT?**                                                   **5**
   4.   What does the lawsuit complain about?                                  5
   5.   Has the Court decided who is right?                                    5

**WHAT ARE THE TERMS OF THE SETTLEMENT?**                                       **5**
   6.   Who is paying what for the settlement?                                 6
   7.   How will the settlement be divided?                                    6
   8.   What are the requests for attorneys' fees, costs, settlement administration costs, and enhancement awards to Plaintiffs?                              6
   9.   How will the Net Settlement Amount be divided amongst Class Members?   6
 10.   How many work weeks did I work during the class period and what will my approximate recovery be?                                        6
 11.   What claims would I be releasing if I participate in the settlement?    7

**YOUR RIGHTS AND OPTIONS**                                                               **8**
 12.   How do I receive my share of the settlement?                           8
 13.   Can I dispute the number of work weeks Chase claims I worked?          8
 14.   Can I object to the settlement?                                        8

3

15.  Can I opt-out of the settlement?                                                      9
16.  What if I do nothing?                                                               9

**PROHIBITION AGAINST RETALIATION**                                          **9**
17.  Will I be retaliated against for participating in the settlement?             9

**THE LAWYERS REPRESENTING THE CLASS**                                **10**
18.  Do I have a lawyer in this case?                                              10

**FINAL SETTLEMENT**                                                          **10**
19.  How and when will the Court provide final approval of the settlement?       10
20.  When will I get my settlement check?                                         10

**GETTING MORE INFORMATION**                                              **10**
21.  Are more details available?                                                  10

4

## BASIC INFORMATION

| 1. | What is the purpose of this Notice? |
|----|-------------------------------------|

Plaintiffs and Chase have reached a settlement of a class action regarding exempt Assistant Branch Managers in California employed at some time between February 25, 2011 and _____.   Chase's records show that you were employed as an exempt Assistant Branch Manager in California at some time between February 25, 2011 and _____.  Judge Philip S. Gutierrez of the Central District of California is overseeing the class action.  The lawsuit is known as *Mitra Erami, et al. v. JPMorgan Chase Bank, National Association*, Case No. 2:15-cv-07728-PSG-PLA ("the Action").

| 2. | What is this lawsuit about? |
|----|-----------------------------|

The lawsuit is about wage and hour claims, including the extent to which Chase should have paid its exempt Assistant Branch Managers if they worked overtime, the extent to which Chase should have provided for meal and rest breaks, and the extent to which exempt Assistant Branch Managers were paid all of their wages at time of termination.

| 3. | Why am I receiving Notice? |
|----|----------------------------|

You have been identified by Chase as someone who worked for Chase as an exempt Assistant Branch Manager in California at some time between February 25, 2011 and _____.

## THE CLAIMS IN THE LAWSUIT

| 4. | What does the lawsuit complain about? |
|----|---------------------------------------|

In the lawsuit, Plaintiffs contend that Chase violated California law, including the California Labor Code, by misclassifying certain Assistant Branch Managers as exempt, improperly denying them overtime compensation and meal and rest breaks, and failing to pay them all of these wages at time of termination.  Plaintiffs sought compensation for these claims.  You can read Plaintiffs' allegations as stated in the Third Amended Complaint, which is available at [settlement administrator webpage].

| 5. | Has the Court decided who is right? |
|----|-------------------------------------|

The Court hasn't decided whether Chase or the Plaintiffs are correct. Chase and Plaintiffs reached a settlement by mediating the case with a neutral third party.

## WHAT ARE THE TERMS OF THE SETTLEMENT?

| 6. | Who is paying what for the settlement? |
|----|----------------------------------------|

Chase has agreed to pay $8,333,333.00 ("Gross Settlement Value") to settle all claims of Plaintiffs, Class Members and Class Counsel.

| 7. | How will the settlement be divided? |
|----|-------------------------------------|

All Class Members will split a fund of approximately $_____ ("Net Settlement Amount").

| 8. | What are the requests for attorneys' fees, costs, settlement administration costs and an enhancement award to Plaintiffs? |
|----|--------------------------------------------------------------------------------------------------------------------------|

Class Counsel will request that the Court award Attorneys' fees of up to $2,777,777.67 (33.3% of the Gross Settlement Value).   Counsel will also request that the Court award proven costs to Class Counsel not to exceed $_____.  Counsel will also request that the Court award costs for Settlement Administration to be paid to the Settlement Administrator, not to exceed $_____. Counsel will also request that the Court award an enhancement fee to Plaintiffs for their service, not to exceed $15,000 total to be split among the three plaintiffs.  Counsel will also ask the Court to authorize payment to the California Labor and Workforce Development Agency in the amount of $75,000.

| 9. | How will the Net Settlement Amount be divided amongst Class Members? |
|----|---------------------------------------------------------------------|

The Net Settlement Amount shall be divided between the Class Members based upon the percentage of his or her number of workweeks of employment as an exempt Assistant Branch Manager at Chase during the Class Period compared to the total number of workweeks worked by all Class Members participating in the settlement.  This will allow Claimants who worked more workweeks during the Class Period to receive a higher amount of the settlement.

