UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**   Order GRANTING Plaintiffs' motion for preliminary approval of class action settlement

Before the Court is a motion for preliminary approval of class action settlement filed by Plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez ("Plaintiffs"). *See* Dkt. # 82 ("*Mot.*"). The Court held a hearing in this matter on March 5, 2018. Having considered the moving papers and oral arguments, the Court **GRANTS** Plaintiffs' motion.

I.   Background

Plaintiffs seek preliminary approval of an $8,333,333 settlement ("the Settlement Agreement") between Plaintiffs and Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase"). *Mot.* 1:3–6. Plaintiffs brought this action as a putative class action on behalf of themselves and all other employees that Defendant employed as Assistant Branch Managers ("ABMs") in California from February 25, 2011 through the present, and whom Defendant classified as exempt from certain provisions of the California Labor Code. *Id.* 1:7–11.

Plaintiffs' third amended complaint ("TAC") alleges that Defendant misclassified Plaintiffs and putative class members as exempt from overtime compensation under both state and federal law and from the California Labor Code's meal and rest break provisions. *Id.* 1:11–14. Additionally, Plaintiffs allege a derivative claim that such misclassification resulted in violations of California Labor Code § 226 regarding accurate, itemized wage statements, and also constituted an unfair business practice under California Business & Professions Code §§ 17200 et seq. *Mot.* 1:14–18. Plaintiffs also seek civil penalties for the California Labor Code violations alleged in the proposed TAC on behalf of themselves and other allegedly aggrieved employees under Labor Code §§ 2699 et seq., the Labor Code Private Attorneys General Act ("PAGA"). *Mot.* 1:18–21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

    Plaintiff Erami initially filed this action against Defendant in Solano County Superior Court on February 25, 2015. *See* Dkt. # 1-1. Defendant then removed the action to the U.S. District Court for the Eastern District of California. *See Notice of Removal*, Dkt. # 1 ("*NOR*"). On May 19, 2015, Plaintiff filed a first amended complaint that added a PAGA cause of action. *See* Dkt. # 10. On June 4, 2015, the matter was transferred to the Northern District of California. *See* Dkt. # 12. On September 28, 2015, the matter was then transferred to this Court, based on a then-pending consolidated action, *Hightower et al. v. JPMorgan Chase Bank, N.A.*, CV 11-1802 PSG (PLAx), which included an action that alleged a subclass of ABMs. *Mot.* 2:22–28; *see also* Dkt. # 43.

    Discovery commenced in October 2015. *Mot.* 3:1–4. On March 3, 2016, the parties filed their Joint Rule 26 Report. *See* Dkt. # 59. In that Report, Defendant stated that many putative class members signed arbitration agreements with a class action waiver. *Id.*

    On March 7, 2016, the Court granted Plaintiff leave to file a second amended complaint ("SAC"). *See* Dkt. # 62. The SAC added Plaintiffs McGlynn and Sanchez to address Defendant's claim that Plaintiff Erami did not have standing to assert the PAGA cause of action. *See* Dkt. # 63. On April 11, 2016, the parties appeared for a scheduling conference and were given an ADR referral. *See* Dkt. # 69. On June 21, 2016, the parties filed a stipulation to continue the filing and hearing dates on class certification due to the parties' continued meet and confer efforts regarding Defendant's and Plaintiffs' depositions. *See* Dkt. # 72.

    On July 21, 2016, Plaintiffs Sanchez and McGlynn filed separate complaints against Defendant with the National Labor Relations Board ("NLRB"), alleging that the class action waiver in Defendant's arbitration agreements violated Section 7 of the National Labor Relations Act. *Mot.* 4:13–16.

    In December 2016, Plaintiffs hired Dr. Jon Krosnick to conduct a survey of ABMs with respect to their activities and hours. *Id.* 4:27–5:2. The survey was administered online, and Dr. Krosnick interpreted the results as follows based on his categorization of tasks as either exempt or non-exempt:

- ABMs work on average approximately 8.93 hours of overtime per week. *Id.* 8:25–26.