Settlement payments will be allocated as follows:  50% to unpaid wages, 25% to penalties and 25% to interest.  You must pay your own portion of payroll and income taxes on the 50% of each settlement payment that is unpaid wages, and such amounts will be withheld from settlement payments.  Chase will pay its share of payroll taxes.  You should consult with a tax advisor concerning the tax consequences of the payment you receive under the Settlement.

| 10. | How many work weeks did I work during the class period and what will my approximate recovery be? |
|-----|--------------------------------------------------------------------------------------------------|

The class period began on February 25, 2011, and ended on _____.  According to Chase's records, the number of workweeks you worked as an exempt Assistant Branch Manager in California during this time period is set forth on the Claim Form attached to this Notice.  If you dispute these dates, you should provide written evidence supporting your claim before _____, 201_ and send to:

_____ CLASS ACTION ADMINISTRATOR
KCC
[address, tel and fax]

Based on your work dates, the approximate amount of your recovery will also be set forth in the Claim Form attached to this Notice. This amount may change depending on participation in the settlement by all class members (*e.g*., if a class member opts out of the settlement, your amount may increase by a percentage of those settlement proceeds).

| 11. | What claims would I be releasing if I participate in the settlement? |
|---|---|

Upon Final Approval of the Settlement, each Class Member who has not opted out of the Settlement shall be deemed to have fully, finally, and forever released Settling Defendants, as that term is defined in the Stipulation of Settlement, from all Settlement Class Released Claims through _____.   Settlement Class Released Claims are any and all claims that accrued during or prior to February 25, 2011 and that have been or could have been asserted in the Action, including but not limited to any and all claims for overtime, minimum wage, meal and rest breaks, and waiting time penalties, and any and all claims that are derivative or directly related to the foregoing claims, which include any and all claims:  for penalties, premium pay, punitive damages, and interest; for failure to furnish accurate wage statements; for violation(s) under the California Labor Code Private Attorneys General Act ("PAGA"); for violation(s) under the Employee Retirement Income Security Act ("ERISA"); under California Labor Code Sections 201, 202, 203, 204, 210, 223, 224, 226, 226.3, 226.7, 510, 512, 558, 1194, 1197, 1197.1, and 1198; for violation(s) of the California Business & Professions Code; and/or under the common law, such as conversion and unjust enrichment.  All Settlement Class Members shall be bound by the release whether or not they return the Claim Form necessary to receive payment of their allocated settlement amount, unless they formally opt-out.   All Settlement Class Members who submit a Claim Form shall also release any and all claims under the FLSA, including but not limited to claims under 29 U.S.C. § 206, 211(c) and 215(a), including liquidated damages, whether known or unknown, that accrued or accrue prior to the later of the Preliminary Approval Date or the date the Settlement Class Member signed the Claim Form.

Settlement is further conditioned upon all Settling Class Members releasing any claim under Labor Code § 2699, and upon covenant not to participate in any proceeding seeking penalties under § 2699 for claims pled in the Third Amended Complaint or that could have been pled.

This Settlement is intended to include in its effect all Settlement Class Released Claims including claims that each member of the Settlement Class does not know or suspect to exist in his or her favor against Settling Defendants at the time of the release that are directly related to the Released Claims, as described above.  The members of the Settlement Class shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Settlement Class Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

## YOUR RIGHTS AND OPTIONS

| 12. | How do I receive my share of the settlement? |
|---|---|

To receive your share of the Settlement, you must sign and submit your Claim Form to the Settlement Administrator on or before _____ 201_.

The Settlement Administrator is:        KCC [address, tel. and fax].

By completing and submitting a Claim Form, you are giving your written consent to becoming a party Plaintiff in the action, you will be considered to have "opted in" to the action,  you will be bound by all the terms of the settlement, and you will have permanently waived and released any claims you may have relating to the action, including the Released Claims as set forth above, and you will be prevented from suing Chase or participating in any other litigation or class action relating to the matters being settled in the action.

| 13. | Can I dispute the number of work weeks Chase claims I worked? |
|---|---|

Yes.  The Claim Form accompanying this Notice contains the number of weeks Chase's records reflect that you worked as an exempt Assistant Branch Manager in California between February 25, 2011 and _____.  If you disagree with those work weeks, you may file a written dispute with the Settlement Administrator by _____ 2018.  If you file a timely written dispute as to the number of work weeks, you should submit written proof proving your dispute.  The Settlement Administrator will decide all disputes and its decision will be binding and final.  <u>DO NOT CONTACT THE COURT TO DISPUTE YOUR WORK WEEKS</u>.

| 14. | Can I object to the settlement? |
|---|---|

Yes.  If you file a Claim Form but disagree with any portion of the settlement terms, you have the right to file an objection.  If you file a timely written objection to the settlement with the Court and serve both Plaintiffs' and Defense counsel with that objection, the Court may consider and may rule on any objection you have to the settlement.      In order to be heard or to have papers or briefs considered by the Court, any objecting Class Member must first file, by _____, 201_, an original and one copy of both the notice of intention to appear and the objections, with the court at:

United States District Court
for the Central District of California
Courtroom 880
255 East Temple Street
Los Angeles, CA 90012

If you opt-out of the Settlement, you will be ineligible to object to the Settlement.  Any written objections shall state each specific reason in support of your objection and any legal support for each objection.  Your objection must also state your full name and address.  Copies of all documents filed with the Clerk of the court must also be sent to the following counsel:

| **Class Counsel:** | **Counsel for Defendant:** |
|---|---|
| Edward J. Wynne | Carrie A. Gonell |
| Wynne Law Firm | Morgan, Lewis & Bockius LLP |
| 80 E. Sir Francis Drake Blvd., | 600 Anton Blvd., Suite 1800 |
| Suite 3G | Costa Mesa, CA 92626 |
| Larkspur, CA 94939 | Tel. 1-714-830-0600 |
| Tel. 1-415-461-6400 | Fax. 1-714-830-0700 |
| Fax. 1-415-461-3900 | Email: |
| Email: ewynne@wynnelawfirm.com | carrie.gonell@morganlewis.com |

| 15. | Can I opt-out of the settlement? |
|---|---|

Yes. Settlement Class members who wish to "opt-out" of and be excluded from the settlement must submit a written Request for Exclusion from the Settlement and must be post-marked no later than _____ 2018.  The request to opt-out must include (a) your name, (b) a statement that you desire to exclude yourself from the case, and (c) the last four digits of your social security number.