- ABMs do not receive meal breaks approximately 60 percent of the time. *Id.* 8:27–28.

- Ninety-five percent of ABMs spend a majority of their time (on average, 77.66 percent) engaged in non-exempt tasks. *Id.* 9:1–3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

On January 18, 2017, the parties conducted mediation with Mark Rudy. *Id.* 5:5–6. No settlement was reached at mediation, but the parties continued to negotiate. *Id.* 5:6–7. In February 2017, in an attempt to reach a global settlement, Plaintiffs joined efforts with plaintiffs from two other consolidated cases pending in the Southern District of New York that similarly alleged that ABMs were misclassified under the Fair Labor Standards Act ("FLSA") and various state laws. *Id.* 5:7–12.

In May 2017, the three cases reached an agreement with Defendant to settle all cases for $25 million, with this action receiving $8,333,333 of that amount. *Id.* 5:18–20. On August 16, 2017, Plaintiffs and Defendant executed a Memorandum of Understanding. *Id.* 5:20–22. As a part of the proposed settlement, Plaintiffs agreed to amend their complaint to add claims under the FLSA for California ABMs only. *See* Dkt. # 80. On December 14, 2017, the parties filed a Joint Application to reopen the case. *See* Dkt. # 79. On January 12, 2018, Plaintiffs filed their TAC. *See* Dkt. # 84 ("*TAC*").

II.     Class Certification for Settlement Purposes

Plaintiffs seek to certify a class for settlement purposes only, defined as

> any individual employed by Chase in an exempt ABM position in California including Assistant Branch Manager, Assistant Branch Manager – Ops, Assistant Branch Manager – Sales, Assistant Branch Manager In-Store III, or Assistant Branch Manager In Store IV during the period from February 25, 2011 through preliminary approval and who does not timely opt-out of the Settlement Class.

*Mot.* 9:25–10:3.

When parties settle an action prior to class certification, the Court is obligated to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether [the] proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 952 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

    A.     Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

Parties seeking certification of a settlement-only class must still satisfy the Federal Rule of Civil Procedure 23 standards. *See id.* at 1019–24. Under Rule 23, a plaintiff must satisfy the four prerequisites of Rule 23(a) *and* demonstrate that the action is maintainable under Rule 23(b). *See Amchem*, 521 U.S. at 613–14. The four prerequisites of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiffs seek certification under Rule 23(b)(3), *see Mot.* 16:11–17:25, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

B. Discussion

    *i.* *Numerosity*

The first requirement for maintaining a class action under Rule 23(a) is that the class is "so numerous that joinder of all members would be impracticable." Fed. R. Civ. P. 23(a)(1). Courts generally presume numerosity when there are at least forty members in the proposed class. *See Charlebois v. Angels Baseball, LP*, No. SACV 10-0853 DOC (ANx), 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011).

Here, Plaintiffs assert that, based on Defendant's records, the class exceeds 2,000. *See Mot.* 11:25; *NOR* ¶ 15. Numerosity is therefore satisfied.

    *ii.* *Commonality*

To fulfill the commonality requirement of Rule 23(a)(2), Plaintiffs must establish questions of law or fact common to the class as a whole. *See* Fed. R. Civ. P. 23(a)(2). The class claims must depend on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (internal quotation marks omitted). For the purposes of Rule 23(a)(2), even a single common question satisfies the requirement. *See id*. at 359; *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)).

Here, Plaintiffs identify a number of questions of fact and law common to the class, including whether Defendant violated California law by: failing to pay all overtime wages due;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

failing to authorize and permit class members to take meal and rest breaks; engaging in unfair business practices; and attempting to enforce unlawful arbitration agreements and releases of claims. *See Mot.* 12:7–13. Plaintiffs' challenge to Defendant's meal and rest period policies in particular present common questions that will likely generate common answers. *See Dukes*, 564 U.S. at 350. Defendants classified ABMs as exempt under three exemption categories: administrative, executive, and a "combination" of the two, *see Mot.* 12:20–21, and under California law, "employees are entitled to overtime pay for any work in excess of eight hours in one workday, or 40 hours in any one workweek, *unless* the employer affirmatively establishes that the employee qualifies for a statutory exemption." *Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795, 816 (2013) (emphasis added). Accordingly, whether ABMs are properly classified under any or all of these exemptions—which Plaintiffs allege they are *not*, *see Mot.* 15:13–15—is a legal question amenable to a common, classwide answer. *See Campbell v. PricewaterhouseCoopers, LLP*, 287 F.R.D. 615, 622 (E.D. Cal. 2012) (finding commonality regarding administrative exemption). Commonality is therefore satisfied.