If you file a timely and valid written request for exclusion, you will no longer be a member of the Class, and you will not be eligible to receive any of the benefits under the Settlement or object to the terms of the Settlement.  You will not be bound by the terms of the Settlement, and may pursue any claims you may have, at your own expense, against Chase.

| 16. | What if I do nothing? |
|---|---|

If you do nothing, you will not receive any share under the Settlement or any payments from the Net Settlement Fund.  However, if you do nothing, you will still nevertheless be bound by all the terms of the Settlement, including the waiver and release of all Released Claims relating to the Action as set forth above (including the waiver and release of unknown claims) except for claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and you will be prevented from suing Chase or participating in any other litigation or class action relating to the matters being settled in this action.

## PROHIBITION AGAINST RETALIATION

| 17. | Will I be retaliated for participating in the settlement? |
|---|---|

No.  Chase has agreed to this settlement and will not discriminate or retaliate against any Class Member who submits a Claim Form or who accepts benefits under the Settlement.  Your participation in this lawsuit will in no way affect your employment relationship with Chase or any other employer.

## THE LAWYERS REPRESENTING THE CLASS

| 18. | Do I have a lawyer in this case? |
|---|---|

Yes.  The Court decided that Edward J. Wynne of Wynne Law Firm and its lawyers are qualified to represent you and all Class Members.  Wynne Law Firm and its attorneys are referred to as "Class Counsel."

## FINAL SETTLEMENT

| 19. | How and when will the Court provide final approval of the settlement? |
|---|---|

The District Court for the Central District of California will hold a hearing on _____, 2018, at _____ p.m. in Courtroom 880, located at 255 East Temple Street Los Angeles, CA 90012 to determine whether the settlement should be finally approved as fair, reasonable, and adequate. The Court also will be asked to approve Class Counsel's request for attorneys' fees, costs and expenses, settlement administration costs and an incentive award to the Plaintiffs. The hearing may be continued without further notice to the Settlement Class.  It is not necessary for you to appear at this hearing unless you object to the proposed settlement and you have timely filed a notice of intention to appear and an objection with the Court.

| 20. | When will I get my settlement check? |
|---|---|

If there are no appeals to the settlement and the Court provides final approval, the checks will be mailed out approximately 35 days after the hearing, currently scheduled for _____.

## GETTING MORE INFORMATION

| 21. | Are more details available? |
|---|---|

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings.  For more detailed information, you are advised to refer to the underlying documents and papers on file with the Court.

You may visit the _____ Overtime Class Action website at [KCC website] where you will find specific documents related to this case and be able to access the Notice and Claim Form.  There is no charge to view the documents on the website.

You may also contact Counsel for Plaintiffs or Chase for information about this lawsuit:

- Write or email Class Counsel at:
  EDWARD J. WYNNE
  WYNNE LAW FIRM
  80 E. SIR FRANCIS DRAKE BLVD., SUITE 3G
  LARKSPUR, CA 94939
  EMAIL: EWYNNE@WYNNELAWFIRM.COM

- Call Class Counsel toll free: 1-877-___-____
  Local: 415-461-6400

- Contact Counsel for Chase:
  CARRIE A. GONELL
  MORGAN, LEWIS & BOCKIUS LLP
  600 ANTON BLVD., SUITE 1800
  COSTA MESA, CA 92626
  TEL. 1-714-830-0600
  FAX. 1-714-830-0700
  EMAIL: CARRIE.GONELL@MORGANLEWIS.COM

**Do not call, write or otherwise contact the Court or anyone employed by the Court.**

# EXHIBIT B

*Mitra Erami, et al. v. JPMorgan Chase Bank, N.A.* ("the Action")
**United States District Court for the Central District of California**
**Case No. 2:15-cv-07728-PSG-PLA**

| [name and address inserted by administrator] | CORRECT NAME AND ADDRESS HERE: _____ _____ _____ _____ Former Names (if any) _____ Last four digits of your Social Security Number:__ __ __ __ Telephone Number: (__ __ __ ) __ __ __ - __ __ __ __ |
|---|---|

## CLAIM FORM: COMPLETE FOR MONETARY RECOVERY

**TO RECEIVE A MONETARY RECOVERY, YOU MUST COMPLETE, SIGN AND MAIL THIS FORM BY FIRST CLASS U.S. MAIL OR EQUIVALENT, POSTAGE PAID, POSTMARKED ON OR BEFORE _____, TO:**

[insert]
c/o KCC
[address inserted by administrator]

**INSTRUCTIONS:**

1       You <u>must</u> timely complete, sign and mail this form on or before [60 days after mailing] to share in the monetary recovery.

2       It is **strongly** recommended that you retain proof of timely mailing for your records until receipt of your settlement payment.

3       If you move, please send the Claims Administrator your new address. It is your responsibility alone to provide a forwarding address to the United States Post Office and your current address to the Claims Administrator.

4       If found eligible, you should not expect to receive any payment until the settlement is final, which will likely occur not before _____.

**YOUR RELEVANT EMPLOYMENT DATES AND ESTIMATED SETTLEMENT AMOUNT:**

Chase's records show that during the period of February 25, 2011 through [date of preliminary approval], you held the position of Assistant Branch Manager in California in the following time periods:

<<Dates>>

Your settlement share is currently estimated at $_____.  This estimate assumes that all Class Members identified to date participate in the Settlement (*i.e.*, submit Claim Forms).  This amount is subject to change, either up or down, depending upon the number of Class Members who submit Claim Forms, challenges to estimated amounts, the outcome of those challenges, the number of Class Members who opt-out, and other possible factors.