    *iii.*    Typicality

Typicality requires a showing that the named Plaintiffs are members of the class they represent and that their claims are "reasonably coextensive with those of absent class members," but not necessarily "substantially identical." Fed. R. Civ. P. 23(a)(3); *Hanlon*, 150 F.3d at 1020. The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The typicality and commonality requirements somewhat overlap. *See General Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).

Here, the named Plaintiffs were employed by Defendant as ABMs, were primarily engaged in the same type of activities, and customarily and regularly worked more than 40 hours per week. *Mot.* 15:26–16:1. Given that the challenged practices were allegedly applicable to all ABMs, class members possess similar interests and have suffered similar injuries as the named Plaintiffs. Typicality is therefore satisfied.

    *iv.*    Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "[t]he proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members

Case 2:15-cv-07728-PSG-PLA   Document 86   Filed 03/05/18   Page 6 of 15   Page ID #:876

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Here, the Court identifies no apparent conflicts of interest between Plaintiffs and class members. As discussed above, Plaintiffs seek to redress the same alleged wage and hour violations as class members, and so the Court cannot discern the potential for a conflict. Furthermore, the Court does not perceive any conflict of interest between class members and Plaintiffs' counsel, who are experienced in the field of employment law and capable of representing the interests of the class. *See Declaration of Edward J. Wynne*, Dkt. # 82-1 ("*Wynne Decl.*"), ¶¶ 2–9. Plaintiffs and Plaintiffs' counsel have litigated this action for several years, and there is no indication that they will cease these efforts during the settlement process. Adequacy is therefore satisfied.

> v. *Predominance and Superiority*

Having concluded that Plaintiffs satisfy the Rule 23(a) factors, the Court now turns to Rule 23(b)(3). Rule 23(b)(3) provides that a class may be certified where common questions of law or fact predominate over individual questions and a class action is the superior method for adjudicating the controversy as a whole. *See* Fed. R. Civ. P. 23(b)(3). The predominance aspect specifically "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, Plaintiffs characterize the predominant inquiry in this action as whether Defendant's expectation that its ABMs be primarily engaged in exempt work was "realistic," which is a common, predominant question for purposes of Rule 23(b)(3). *See Mot.* 16:23–26. A determination of whether an employee is exempt requires an examination of the realistic requirements of the job. *See Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 52–53 (2014) (quoting *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal. 4th 785, 802 (1999)) ("Once we have brought into focus the ultimate issue of 'the employer's realistic expectations' or 'the *realistic* requirements of the job,' it is not difficult to contemplate that employees in a given job classification will often be either wholly exempt or wholly nonexempt, since a job classification often entails a common set of employer expectations or requirements for performance of the job.") (emphasis in original and citation omitted). Accordingly, whether Defendant's expectation that ABMs would be primarily engaged in exempt work is realistic or not is "by nature a common question eminently suited for class treatment." *Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 380 (2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

In addition, Plaintiffs also seek to address whether the aforementioned "combination" exemption is permitted under California law and whether Defendant's arbitration clauses and releases are legal. *See Mot.* 17:10–12. As Plaintiffs correctly note, these are purely legal questions that are equally applicable to all class members, and so resolution of these questions will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

As for superiority, requiring thousands of class members to litigate their claims separately would be inefficient and costly, resulting in duplicative and potentially conflicting proceedings. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated."). Class members could face difficulty finding legal representation and could lose incentive to bring their claims if forced to do so in isolation. *See In re Napster, Inc. Copyright Litig.*, No. C 04-1671 MHP, 2005 WL 1287611, at *8 (N.D. Cal. June 1, 2005) (finding superiority in part because "many small composers individually lack the time, resources, and legal sophistication to enforce their copyrights"). A class action would thus be the superior method for adjudicating this action.