**NON-RETALIATION:**

I understand that JPMorgan Chase may not retaliate against me in any manner as a result of my submitting this Settlement Claim Form.

**CONSENT TO JOIN SETTLEMENT:**

I have reviewed the attached Class Notice and this Form.   In order to receive any settlement payment, I consent to join in the FLSA portion of this collective action settlement and be represented by Mitra Erami, Maria McGlynn, Brittany Sanchez, and their counsel pursuant to 29 U.S.C. § 216(b).   I agree not to sue or otherwise make a claim against any of the Released Parties as to any of the Released Claims.   I also affirm that I have read and understand the Release of Claims set forth on page 3 of this document and agree to be legally bound by the Release of Claims.

**SIGNATURE REQUIRED:**

In order to receive your monetary recovery, you must sign below and return by_____, 2018.


X_____ Date: _____

(sign your name here)

## RELEASE OF CLAIMS

I hereby fully and finally release and discharge any and all wage and hour claims that accrued during or prior to the period between February 25, 2011 and [date of preliminary approval] and that have been or could have been asserted in the Action against JPMorgan Chase Bank, N.A., its affiliates, divisions, subsidiaries, parents (including, without limitation, JPMorgan Chase & Co.), predecessors (including Washington Mutual Bank and Washington Mutual, Inc. and their affiliated and related entities), any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, shareholders and/or successors, assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof (collectively, the "Settling Defendants"), including but not limited to any and all claims for overtime, minimum wage, meal and rest breaks, and waiting time penalties, and any and all claims that are derivative or directly related to the foregoing claims, which include any and all claims:   for penalties, premium pay, punitive damages, and interest; for failure to furnish accurate wage statements; for violation(s) under the California Labor Code Private Attorneys General Act ("PAGA"); for violation(s) under the Employee Retirement Income Security Act ("ERISA"); under California Labor Code Sections 201, 202, 203, 204, 210, 223, 224, 226, 226.3, 226.7, 510, 512, 558, 1194, 1197, 1197.1, and 1198; for violation(s) of the California Business & Professions Code; and/or under the common law, such as conversion and unjust enrichment.

I additionally hereby release and discharge the Settling Defendants from any and all claims under the Fair Labor Standards Act ("FLSA"), including but not limited to claims under 29 U.S.C. § 206, 211(c) and 215(a), including liquidated damages, whether known or unknown, that accrued or accrue prior to the later of the Preliminary Approval Date or the date that I signed the Claim Form.

I further agree to release any claim under Labor Code § 2699, and will not participate in any proceeding seeking penalties under § 2699 for claims pled in the Action or that could have been pled.

This release is intended to include in its effect all claims that I do not know or suspect to exist in my favor against Settling Defendants at the time of this release that are directly related to the above Released Claims.   I shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits I may otherwise have had relating to the above Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

# EXHIBIT C

Edward J. Wynne        (SBN 165819)
ewynne@wynnelawfirm.com
J.E.B. Pickett        (SBN 154294)
Jebpickett@wynnelawfirm.com
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939Telephone (415) 461-6400
Facsimile  (415) 461-3900

Plaintiffs' Counsel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITRA ERAMI, MARIA MCGLYNN, BRITTANY SANCHEZ, individually and on behalf of other members of the general public similarly situated, | Case No.: 2:15-cv-07728-PSG-PLA |
| | **[PROPOSED] THIRD  AMENDED COMPLAINT** |
| | **[CLASS ACTION]** |
| Plaintiffs, vs. | |
| JPMORGAN CHASE BANK, National Association, | 1.  Labor Code §§ 510, 1194<br>2.  B&P § 17200 - Overtime<br>3.  B&P § 17200 – Meal and Rest Breaks<br>4.  B&P 17200 – Injunction/Dec. Relief<br>5.  Labor Code § 203<br>6.  Labor Code § 226, 1174, 1174.5<br>7.  Labor Code § 2699 et seq.<br>8.  29 U.S.C. § 216(b) |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

# **GENERAL ALLEGATIONS**

1.     Plaintiff Mitra Erami was an Assistant Branch Manager for defendant JPMorgan Chase Bank, National Association ("Defendant") in Alameda County, California, within the last three years of the filing of the original complaint in this action.

2.     Plaintiff Maria McGlynn was an Assistant Branch Manager for Defendant in San Diego County, California, within the last three years of the filing of the original complaint in this action and within a year from the filing of this Second Amended Complaint.

3.     Plaintiff Brittany Sanchez was an Assistant Branch Manager for Defendant in Santa Barbara County and Ventura County, California, within the last three years of the filing of the original complaint in this action and within a year of the filing of this Second Amended Complaint.

4.     Defendant Chase Bank is a wholly owned subsidiary of JPMorgan Chase &Co.  Defendant is a bank that owns and operates retail banks in this judicial district and in the state of California.  Defendant has employees with the title "Assistant Branch Manager."

5.     Venue is proper in the Central District of California as at least some of the acts complained of herein occurred in the Central District of California as Defendant owns and operates banks in the Central District of California. Venue was established in this judicial district as a result of a motion to transfer due to a related case then pending in this judicial district.

6.     At all times herein mentioned, Plaintiffs and the class identified herein worked as employees for Defendant in salaried positions in Defendant's branch and retail locations under the business name "Chase."  At all times herein mentioned, Plaintiffs and the class have been, and continue to be, domiciled in the state of California.