In short, the Court concludes that both the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

    C.    Conclusion

Plaintiffs have met the requirements for class certification under Rule 23. Therefore, the Court **CERTIFIES** the proposed class for settlement purposes only. The Court also **APPOINTS** the Wynne Law Firm as Class Counsel and **APPOINTS** Plaintiffs as Class Representatives.

III.    Preliminary Approval of the Proposed Class Action Settlement

The next step is to determine whether the settlement reached is "fair, reasonable, and adequate" under Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2).

    A.    Legal Standard

The approval of a class action settlement is a two-step process under Rule 23(e) in which the court first determines whether a proposed class action settlement deserves preliminary approval. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-6352 MMM (CGx), 2014 WL 10212865, at *5 (C.D. Cal. July 28, 2014). "At the preliminary approval stage, a court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

determines whether a proposed settlement is within the range of possible approval and whether or not notice should be sent to class members." *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010). Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *See Manual for Complex Litigation* (Fourth) § 13.14. Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-2161 DOC, 2014 WL 360196, at *4 (C.D. Cal. Jan. 31, 2014); *see also Eddings v. Health Net, Inc.*, No. CV 10-1744 JST (RZx), 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013).

After notice is given to the class, preliminary approval is followed by a review of the fairness of the settlement at a final fairness hearing, and, if appropriate, a finding that it is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1027. In making this determination, the district court must

> balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Staton*, 327 F.3d at 959; *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026. The district court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. Because it is provisional, courts grant preliminary approval of a class action settlement where the proposed settlement does not disclose grounds to doubt its fairness and lacks "obvious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

deficiencies." *In re Vitamins Antitrust Litig.*, No. MISC 99-0197(TFH), 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation* (Third) § 30.41).

    B.    Overview of the Settlement Agreement

The gross settlement amount is $8,333,333. *See Wynne Decl.*, Ex. 1 ("Joint Stipulation of Class Action Settlement and Release"), ¶¶ 26, 54 ("*Settlement Agreement*"). The gross settlement amount funds: (1) attorneys' fees, totaling $2,777,777.67, or one-third of the settlement amount; (2) litigation costs, not to exceed $55,000; (3) Class Representative service payments to named Plaintiffs, not to exceed $5,000 per Plaintiff; (4) a payment of $75,000 to the California Labor and Workforce Development Agency ("LWDA"), representing the LWDA's 75% share of the settlement attributable to PAGA penalties; (5) a reserve fund not to exceed $50,000 for disputed, untimely, and self-identified claims; and (6) settlement administration costs of $26,500. *See Settlement Agreement* ¶ 54.[1]

The remaining net settlement amount, estimated at $5,335,000, will be distributed to class members, resulting in an average net recovery per class member of approximately $2,670. *See Mot.* 22:17–20. It will be distributed to qualifying claimants based on the number of weeks worked in class positions during the class period. *See Settlement Agreement* ¶ 54. Each claimant will receive a pro rata portion of the net settlement amount "determined by dividing the total number of weeks worked in Class Positions during the Class Period by all members of the Class into the amount of the Net Settlement Amount to arrive at an amount per week; then, for each eligible Class Member, multiplying that amount times the number of weeks the Settlement Administrator determines that such Class Member was employed during the Class Period in a Class Position." *Id.* In addition, upon final approval, each class member who has not opted out of the settlement "shall be deemed to have fully, finally, and forever released" Defendant from "all wage and hour claims that accrued during or prior to the Class Period and that have been or could have been asserted in the instant Action." *Id.* ¶¶ 54, 93.