7.     At all times herein mentioned Defendant is a business entity licensed

to do business and actually doing business in the Central District of California. Defendant owns and operates an industry, business and establishment in a number of separate geographic locations within the State of California, including within the Central District of California, for the purpose of selling banking services and products.  As such, and based upon all the facts and circumstances incident to Defendant's business in California, Defendant is subject to California Labor Code §§ 1194 *et seq*., California Business and Professions Code § 17200 *et seq*., (Unfair Practices Act), the applicable Industrial Welfare Commission Wage Orders, and Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

8.    Plaintiffs do not know the true names or capacities, whether individual, partner or corporate, of other possible responsible parties and Plaintiffs pray leave to amend this complaint when the true names and capacities are known. Each of the other potentially responsible parties were responsible in some way for the matters alleged herein and proximately caused Plaintiffs and members of the class to be subject to the illegal employment practices, wrongs and injuries complained of herein.

## FACTUAL ALLEGATIONS

9.    Pursuant to California Labor Code §§ 218, 218.6, and 1194, Plaintiffs may bring a civil action for overtime wages directly against the employer without first filing a claim with the California Division of Labor Standards Enforcement and may recover such wages, together with interest thereon, penalties, attorney fees and costs.

10.    Plaintiffs and all members of the class identified herein were regularly scheduled as a matter of uniform company policy to work and in fact worked as salaried bank employees in excess of eight hours per workday and/or in excess of forty hours per workweek without receiving straight time or overtime compensation for such overtime hours worked in violation of California Labor

Code §§ 510, 1194 and California Industrial Welfare Commission Wage Order 4-2001.    Defendant has failed to meet the requirements for establishing the exemption because all class members (a) regularly spent more than 50% of their time performing nonexempt work, (b) did not customarily and regularly exercise discretion and independent judgment on matters of significance, (c) did not have the authority to hire or fire or make meaningful recommendations regarding same, (d) did not customarily and regularly supervise at least two employees or the equivalent, (e) did not perform work directly related to the management policies or the general business operations of Defendant or Defendant's customers, (f) did perform nonexempt production and/or sales work a majority of their time (i.e., in excess of 50%) consistent with Defendant's realistic expectations, (g) did not customarily and regularly spend more than 50% of their time away from the Defendant's places of business selling or obtaining orders or contracts, and (h) did not earn more than 50% of their compensation in a bona fide commission plan. Thus, Plaintiffs and the class members were not exempt from the overtime requirements of California law for these reasons.

## **CLASS ALLEGATIONS**

11.   This complaint is brought by Plaintiffs pursuant to Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 382 on behalf of a class.   All claims alleged herein arise under California law for which Plaintiffs seek relief authorized under California law.    The class is comprised of, and defined as:

> All current and former California based employees of JPMorgan Chase Bank, National Association, with the title "Assistant Branch Manager" who worked at any time from February 25, 2011 up to the time of certification.

Plaintiffs also allege an FLSA sub-class comprised of, and defined as:

> All current and former California based employees of JPMorgan Chase Bank, National Association, with the

title "Assistant Branch Manager" who worked at any time from February 25, 2012 up to the time of certification.

12.   The members of the classes are so numerous that joinder of all members is impracticable.  The exact number of the members of the classes can be determined by reviewing Defendant's records.

13.   Plaintiffs will fairly and adequately protect the interests of the class and have retained counsel that is experienced and competent in class action and employment litigation.  Plaintiff has no interests that are contrary to, or in conflict with, members of the class.

14.   A class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

15.   A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, the members of the class likely will not obtain redress of their injuries and Defendant will retain the proceeds of its violations of California law.

16.   Even if any member of the class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.  Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

17.   There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.  Questions of law and fact common to each of the class predominate over any questions affecting solely individual members of the action.  Among the common questions of law and fact are:

1      a.      Whether the class has been properly classified as exempt by

2  Defendant from overtime compensation;

3      b.      Whether the class is expected to regularly work hours in excess

4  of forty per week and/or in excess of eight hours per day;

5      c.      How the class is compensated; and,

6      d.      Whether the class has sustained damages and, if so, what the

7  proper measure of damages is.

8

9                    **FIRST CAUSE OF ACTION**

10                    **(Labor Code §§ 510, 1194)**

11      18.      Plaintiffs incorporate the allegations contained in the previous

12  paragraphs of this Complaint as if fully set forth herein.

13      19.      California Wage Order 4-2001, 8 C.C.R. § 11040, and Labor Code §

14  510 state that an employee must be paid overtime, equal to 1.5 times the

15  employee's regular rate of pay, for all hours worked in excess of 40 per week

16  and/or 8 per day.

17      20.      Class members regularly work more than 40 hours per week and/or 8

18  hours per day but are not paid overtime.

19      21.      Class members do not meet any of the tests for exempt status under

20  the California Wage Orders and/or the California Labor Code.

21      22.      Plaintiffs and the class seek their unpaid overtime wages including

22  interest thereon and reasonable attorneys' fees and costs pursuant to Labor Code §

23  1194.

24                    **SECOND CAUSE OF ACTION**

25                    **(Bus. & Prof. Code § 17203 – Overtime)**

26      23.      Plaintiffs incorporate the allegations contained in the previous

27  paragraphs of this Complaint as if fully set forth herein.

28      24.      Defendant has committed an act of unfair competition under

---

5

California Business & Professions Code § 17200 *et seq.* by not paying the required state law overtime pay to the members of the class.

25.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs request an order requiring Defendant to make restitution of all overtime wages due to the class.

## THIRD CAUSE OF ACTION

### (Bus. & Prof. Code § 17203 – Meal and Rest Breaks)

26.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

27.     In violation of Labor Code § 512 and IWC Wage Order 4-2001, Defendant failed to provide and document meal and rest period breaks for the class in the number, length and manner as required.  At no time have the Plaintiffs or the class entered into any written agreement with Defendant expressly or impliedly waiving their right to their meal and rest breaks.  Plaintiffs and the class have been injured by Defendant's failure to comply with Labor Code § 512 and IWC Wage Order 4-2001 and are thus entitled to the wages set forth in Labor Code § 226.7 and IWC Wage Order 4-2001 §§ 11 and 12.