    C.    Analysis of Settlement Agreement

        i.    *Fair and Honest Negotiations*

In general, evidence that a settlement agreement is arrived at through genuine arms-length bargaining supports a conclusion that the settlement is fair. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Sarabi v. Weltman, Weinberg & Reis Co., L.P.A.*,

---

[1] The gross settlement account "does not cover the employer-side payroll taxes which Defendant will be solely responsible for." *Settlement Agreement* ¶ 54.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

No. CV 10-1777 AJB (NLSx), 2012 WL 3809123, at *1 (S.D. Cal. Sept. 4, 2012) (holding that a settlement should be granted preliminary approval after the parties engaged in extensive negotiations); *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014) (declining to apply a presumption but considering the arms-length nature of the negotiations as evidence of reasonableness).

Here, the evidence supports the conclusion that the settlement is fair. The Settlement Agreement was reached after nearly three years of litigation. During that time, the parties engaged in extensive discovery, including propounding written discovery requests, interrogatories, and requests for production, which yielded Defendant's production of more than 10,000 documents. *See Wynne Decl.* ¶ 13; *Mot.* 23:2–19. Defendant also provided information relating to putative class members, and Plaintiffs utilized Dr. Jon Krosnick to conduct a survey. *See id.* ¶ 19. Although the January 2017 mediation with Mark Rudy proved unsuccessful, the parties continued the negotiation process. *See id.* ¶ 20. The eventual settlement agreement was reached in conjunction with two other similar cases. *See id.* ¶¶ 20–21.

There is no indication that the negotiations were dishonest or collusive in any way, and the extensive discovery conducted in this case suggests that the parties were well informed and had sufficient information to assess the merits of their claims. *See Glass v. UBS Fin. Servs., Inc*., CV 06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (reasoning that the parties' having undertaken informal discovery prior to settling supports approving the class action settlement). The Court is therefore satisfied that the Settlement Agreement is the product of fair and honest negotiation.

        *ii.*      Settlement Amount

To evaluate whether a settlement falls within the range of possible approval, "courts consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the net settlement amount is approximately $5,335,000, and the class includes roughly 2,000 members. *See Mot.* 22:17–18. Therefore, Plaintiffs estimate that the average net recovery per class member will be approximately $2,670, or, based on workweeks, over $4,600 for a class member who was employed as an ABM throughout the statutory coverage of the action. *See id.* 22:18–23; *Wynne Decl.* ¶ 29. Plaintiffs note that this Court approved a settlement in the analogous *Hightower* case that yielded an average recovery of $200 per class member. *See* CV 11-1802, Dkt. # 219.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

Furthermore, the Settlement Agreement confers a substantial benefit on class members who would face significant risk of no recovery and ongoing litigation expense if forced to proceed with litigation. Class Counsel has identified a number of potential obstacles Plaintiffs and class member would face if this litigation were to continue: denial of class certification; Defendant's prevailing on one of its affirmative defenses relating to administrative or executive exemptions; enforcement of Defendant's arbitration agreements; or enforcement of Defendant's severance agreements. *See Wynne Decl.* ¶ 28.[2] Given the ongoing risks of litigation, in addition to the relative value of each class member's recovery, the Court concludes that the settlement amount is within the range of approval.

        *iii.*     *Attorneys' Fees and Costs*

When approving attorneys' fees in common fund cases, courts in the Ninth Circuit have discretion to apply the percentage-of-the-fund method or the lodestar method to determine reasonable attorneys' fees. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). If employing the percentage-of-the-fund method, the "starting point" or "benchmark" award is 25 percent of the total settlement value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). A court may exceed the benchmark but must explain its reasons for so doing. *See Powers*, 229 F.3d at 1255–57.

Here, the Settlement Agreement provides that Class Counsel may request an attorneys' fees award as high as $2,777,777.67, or 33 1/3 percent of the Settlement Payment, and costs and expenses not to exceed $55,000. *Settlement Agreement* ¶ 54. Because the contemplated attorneys' fees award is greater than the 25 percent "benchmark" established in this Circuit, Class Counsel must justify an upward departure from the 25 percent benchmark under the *Vizcaino* factors. *See Vizcaino*, 290 F.3d at 1048–50 (examining "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by plaintiffs; and (5) awards made in similar cases"). In addition, Class Counsel is further instructed to provide the Court with additional memoranda showing the requested hourly rate and hours expended in this case so that it can calculate the lodestar value and determine if use of a multiplier is required and acceptable.