28.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs request Defendant make restitution of all wages due to the class under this Third Cause of Action.

## FOURTH CAUSE OF ACTION

### (Bus. & Prof. Code § 17203 – Injunction and Declaratory Relief)

29.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

30.     Plaintiffs, and all persons similarly situated, are further entitled to and do seek a both a declaration that the above-described business practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendant from engaging in any of such business practices in the future.  Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to all members of the class in that the Defendant

will continue to violate California law, represented by labor statutes and IWC Wage Orders, unless specifically ordered to comply with same.  This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law.  Plaintiffs have no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

## FIFTH CAUSE OF ACTION

### (Labor Code § 203)

31.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

32.    Plaintiffs and the class were discharged by Defendant or voluntarily quit, and did not have a written contract for employment.  The Defendant, in violation of California Labor Code §§ 201 and 202 *et seq*. had a consistent and uniform policy, practice and procedure of willfully failing to pay the earned and unpaid wages of all such former employees.  The Defendant has willfully failed to pay the earned and unpaid wages of such individuals, including, but not limited to, straight time, overtime, vacation time, meal and rest wages, and other wages earned and remaining uncompensated according to amendment or proof. Plaintiffs and the class did not secret or absent themselves from Defendant nor refuse to accept the earned and unpaid wages from Defendant.  Accordingly, Defendant is liable for waiting time penalties for the unpaid wages pursuant to California Labor Code § 203.

## SIXTH CAUSE OF ACTION

### (Labor Code §§ 226, 1174, and 1174.5)

33.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

34. Defendant, as a matter of corporate policy did not maintain or provide accurate itemized statements in violation of Labor Code §§ 226 and 1174.

35. For instance, Defendant did not state or did not accurately state, *inter alia*, the total hours worked, hours worked daily, or the actual hourly rate of Plaintiffs and other Assistant Branch Managers in their pay statements. Defendant's failure to maintain accurate itemized statements was willful, knowing, intentional, and the result of Defendant's custom, habit, pattern and practice. Defendant's failure to maintain accurate itemized statements was not the result of isolated, sporadic or unintentional behavior. Due to Defendant's failure to comply with the requirements of Labor Code §§ 226 and 1174, Plaintiffs and other Assistant Branch Managers were injured thereby.

36. Such a pattern and practice as alleged herein is unlawful and creates an entitlement to recovery by Plaintiffs and the class identified herein for all damages and penalties pursuant to Labor Code §§ 226 and 1174.5, including interest thereon, penalties, attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

### (Labor Code § 2699 et seq.)

37. Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

38. As alleged above, Defendant failed to comply with the California Labor Code. As such, Plaintiffs are "aggrieved employees" as defined in Labor Code § 2699(a). Pursuant to Labor Code § 2699, the Labor Code Private Attorneys General Act of 2004, Plaintiffs bring this action on behalf of themselves and other current and former Assistant Branch Managers against JP Morgan Chase Bank, National Association and seeks recovery of applicable civil penalties as follows:

> a. where civil penalties are specifically provided in the Labor Code for each of the violations alleged herein, Plaintiffs seek recovery of such penalties;

b.  where civil penalties are not established in the Labor Code for each of the violations alleged herein, Plaintiffs seek recovery of the penalties established in § 2699(e) of the Labor Code Private Attorneys General Act of 2004, and in accordance with § 200.5 of the Labor Code.

39.     On February 26, 2015, Plaintiff Erami caused to be served written notice via certified mail to the Labor and Workforce Development Agency and to Defendant JP Morgan Chase Bank, National Association of Plaintiff's intent to amend the complaint to add a cause of action pursuant to Labor Code § 2699 *et seq*.  Included with the notice was the original complaint.  Plaintiff did not receive a response from the LWDA of Plaintiff's certified letter within the time proscribed by Labor Code § 2699.3.

40.     On February 1, 2016, Plaintiffs McGlynn and Sanchez caused to be served written notice via certified mail to the Labor and Workforce Development Agency and to Defendant JP Morgan Chase Bank, National Association of Plaintiffs' intent to amend the complaint to add additional named plaintiffs seeking relief pursuant to Labor Code § 2699 *et seq*.  Included with the notice was the proposed Second Amended Complaint.  Plaintiffs did not receive a response from the LWDA of Plaintiffs' certified letter within the time prescribed by Labor Code § 2699.3.

## **EIGHTH CAUSE OF ACTION**

### **(29 U.S.C. § 201 et seq.)**

41.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

42.     At all relevant times, Defendant has been and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

43.     At all relevant times, Defendant employed, and/or continues to employ, Plaintiffs and each member of the FLSA sub-class within the meaning of the FLSA.

44.     As alleged above, Defendant had a policy and practice of failing to properly pay overtime compensation to its Assistant Branch Managers for the hours worked in excess of forty hours per week.

45.     Defendant's failure to pay Plaintiffs and all other members of the FLSA sub-class for overtime compensation at a rate not less than one and one-half times their regular rate for work performed beyond the 40 hour workweek is in violation of 29 U.S.C. §§ 206, 207.

46.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

47.     Due to the Defendant's FLSA violations, Plaintiffs, on behalf of the members of the FLSA sub-class, are entitled to recover from Defendant unpaid overtime compensation, an additional amount equal as liquidated damages, reasonable attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the members of the class, pray for judgment as follows:

1.     For an order certifying the proposed class and sub-class;

2.     For damages, penalties, restitution, attorney fees and injunctive relief; and,

3.     For prejudgment interest.

Dated:  October 13, 2017              **WYNNE LAW FIRM**

By:_____/s/Edward J. Wynne_____

1    Edward J. Wynne
2    80 E. Sir Francis Drake Blvd., Suite 3G
3    Larkspur, CA 94939
     Telephone: 415-461-6400
4    Facsimile: 415-461-3900
5    *Counsel for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

11

## **JURY DEMAND**

Plaintiffs hereby request a jury trial on all issues so triable.