        *iv.*     *Incentive Awards*

---

[2] Plaintiffs illustrate these risks with a specific case: Class Counsel was involved with the *Duran* action, in which it successfully obtained class certification and prevailed at trial after eight years of litigation, only to see reversal by the California Supreme Court after an additional five years of litigation. *See Mot.* 22:3–15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F. 3d at 958. Here, the Settlement Agreement provides that named Plaintiffs will request an incentive award in an amount not to exceed $15,000, for an allocation of $5,000 per named Plaintiff. *See Settlement Agreement* ¶ 54. Courts typically examine the propriety of an incentive award by comparing it to the total amount other class members will receive and considering the efforts the plaintiff made in furtherance of the litigation. *See Staton*, 327 F.3d at 975. Courts have approved incentive awards of $7,500 when individual claimants receive an average award of at least $4,000 in a wage and hour class action settlement. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI, 2012 WL 1790371, at *14, 16–19 (E.D. Cal. May 16, 2012); *Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DLB, 2011 WL 1883188, at *9–11 (E.D. Cal. May 17, 2011). Here, Plaintiffs have provided estimates of average class member recovery ranging from $2,670 to $4,600, *see Mot.* 22:18–23, which is similar to the $5,000 incentive awards that Plaintiffs may request.

An award compensating Class Representatives appears to be appropriate in this case, and $5,000 is a reasonable amount considering the likely awards that claimants will receive.

> v. PAGA Penalty

The parties have agreed to a PAGA award of $100,000. *See Settlement Agreement* ¶ 54. In accordance with California Labor Code section 2699(i), the Settlement Agreement provides that the LWDA will receive 75 percent of the amount attributable to PAGA penalties. *See id.*; *see also* Cal. Lab. Code § 2699(i) (providing that 75 percent of civil penalties recovered by aggrieved employees should be distributed to the LWDA). Therefore, the LWDA will receive $75,000. *Settlement Agreement* ¶ 54. This allocation represents 0.9 percent of the $8,333,333 total settlement amount, which falls within the zero to two percent range for PAGA claims approved by courts. *See, e.g.*, *In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent, or $20,000); *Hopson v. Hanesbrands, Inc.*, No. CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent, or $1,500); *Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (approving settlement of wage and hour class action claims and PAGA claims under which no money was allocated to the PAGA claims). Therefore, the Court finds that the settlement of the claims for penalties under PAGA is reasonable.

> vi. FLSA Claims

Finally, the Court notes that, as part of the settlement process, Plaintiffs filed an amended complaint that added a claim under the FLSA. *See Mot.* 5:24–27; *see also TAC* ¶¶ 41–47. It also observes that FLSA claims are explicitly included in the list of released claims, *see*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | | Date | March 5, 2018 |
|---|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | | |

*Settlement Agreement* ¶ 83, which applies to both claimants *and* class members who have not affirmatively opted out of the Settlement. *See id.* ¶ 54. Based solely on the terms of the Settlement Agreement, such a scheme is impermissible, as courts in this Circuit have routinely held that "only class members who affirmatively 'opt in' to [a] Settlement shall be bound by its release of liability under the FLSA." *La Parne v. Monex Deposit Co.*, No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606, at *3 (C.D. Cal. Nov. 29, 2010); *see also Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014) ("[T]he proposed settlement improperly seeks to compromise FLSA claims in a Rule 23 context. . . . FLSA claims cannot be treated within a class action under Rule 23. That is because FLSA claims are collective action claims that require an affirmative opt-in by written consent on the part of claimants, whereas Rule 23—as expressly structured here—operates on an opt-out basis.") (citations omitted); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA, 2013 WL 60464, at *7–8 (N.D. Cal. Jan. 2, 2013) ("The Court finds that the proposed settlement is obviously deficient because approval of the settlement would violate the FLSA. . . . [I]t is contrary to § 216(b) to bind class members to a release of FLSA claims where, as here, the members have not affirmatively elected to participate in the lawsuit by filing a written consent form.").