Dated:  March 7, 2016                    **WYNNE LAW FIRM**


By:_____/s/Edward J. Wynne_____
               Edward J. Wynne
               80 E. Sir Francis Drake Blvd., Suite 3G
               Larkspur, CA 94939
               Telephone: 415-461-6400
               Facsimile: 415-461-3900
               *Counsel for Plaintiffs*

# EXHIBIT D

**EXHIBIT D**
**REMINDER POSTCARD**


**REMINDER**

On [mailing date] we sent you a Notice of Settlement and a Claim Form for *Erami, et al. v. JPMorgan Chase Bank, N.A.*, filed in the United States District Court, Central District of California, Case No. 15-cv-07728-PSG-PLA.

Our records show you have not submitted either a Claim Form or a request for exclusion.  If you wish to make a claim in this settlement, you must postmark your Claim Form by **no later than [deadline].**

If you have not received your Claim Form or have misplaced it, a copy may be obtained by calling the Settlement Administrator at [admin phone number].

Sincerely,

KCC

Settlement Administrator

# EXHIBIT E

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITRA ERAMI, MARIA MCGLYNN, BRITTANY SANCHEZ, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>JPMORGAN CHASE BANK, National Association,<br><br>Defendant. | Case No.: 2:15-cv-07728-PSG-PLA<br><br>**[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL

The Court, having considered the parties' Stipulation of Settlement and Release ("Stipulation") and all other materials properly before the Court, and having conducted an inquiry pursuant to Section 216(b) of the Fair Labor Standards Act of 1938 and Rule 23 of the Federal Rules of Civil Procedure, hereby finds and orders as follows:

1.     Unless otherwise defined herein, all terms used in this Order (the "Order Granting Preliminary Approval") will have the same meaning as defined in the Stipulation.

2.     The Court has jurisdiction over the subject matter of this action, the Plaintiffs, the Class Members, and JPMorgan Chase Bank, N.A.

3.     The Court finds on a preliminary basis that the settlement memorialized in the Stipulation, filed with the Court, falls within the range of reasonableness and, therefore, meets the requirements for preliminary approval such that notice to the class is appropriate.

4.     The Court finds that the Settlement was the product of protracted, arms-length negotiations between experienced counsel well-versed in the prosecution of wage and hour class and collective actions.

5.     The Court grants preliminary approval of the parties' Stipulation.

**Certification of the Proposed Rule 23 Classes For Settlement Purposes Only**

6.     Provisional settlement, class certification, and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring all class members are notified of the terms of the proposed Stipulation, and setting the date and time of the final approval hearing.

7.     Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court conditionally certifies, for settlement purposes only – and for no other purpose and with no other effect upon this or any other action, including no effect

1

upon this action should the Settlement not ultimately be approved – a Rule 23 class of all persons employed by Defendant as an exempt Assistant Branch Manager as defined in the Stipulation at any time in California during the Covered Period, except that any individual who timely submitted or submits a valid request for exclusion shall not be included in the Class.  The Covered Period shall mean February 25, 2011, through the date of this Order Granting Preliminary Approval.

8.     The Court appoints, for settlement purposes only, Named Plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez as Class Representatives.

9.     For settlement purposes only, Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

### Appointment of Plaintiffs' Counsel as Class Counsel

10.     For settlement purposes only, the Court appoints the Wynne Law Firm as Class Counsel because it meets all of the requirements under Federal Rule of Civil Procedure 23(g).

### Notice

11.     The Court approves KCC as the Claims Administrator to perform duties in accordance with Sections V through VIII of the Stipulation.

12.     The Court finds that the procedures for notifying the Class about the Settlement as described in the Stipulation provide the best notice practicable under the circumstances and therefore meet the requirements of due process, and directs the mailing of the Notices in accordance with the Stipulation.

13.     The Court approves, as to form and content, the Class Notice, attached to the Stipulation as Exhibit A, and Claim Form, attached to the Stipulation as Exhibit B.  The Claims Administrator is authorized to mail these documents, after they are updated with the appropriate dates and deadlines consistent with the Stipulation, to the applicable Class Members as provided in the Stipulation.

14.     The Class Notice satisfies Federal Rule of Civil Procedure 23(c)(2)(B) and adequately puts Class Members on notice of the proposed settlement.  The

2

Class Notice is appropriate because it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.

15.     Any Request for Exclusion must be sent to the Claims Administrator no later than sixty (60) days after the Class Notice is mailed to the Class Member. The Claims Administrator will provide any such Request for Exclusion to Class Counsel for filing with the motion for final approval of the settlement.

16.     Any written objection by a Qualified Claimant must be filed with the Court and served upon all counsel of record no later than sixty (60) days after the Class Notice is mailed to the Class Member, and such deadline applies notwithstanding any argument regarding non-receipt of the notice.  Anyone who fails to file and serve timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement and from filing any appeal from any final approval order issued by the Court.  The Parties may file a response to any objections submitted by objecting Class Members at or prior to the hearing for final approval of the Settlement.  Class Members shall be permitted to withdraw their objections in writing by submitting a withdrawal statement to the Settlement Administrator not later than one (1) business day prior to the Court's final approval hearing.