However, the Court's concern is addressed in the proposed Notice to be sent to class members. *See Wynne Decl.*, Ex. A ("Notice of Settlement of Class Action") ("*Notice*"). There, it is specified that "[b]y completing and submitting a Claim Form," claimants "will be considered to have 'opted in' to the action." *Id.* at 8. In addition, the Notice indicates that class members who "do nothing" will "still nevertheless be bound by all the terms of the Settlement, including the waiver and release of all Released Claims . . . *except for claims under the Fair Labor Standards Act*." *Id.* at 9 (emphasis added). Accordingly, the Settlement treats FLSA claims in a permissible manner. Only those who "opt in" to the Settlement by submitting a claim are bound by the release of FLSA claims, while those who either "opt out" or do nothing do not release their FLSA claims.

  D. <u>Notice to Class Members</u>

Before the final approval hearing, the Court requires that adequate notice of the settlement be given to all class members. Federal Rule of Civil Procedure 23 provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

    (ii) the definition of the class certified;

    (iii) the class claims, issues, or defenses;

    (iv) that a class member may enter an appearance through an attorney if the member so desires;

    (v) that the court will exclude from the class any member who requests exclusion;

    (vi) the time and manner for requesting exclusion; and

    (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

    Plaintiffs have provided the Notice of Proposed Class Action Settlement, which sets forth in clear language: (1) the nature of the action and the essential terms of the settlement agreement; (2) the meaning and nature of the class; (3) Class Counsel's application for attorney fees, the proposed incentive payment for Plaintiffs, and the estimated administration costs; (4) the calculation and distribution of the Net Settlement Fund; (5) how to request exclusion; (6) how to dispute the total number of workweeks worked during the claim period; (7) how to object to the settlement; (8) how to submit a claim; (9) information concerning the release; (10) the Court's procedure for final approval of the settlement; and (11) how to obtain additional information regarding this case and the Settlement Agreement. *See generally Notice*.

    Within fourteen days of the entry of an order granting preliminary approval, Defendant will provide the Settlement Administrator with information regarding all class members, including "name(s), last known residence addresses, Social Security numbers, and dates worked in Class Positions during the Class Period." *Settlement Agreement* ¶ 62. The Settlement Administrator will update the addresses using the National Change of Address database and other available resources to update the contact information on the database before mailing the Notice and Claim Form. *See id*. ¶ 64. For any Notice materials that are returned as undeliverable, the Settlement Administrator will use skip tracing to obtain a valid mailing address and re-mail the Notice and Claim Form to the new address. *See id*. Class members will have sixty days from the date of mailing to return valid Claim Forms. *See id*. ¶ 67. The Notice explains the opt-out and objection procedures. *See Notice* at 8–9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7728 PSG (PLAx) | Date | March 5, 2018 |
|---|---|---|---|
| Title | Mitra Erami et al. v. JPMorgan Chase Bank, N.A. | | |

Having reviewed the Notice, the Court notes a few small changes. First, please change the Court's address to "United States District Court for the Central District of California, 350 West First Street, Los Angeles, CA 90012, Courtroom 6A." *See Notice* at 1, 8. Second, please be sure to fill in all the blank spaces currently contained throughout the Notice. Should these spaces remain blank on the final version of the Notices, it may generate confusion among class members.

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The Court **PRELIMINARILY APPROVES** the Settlement Agreement and **APPROVES** the Notice, subject to the conditions referenced above. The final approval hearing is set for **September 10, 2018 at 1:30PM**.

The Court **ORDERS**, at least thirty days before the final approval hearing and in addition to the motion for final approval of class action settlement:

A memorandum justifying Class Counsel's award of attorneys' fees and costs that includes declarations supporting the reasonableness of each attorney's requested hourly rate, itemized billing statements showing hours worked, hourly rates, expenses incurred thus far, and expenses to be incurred in the future. The memorandum should explain in detail why an upward departure from the benchmark percentage rate is warranted.

**IT IS SO ORDERED.**