**Class Action Settlement Procedure**

17.     The Court hereby adopts the settlement approval process as set forth in the Stipulation.

18.     In the event that the Effective Date as defined in the Stipulation does not occur, the Settlement, the Stipulation, and this Order shall be deemed null and void and shall have no effect whatsoever, other than the confidentiality and non-disclosure provisions in Section XIV and the non-admission provisions in Paragraph V.54.a of the Stipulation, which shall remain in effect.  In such case, nothing in the Stipulation or this Order shall be relied upon, cited as, constitute

3

evidence of, or constitute an admission that class or collective action certification is or may be appropriate in this action or any other matter.

19.     Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Order and Judgment, Plaintiffs and all Class Members and anyone acting on behalf of any Class Member shall be barred and enjoined from:  (a) further litigation in this Action; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against Defendant in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

20.     The parties are ordered to carry out the Settlement according to the terms of the Stipulation.

21.     The Court will conduct a Final Approval and Fairness Hearing on _____, 2018 at _____ p.m. for the purposes of:  (a) making a final determination of the fairness, adequacy, and reasonableness of the Settlement terms and procedures; (b) fixing the amount of attorneys' fees and litigation costs and expenses to Class Counsel and enhancement awards to the Plaintiffs; (c) hearing any timely and properly filed objections; and (d) entering Judgment.  The Final Approval and Fairness Hearing may be continued without further notice to Class Members.  The parties shall file their joint motion for final approval of the settlement, and Class Counsel shall file their motion for attorneys' fees, litigation costs and expenses, and enhancement awards on or before _____, 2018.

**IT IS SO ORDERED.**

Dated:  _____, 2018

_____
Honorable Philip S. Gutierrez
Central District of California

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT F

1
2
3
4
5
6
7    **UNITED STATES DISTRICT COURT**
8    **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9  MITRA ERAMI, MARIA MCGLYNN, BRITTANY SANCHEZ, individually and on behalf of other members of the general public similarly situated, | Case No.: 2:15-cv-07728-PSG-PLA |
| 11 | **[PROPOSED] FINAL ORDER AND JUDGMENT** |
| 12 | |
| 13      Plaintiffs, vs. | |
| 14 | |
| 15  JPMORGAN CHASE BANK, National Association, | |
| 16 | |
| 17      Defendant. | |

18
19
20
21
22
23
24
25
26
27
28

## [PROPOSED] FINAL ORDER AND JUDGMENT

The Court, having considered the parties' Stipulation of Settlement and Release ("Stipulation") and all other materials properly before the Court, and having conducted an inquiry pursuant to Section 216(b) of the Fair Labor Standards Act of 1938 and Rule 23 of the Federal Rules of Civil Procedure, hereby finds and orders as follows:

1.    Unless otherwise defined herein, all terms used in this Order (the "Final Order and Judgment") will have the same meaning as defined in the Stipulation.

2.    The Court has jurisdiction over the subject matter of this action, the Plaintiffs, the Class Members, and JPMorgan Chase Bank, N.A.

3.    The Court finds that the Settlement was the product of protracted, arms-length negotiations between experienced counsel.  The Court grants final approval of the Settlement, including the releases and other terms, as fair, reasonable and adequate as to the Parties, the Claimants, and the Qualified Class Members (collectively, the "Settling Parties").  The Settling Parties are directed to perform in accordance with the terms set forth in the Stipulation.

4.    The Court finds that there were _____ written objections to the Settlement.  The Court finds that these objections are without merit and are overruled.

5.    The Courts find that ___ Class Members have opted out of the settlement and are not bound by its release.  Those individuals are: [list names].

6.    The Court finds that the procedures for notifying the Class about the Settlement, including the Class Notice and related documents, constituted the best notice practicable under the circumstances to all Class Members, and fully satisfied all necessary requirements of due process.  Based on the evidence and other materials submitted to the Court, the Class Notice to the Class Members provided      adequate,      due,    sufficient and valid notice of the Settlement.

1

7.     The Court finds, for settlement purposes only, that the Class satisfies the applicable standards for certification under Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b).

8.     The Action is dismissed on the merits and with prejudice, permanently barring the Plaintiffs and all other Claimants and Qualified Class Members from filing, commencing, prosecuting, or pursuing the claims Released by the Stipulation whether or not on a class or collective action basis, or from participating in any class or collective action involving such claims.

9.     Class Counsel's request for attorneys' fees and litigation costs and expenses in this action is approved as follows:  Class Counsel are hereby awarded $_____     for attorneys' fees and reimbursement of litigation costs and expenses, which the Court finds were reasonably incurred in prosecution of this case.

10.     The enhancement awards for the Named Plaintiffs, as set forth in Paragraph V.d.iii of the Stipulation of Settlement and Release, are approved to compensate them for their unique services in initiating and maintaining this litigation.

11.     Nothing relating to this Order, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or Releasees of any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter.  There has been no determination by any Court as to the merits of the claims asserted by Plaintiffs against Defendant or as to whether a class should be certified, other than for settlement purposes only.  Furthermore, nothing in this Agreement shall be cited to as, construed to be, admissible as, or considered any form of waiver of any alternative dispute resolution agreements, provisions, or policies by Defendant or Releasees.

[PROPOSED] ORDER
CASE NO. 2:15-cv-07728-PSG-PLA

12.     The action is dismissed on the merits and with prejudice, and Plaintiffs, Class Members, and Claimants, or anyone acting on their behalf, shall be barred and enjoined from:  filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against Defendant in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or  seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

13.     The Court shall have exclusive and continuing jurisdiction over this Action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Stipulation and this Final Approval Order.

14.     The Parties are ordered to carry out the Settlement as provided in the Stipulation.

15.     This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: _____, 2018          _____
                                                  Honorable Philip S. Gutierrez
                                                  Central District of California