Edward J. Wynne  (SBN 165819)
ewynne@wynnelawfirm.com
WYNNE LAW FIRM
Wood Island
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
Telephone    (415) 461-6400
Facsimile     (415) 461-3900

Plaintiffs' Counsel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITRA ERAMI, MARIA MCGLYNN, BRITTANY SANCHEZ, individually and on behalf of other members of the general public similarly situated, <br><br>        Plaintiffs, <br>    vs. <br><br> JPMORGAN CHASE BANK, National Association, <br><br>        Defendant. | Case No.: 2:15-cv-07728-PSG-PLA <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  September 10, 2018 <br> Time: 1:30 p.m. <br> Courtroom: 6A <br> Hon. Philip S. Gutierrez |

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on September 10, 2018 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Hon. Philip S. Gutierrez, United States District Court for the Central District of California, located at 350 West 1st Street, 6th Floor, Los Angles, California, in Courtroom 6A, plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez will and hereby do respectfully move the court for final approval of the proposed class action settlement. Specifically, Plaintiffs respectfully request that the Court (1) grant final approval for the proposed class action settlement adjudging the terms of the settlement to be fair reasonable and adequate and directing that its terms and provisions be carried out; (2) approve the payment to service enhancements to the named plaintiffs; (3) approve payment of class counsel's fees and costs; and (4) approve the settlement administrator's payment.

Plaintiffs make this motion on the grounds that the proposed settlement is fair reasonable and adequate. This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Edward J. Wynne, the Declaration of Mitra Erami, the Declaration of Maria McGlynn, the Declaration of Brittany Sanchez, the Declaration of Bernella Osterlund for Settlement Administrator KCC, LCC, oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated: August 10, 2018                    WYNNE LAW FIRM

                                          /s/ *Edward J. Wynne*
                                          Edward J. Wynne
                                          Attorneys for Plaintiffs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>TABLE OF CONTENTS</u>**

NOTICE OF MOTION AND MOTION ................................................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

    INTRODUCTION ................................................................................. 1

    PROCEDURAL STATEMENT .............................................................. 2

        A.    Litigation Through Preliminary Approval ................................... 2

        B.    Settlement Administration ............................................................. 6

    SUMMARY OF SETTLEMENT TERMS ........................................... 7

        A.    Settlement Fund ........................................................................... 7

        B.    Class Definition .......................................................................... 8

        C.    Class Representatives and Class Counsel ................................... 8

        D.    Notice Procedure ......................................................................... 8

        E.    Plan of Allocation ....................................................................... 9

                1.    Net Settlement Fund ....................................................... 9

                2.    Class Representative Enhancement Awards ..................... 9

                3.    Attorneys' Fees and Costs ............................................... 9

                4.    LWDA payment ............................................................... 9

    STANDARDS FOR FINAL APPROVAL ........................................... 9

        A.    The Settlement is Entitled to a Presumption of Fairness ........... 10

                1.    The Settlement was Reached Through Arm's-Length Negotiations ...................................................... 10

                2.    Substantial Investigation has Been Completed ................ 11

                3.    Class Counsel is Experienced and Endorses the Settlement ...................................................................... 11

                4.    There Are No Objections to the Settlement ..................... 12

        B.    The Risk and Expense of Further Litigation ............................. 12

        C.    The Amount Offered in Settlement ........................................... 14

        D.    The Requested Incentive Awards Should Be Approved ........... 14

    CONCLUSION ................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Boyd v. Bechtel Corp.*,
   485 F.Supp. 610 (N.D. Cal. 1979) ............................................................ 11

*Ching v. Siemens Indus.*,
   2014 WL 2926210 ...................................................................................... 15

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................................. 10

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981) ..................... 11

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612, (2018) ............................................................................ 13

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*,
   630 F.Supp. 482 (E.D. Pa. 1985) ............................................................. 11

*Gribble v. Cool Transports, Inc.*,
   2008 WL 5281665 (C.D. Cal. 2008) ........................................................ 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................. 10

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935 (9th Cir. 2011) .................................................................... 14

*In re Heritage Bond Litigation*,
   2005 WL 1594403 ...................................................................................... 10

*In re Mercury Interactive Corp.*,
   618 F.3d 988 (9th Cir. 2010) .................................................................... 15

*In re Warner Communications Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986) ..................... 11

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   2011 WL 3352460 ...................................................................................... 15

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ..................................................................... 10

*Lo Re v. Chase Manhattan Corp.*,
   1979 WL 236 (S.D.N.Y. May 25, 1979) ................................................. 15

*Officers for Justice v. Civil Service Com.,*
    688 F.2d 615 (9th Cir. 1982) ............................................................. 10, 12

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ..................................................................... 14

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ................................................................... 15

*Wineland, et al. v. Casey's General Stores, et. al.,*
    267 F.R.D. 669 (S.D. Iowa 2009) ............................................................. 14

**State Cases**

*Dunk v. Ford Motor Company,*
    48 Cal.App.4th 1794 (1996) ................................................................. 10, 12

*Duran v. US Bank,*
    59 Cal.4th 1 (2014) ................................................................................... 13

**Statutes, Rules & Regulations**

29 U.S.C.
    § 151 ................................................................................................................ 4

California Labor Code
    § 2699 ......................................................................................................... 2, 9

Federal Rule of Civil Procedure
    23(e) ............................................................................................................... 9

Federal Rule of Civil Procedure
    30(b)(6) ........................................................................................................... 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez ("Plaintiffs") seek final approval of this $8,333,333 settlement between Plaintiffs and Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase"). The proposed settlement before this Court will dispose of this case.

On March 5, 2018, the Court granted preliminary approval of this settlement. (Dkt. 86.) The Preliminary Approval Order appointed KCC, LLC ("KCC") as the Settlement Administrator and approved the Class Notice and Claim Form. Plaintiffs hereby report that the Notice was mailed by the Settlement Administrator to all 2,060 members of the certified class and an interactive website was made available for class members to submit their completed claims and download the Notice. Per the Settlement Agreement, a reminder postcard was mailed to all class members who had not already submitted claim forms. As of this writing, fully 75.9% of the class or 1,564 Class Members, representing 82.7% of the possible workweeks, have submitted claim forms. *See* Declaration of Bernella Osterlund of Settlement Administrator KCC, LLC ("Osterlund Decl."), filed herewith, ¶ 9. Just one person has opted-out and no objections have been received. Osterlund Decl., ¶¶ 11-12. Class members can expect to receive on average $2,818.02 and the highest recovery is $7,244.37. Osterlund Decl., ¶ 13.

Plaintiffs respectfully submit that the favorable reaction of Class Members to the Settlement supports a finding that the settlement is fair, reasonable and adequate. As discussed more fully below, the proposed Settlement provides substantial economic benefits and is in the best interests of the Class. Plaintiffs request that the Court should grant final approval to the Settlement and authorize the parties to proceed with payment to the Class Members.

# PROCEDURAL STATEMENT

**A.     Litigation Through Preliminary Approval.**

On February 25, 2015, Plaintiff Mitra Erami filed the instant action against Chase in the Superior Court of California, Solano County, as a class action brought on behalf of exempt Assistant Branch Managers ("ABMs") in California alleging misclassification under California law. (Dkt. 1-1, p. 4.) On April 1, 2015, Chase removed the *Erami* action to the Eastern District of California. (Dkt. 1.)

In April 2015, Plaintiffs' counsel caused a newsletter to be sent to every Chase branch in California advising ABMs that an action had been filed and apprising them of the allegations. Declaration of Edward J. Wynne ("Decl. of Wynne.") This mailing generated responses from ABMs who were interviewed and also sent questionnaires to gather further information about their experiences. Decl. of Wynne. The interviews and questionnaire responses were subsequently turned into declarations. Decl. of Wynne. Subsequent newsletters were also sent out which generated additional evidence. Decl. of Wynne.

On May 7, 2015, Plaintiff filed a stipulation and proposed order to file a First Amended Complaint ("FAC") which added a cause of action under the Labor Code Private Attorney General Act of 2004 ("PAGA"), Labor Code § 2699, *et seq*. (Dkt. 7.) Also on May 7, 2015, Plaintiff filed an unopposed motion to transfer this action to the Northern District based on the action having been erroneously filed in Solano County rather than Alameda County. (Dkt. 8.) The stipulation was approved and Plaintiff filed the FAC on May 19, 2015. (Dkt. 10.) On June 4, 2015, Plaintiffs' motion to transfer was granted and the matter was transferred to the Northern District. (Dkt. 12.)

On July 7, 2015, Defendant filed a motion to transfer venue to the Central District of California which Plaintiff opposed. (Dkt. 18.) The basis of Defendant's motion was because the then pending consolidated action, *Hightower et al. v. JPMorgan Chase Bank, N.A.*, C.D. Cal. Case No. 11-CV-1802-PSG-PLAx. One of

the consolidated actions, *Henry v. JPMorgan Chase*, C.D. Case 2:15-cv-03895, alleged a sub-class of ABMs. The motion was granted on September 28, 2015 (Dkt. 32) and the matter was subsequently transferred to this Court. (Dkt. 43.)

Starting in October 2015, both sides propounded written discovery on each other. Plaintiff propounded interrogatories and requests for production on Defendant. In response to Plaintiffs' requests, Defendant produced over 9,600 documents and over 17,000 ESI documents. Decl. of Wynne.

On February 4, 2016, Plaintiff brought a motion to compel related to Defendant's responses to Plaintiffs' discovery. (Dkt. Nos. 48 and 49.) Plaintiffs' motion was granted in part and denied part. (Dkt. 58.) One of the issues in dispute concerned Plaintiffs' access to class contact information. Defendant was ordered to provide Plaintiff with contact information for 200 of the approximately 2,000 putative class members. (*Id.* at p. 10.)

Upon receipt of the class data, Plaintiff caused to be sent a questionnaire to putative class members and started the process of gathering declarations. Decl. of Wynne. Plaintiff ultimately obtained 118 declarations from putative class members. Decl. of Wynne. During the course of Plaintiffs' investigation with putative class members, Plaintiff determined that Defendant had effectively eliminated the ABM position in many branches and in so doing gave its employees a choice of taking a lesser role with less pay or accepting a severance package with a release of claims. Decl. of Wynne.

On February 25, 2016, Plaintiff noticed Defendant's deposition pursuant to Fed.R.Civ.P 30(b)(6).

On March 3, 2016, the parties filed their Joint Rule 26 Report. (Dkt. 59.) In the Report, Defendant asserted that many putative class members had executed arbitration agreements with a class action waiver. (*Id.* at p. 3.) Defendant also asserted that plaintiff Erami had no standing to bring the PAGA claim. (*Ibid.*) The parties also agreed to private mediation. (*Id.* at p. 7.) Also, on March 3, 2016, the

parties submitted a stipulation and proposed order granting Plaintiff leave to file a Second Amended Complaint ("SAC") which was granted on March 7, 2016. (Dkt. 62.) Plaintiffs' SAC added two additional plaintiffs to address Defendant's claim that Erami did not have standing to assert the PAGA cause of action. (Dkt. 63.)

On March 22, 2016, Plaintiffs served subpoenas related to arbitrations that Defendant had conducted. On March 25, 2016, Defendant served its objection to Plaintiffs' Notice of Taking Deposition of Defendant, whereupon the parties engaged in lengthy and protracted meet and confer sessions about the scope and timing of Defendant's deposition.

On April 11, 2016, the parties appeared for a scheduling conference where dates for the amendment of pleadings, filing motion for class certification and trial was set. (Dkt. 68.) The parties were also given an ADR referral. (Dkt. 69.)

On June 21, 2016, the parties filed a stipulation to continue the filing and hearing dates on class certification due to the parties' continued meet and confer efforts regarding Defendant's and Plaintiffs' depositions. (Dkt. 72.)

On July 21, 2016, named plaintiffs Sanchez and McGlynn filed separate complaints against Chase with the National Labor Relations Board ("NLRB") alleging that the class action waiver in Chase's arbitration agreements violated Section 7 of the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. Plaintiffs actively participated in the NLRB's prosecution of this claim by providing relevant documents and testimony. Decl. of Wynne.

On August 4, 2016, the parties filed a second stipulation and request to continue the hearing and briefing schedule on class certification due to Defendant's production of documents. (Dkt. 74.)

On September 16, 2016, the parties filed a stipulation and request to stay the action pending mediation which was granted. (Dkt. 77.) The parties thereupon agreed to mediation before well-respected mediator Mark Rudy. In preparation for mediation, Defendant provided Plaintiffs with key material facts regarding the

number of putative class members, number of workweeks, average compensation, and number of former employees. Decl. of Wynne. Also in preparation for mediation and, potentially, class certification, Plaintiffs hired Stanford University Professor Jon Krosnick, Ph.D. to conduct a survey on the ABMs with respect to their activities and hours. Decl. of Wynne. With Plaintiffs' assistance, Dr. Krosnick conducted his survey in December 2016. Decl. of Wynne.

On November 18, 2016, the Court issued an order closing the case pending the results of mediation and provided leave for any party to re-open the case at any time. (Dkt. 78.) On January 18, 2017, the parties conducted mediation with Mark Rudy. Decl. of Wynne. While no settlement was reached that day, the parties continued to negotiate. Specifically, in February 2017 Plaintiffs joined efforts with plaintiffs from two other consolidated cases pending in the Southern District of New York similarly alleging that ABMs had been misclassified under the FLSA and various state laws in an attempt to reach a global settlement: *Varghese v. JP Morgan Chase* and *Taylor et al. v. JP Morgan Chase*, USDC SD NY Consolidated Case No. 14 Civ. 1718 (PGG). Chase provided additional information related to the size of the respective cases in terms of workweeks, the number of workweeks covered by releases, and the number of workweeks covered by arbitration agreements. The data showed that of the approximate 240,000 workweeks covered by ABMs in California, 30% of those workweeks are covered by a release of claims and 56% of those workweeks were covered by an arbitration agreement. Decl. of Wynne.

In May 2017, the three plaintiff cases reached an agreement with Chase to settle all cases for $25 million with the *Erami* case receiving $8,333,333 of that amount. Decl. of Wynne. The *Erami* plaintiffs and Chase subsequently negotiated the essential terms of the settlement as memorialized in a Memorandum of Understanding executed on August 16, 2017. After receipt of the formal Settlement Agreement, the parties continued to negotiate the terms of the settlement.

As a part of the proposed settlement to include claims under the FLSA for

1    California ABMs only, Plaintiffs agreed to amend their complaint to add this cause

2    of action via stipulation filed December 11, 2017. (Dkt. 80.) The parties also filed a

3    Joint Application to reopen the case. (Dkt. 79.) The Court granted the parties'

4    requests. (Dkt Nos. 81 and 83.) The Third Amended Complaint was filed on January

5    12, 2018. (Dkt. 84.)

6    **B.    Settlement Administration.**

7         Plaintiffs' Motion for Preliminary Approval came on for hearing on March 5,

8    2018. (Dkt. 82.) The Court granted the motion finding that the proposed settlement

9    was preliminarily fair, reasonable and adequate and finding that the standards for

10   class certification in the context of a settlement were satisfied. The Court approved

11   Edward J. Wynne as class counsel, approved the named plaintiffs as representatives

12   of the class, approved KCC as the settlement administrator, approved notice and the

13   notice program to the class, and directed that notice be sent to the class consistent

14   with the parties' agreement. *Id.*

15        After receiving the class list from Defendant and performing a National

16   Change of Address database search for updated addresses, the Settlement

17   Administrator caused to be mailed the Notice Packet on April 13, 2018. Osterlund

18   Decl., ¶ 3. The mailing consisted of 2,060 individuals. *Ibid.* For any Notice Packet

19   that was returned, a skip trace was performed. Osterlund Decl., ¶ 4. The Settlement

20   Administrator received 95 returned Notice Packets and was able to locate 79 new

21   addresses and re-mailed the Notice Packet to those Class Members. *Id.* The

22   Settlement Administrator was not able to find addresses for 16 Class Members. *Id.*

23        The Settlement Administrator set up a toll-free number and telephone support

24   for Class Member inquiries. Osterlund Decl., ¶ 7. The Settlement Administrator

25   fielded calls from 300 class members. *Id.* In addition, the Settlement Administrator

26   established a dynamic website for Class Members where they could submit claims

27   online, read the Notice, or obtain contact information. Osterlund Decl., ¶ 6. Fully,

28   1,206 claims were submitted through the website with the balance being submitted

1  via regular mail. Osterlund Decl., ¶ 9.

2         On May 14, 2018, the Settlement Administrator mailed reminder postcards to

3  1,356 Class Members who had not returned Claim Forms by that time. Osterlund

4  Decl., ¶ 5. Plaintiffs' Counsel also placed calls and sent emails to all class members

5  they had contact information for to remind them of the claims deadline and answer

6  any questions they may have had. Decl. of Wynne.

7         As a result of these efforts, fully 75.92% of the class or 1,564 class members,

8  representing 82.73% of the possible workweeks, have submitted claim forms.

9  Osterlund Decl., ¶ 9. This amount also includes 4 Class Members who submitted late

10 claims but whose claims have been accepted per the terms of the Settlement

11 Agreement. *Id.* Just one person has opted-out and no objections have been received.

12 Osterlund Decl., ¶¶ 11-12.

13        After deductions for attorney fees and costs, class representative enhancement

14 awards, payment to the LWDA, the unused portion of the reserve fund, and claims

15 administration fees and costs, the Net Settlement Amount is $5,335,423.23 at this

16 time. Osterlund Decl., ¶ 13. This amounts to $19.74 per workweek. *Id.* Class

17 Members can expect to receive on average $2,818.02 and the highest recovery is

18 $7,244.37. Osterlund Decl., ¶ 13.

19                    <u>**SUMMARY OF SETTLEMENT TERMS**</u>

20        The details of the settlement are set forth in the Joint Stipulation of Class

21 Action Settlement. (Dkt. 82-2.) A summary is set forth below:

22 **A.    Settlement Fund**

23        In return for a release of claims, Defendant shall pay up to $8,333,333 as a

24 part of a claims made settlement with at least 65% of the Net Settlement Fund paid

25 to participating class members on a pro rata basis based on workweeks during the

26 settlement period which extends from the beginning of the statutory coverage of this

27 action through preliminary approval. The Net Settlement Fund is the gross

28 settlement amount less deductions for attorneys' fees and costs, class representative

enhancement awards, payment to the California Labor Workforce Development Agency, a reserve fund for disputed and late claims, employees' share of payroll taxes, and settlement administration fees and costs.

On March 30, 2018, Defendant caused the settlement fund to be transferred to KCC who deposited the amount in a federally-insured banking institution with all interest earned on the sum inuring to the benefit of the Class and Class Counsel. Oserlund Decl., ¶ 8. To-date, the sum has earned $8,118.88 in interest which will be apportioned between the Class, Class Counsel and Defendant. *Id.*

**B.    Class Definition**

There are a total of 2,060 individuals in the settlement class approved by the Court. Osterlund Decl., ¶ 2. The Court certified, for settlement purposes only, the following class: individuals employed by Chase in an exempt ABM position in California including Assistant Branch Manager, Assistant Branch Manager – Ops, Assistant Branch Manager – Sales, Assistant Branch Manager In-Store III, or Assistant Branch Manager In Store IV during the period from February 25, 2011 through March 5, 2018.

**C.    Class Representatives and Class Counsel**

The Court approved plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez as class representatives and appointed Edward J. Wynne, Wynne Law Firm, as class counsel.

**D.    Notice Procedure**

The Court appointed KCC as the Settlement Administrator. After updating the database provided by Chase through the National Change of Address database, the Settlement Administrator mailed the Notice and Claim Form to each class member including the URL of an interactive, password protected website. The interactive website allowed class members to complete and file a Claim Form online as well as view and download the Notice and Claim Form. Class members were also able to submit a claim form via regular mail. The Settlement Administrator sent out two

reminder cards through the claims period to any class member who had not submitted a claim. The Settlement Administrator also had live telephone support for any class member requests or inquiries. The cost of the notice and claims procedure has been capped at $33,000. Osterlund Decl., ¶ 14.

**E.     Plan of Allocation**

      **1.     Net Settlement Fund:** The Net Settlement Fund is $5,327,555. Osterlund Decl., ¶ 13. Payments to individual Class Members will be calculated and apportioned from the Net Settlement Amount based on the amount of workweeks during the settlement class period. Additionally, the parties have agreed on a reserve fund of $50,000 to cover any untimely, disputed or self-identified claims. The reserve fund will be available to any such Class Member up until one business day before the Final Approval hearing. To-date, the Administrator has received four late claims which claim $7,867.90 of the reserve fund. Osterlund Decl., ¶ 13. This brings the Net Settlement Fund to $5,335,423. *Id.* In addition, the fund will increase due to earned interest. Osterlund Decl., ¶ 8.

      **2.     Class Representative Enhancement Awards:** The named Plaintiffs are asking for $5,000 each for enhancements. This request is addressed *infra*.

      **3.     Attorneys' Fees and Costs:** Plaintiffs' counsel will be asking the Court to award 33% of the settlement fund or $2,777,777 for fees in addition to actual litigation costs of up to $55,000. Pursuant to the Court's order, Plaintiffs are submitting a separate memoranda addressing this request.

      **4.     LWDA payment:** The parties have agreed that the value of the PAGA claim is $100,000. Accordingly, 75% or $75,000, will be paid to the LWDA per Labor Code § 2699 (i) to settle this claim.

<u>**STANDARDS FOR FINAL APPROVAL**</u>

      Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate,

reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403, citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

**A.     The Settlement is Entitled to a Presumption of Fairness.**

A class action settlement is entitled to a presumption of fairness when:  (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and, (4) the percentage of objectors is small.  *Dunk v. Ford Motor Company,* 48 Cal.App.4th 1794, 1802 (1996) quoting *Officers for Justice v. Civil Service Com.,* 688 F.2d 615, 625 (9th Cir. 1982).

**1.     The Settlement was Reached Through Arm's-Length Negotiations.**

This settlement was the result of extensive, complicated, and protracted settlement negotiations. The parties agreed to engage in a mediation in September 2016. In preparation for the mediation, Defendant provided key material facts regarding the number of putative class members, number of workweeks, average compensation, and number of former employees. Also in preparation for mediation, and, potentially, for class certification, Plaintiffs hired Jon Krosnick, Ph.D. to conduct a survey on the ABMs with respect to their activities and hours. That survey was completed in December 2016.

The parties attended the all-day mediation facilitated by experienced mediator Mark Rudy on January 18, 2017. Perhaps underscoring the arm's-length nature of the settlement, no agreement was reached that day.

Adding an additional level of complexity, in February 2017, Plaintiffs then joined efforts with plaintiffs from two other consolidated cases pending in the Southern District of New York similarly alleging that ABMs had been misclassified

under the FLSA and various state laws in an attempt to reach a global settlement: *Varghese v. JP Morgan Chase* and *Taylor et al. v. JP Morgan Chase*, USDC SD NY Consolidated Case No. 14 Civ. 1718 (PGG). With all three cases being informally coordinated for purposes of settlement, a new round of settlement negotiations ensued with Defendant providing data relevant to all three cases. After active multi-party negotiations, the parties reached a global settlement for $25 million with California ABMs getting $8,333,333 of that amount. As such, there can be no serious doubt that the Settlement was reached through arm's-length bargaining.

### 2.    Substantial Investigation has Been Completed.

The stage of the proceedings and the amount of investigation completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 616-17 (N.D. Cal. 1979). Here, extensive discovery was conducted as outlined in the Motion for Preliminary Approval including, but not limited to, the exchange of thousands of pages of documents, contacting and obtaining declarations from over 100 class members, and conducting a scientifically designed and administered survey of the class members on the key liability and damages issues.

### 3.    Class Counsel is Experienced and Endorses the Settlement

As detailed in the Motion for Preliminary Approval, experienced counsel operating at arm's-length has weighed all of the risk factors and endorses the proposed settlement. The view of the attorneys actively conducting the litigation is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F.Supp. 482, 488 (E.D. Pa. 1985); see also, *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17.

Class Counsel has extensive wage and hour class action experience. *See,* Decl.

of Wynne. Thus, Class Counsel is experienced and qualified to evaluate the class claims and viability of the defenses. Class Counsel is satisfied that the recovery for each Class Member is fair and reasonable taking into consideration the potential recovery as compared to the actual recovery, the amounts received in other similar overtime class actions, the stage of the litigation when the settlement was reached, the risks inherent in any litigation and the specific risks in this case, and the reasonable tailoring of each Class Member's claim to the amounts received. This settlement is fair, adequate and reasonable and in the best interests of the Class.

### 4.      There Are No Objections to the Settlement.

Perhaps the most significant endorsement for the proposed settlement in this case is the fact that <u>not a single Class Member</u> has objected to any aspect of the proposed settlement. Class Members were specifically provided with the option of objecting to the terms of the Settlement and not a single objection has been received. The final factor in *Dunk* is that the percentage of objectors is small.  Here, there are no objections. In addition, just one person out of the 2,060 person class decided to opt-out. This Court should properly construe the lack of any expressed opposition to the Settlement as a very strong indicator that the Class Members view the settlement as fair, adequate and reasonable.

### B.      The Risk and Expense of Further Litigation

At the final approval hearing the Court may consider other relevant factors, such as the strength of the plaintiffs' case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant and the reaction of the Class Members to the proposed settlement. *Officers for Justice,* 688 F.2d at 624. "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, 48 Cal.App.4th at 1801.

1    The risks, complexity, and expenses of this action and the expected duration
2    of this litigation all weigh in favor of final approval. Given the uncertain nature and
3    ever-changing landscape concerning how class action cases such as this can properly
4    be certified and tried, Plaintiffs faced significant risk that, even assuming a judgment
5    in their favor, the judgment would be reversed and/or remanded on any number of
6    grounds by a reviewing court. For example, Plaintiffs faced significant risk that the
7    case would not be certified or would be decertified. Plaintiffs faced significant risk
8    that the releases would be enforced. Plaintiffs faced significant risk that the
9    arbitration agreements with class action waivers would be upheld. Indeed, the
10   Supreme Court's recent decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, (2018)
11   which found that the NRLA did not preclude arbitration agreements with class
12   action waivers – issued after this settlement was reached – further highlights the risk
13   that Plaintiffs faced and underscores the reasonableness of the proposed settlement.

14   As set forth in Plaintiffs' Motion for Preliminary Approval, Class Counsel's
15   personal experience in *Duran v. US Bank*, 59 Cal.4th 1 (2014) perhaps best
16   exemplifies the risk inherent in complex litigation. In sum, after getting the case
17   certified and prevailing at trial, the judgment was reversed by the Court of Appeal,
18   affirmed by the Supreme Court, and plaintiffs' second effort at certification in the
19   Superior Court was denied (and affirmed by the Court of Appeal) after 17 years of
20   hard-fought litigation.

21   Furthermore, the costs of litigating an action on behalf of over 2,000 potential
22   Class Members are massive, and Class Counsel would incur these costs at the
23   potential risk of recovering nothing for any of them. The costs already expended in
24   litigating this case already exceed $50,000. Assuming a class was certified by the
25   Court, enormous additional costs would have been incurred throughout the discovery
26   process in the potential taking of tens or even hundreds of depositions of Class
27   Members. Furthermore, if this case proceeded to trial and assuming a judgment in
28   favor of Plaintiffs, these costs would increase significantly throughout the appellate

1   process and potential re-trial of this action.

2   **C.   The Amount Offered in Settlement**

3           The gross settlement amount is $8,333,333. The net settlement amount is
4   $5,335,423. According to the Settlement Administrator, Class Members can expect
5   to receive on average $2,818.02 with the highest Class Members receiving
6   $7,244.37. These amounts will increase due to accrued interest. Plaintiffs note that
7   these amounts exceed the estimate from Preliminary Approval which the Court
8   noted and approved where Plaintiffs estimated the average payment would be $2,670
9   with the highest payment being $4,600. (Dkt. 82, p. 22.)

10          Further, these amounts compare very favorably to the *Hightower* settlement
11  this Court approved which had an average recovery of $200 per class member.
12  *Hightower v. JPMorgan Chase Bank*, C.D. Cal. Case No. 11-cv-01802-PSG (PLAx)
13  (Gutierrez, J.) (Dkt. 214). Given all the risks of continued litigation as identified
14  above, the amount offered in settlement is very reasonable.

15  **D.   The Requested Incentive Awards Should Be Approved.**

16          Plaintiffs request approval of incentive awards for the class representatives
17  Erami, McGlynn and Sanchez in the amount of $5,000 each. "Courts routinely
18  recognize and approve incentive awards for class representatives" for the services
19  they provided and the risks they incurred during the course of the class action
20  litigation. *Wineland, et al. v. Casey's General Stores, et. al.,* 267 F.R.D. 669, 677
21  (S.D. Iowa 2009); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir.
22  2009).

23          To evaluate proposed incentive awards courts often consider numerous factors
24  such as the risk undertaken in bringing the action, the personal difficulties
25  encountered by class representatives, the amount of time and effort spent by the
26  class representatives, the duration of the litigation and the benefits conferred to the
27  class as a result of the efforts of the class representatives.  *See, e.g.*, *In re Bluetooth
28  Headset Products Liability Litigation,* 654 F.3d 935 (9th Cir. 2011); *In re Mercury*

*Interactive Corp.,* 618 F.3d 988, 992 (9th Cir. 2010); *Gribble v. Cool Transports, Inc.*, 2008 WL 5281665 (C.D. Cal. 2008); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460 * 11.

As evidenced by the named Plaintiffs' declarations, these factors support the request awards. First, the named Plaintiffs have invested time and effort in these cases in order to confer substantial economic benefits for their co-workers. All three named Plaintiffs were extremely helpful to Class Counsel throughout all stages of this case, including pre-filing investigation, discovery, and the settlement process as detailed in the declarations they have submitted in support of this settlement. Decl. of Erami, ¶ 8; Decl. of McGlynn, ¶ 8; Decl. of Sanchez, ¶ 8. In addition, plaintiffs McGlynn and Sanchez filed complaints with the NLRB and actively participated in the NLRB investigation by, *inter alia*, sitting for an interview. Decl. of McGlynn, ¶ 8; Decl. of Sanchez, ¶ 8. Second, the named Plaintiffs are giving up significant rights that other Class Members are not giving up. For example, Defendant required that the named Plaintiffs sign a General Release rather than the limited release. In addition, all three Plaintiffs had to agree to not seek future employment with Defendant and agree to a confidentiality provision. Decl. of Erami, ¶ 9; Decl. of McGlynn, ¶ 9; Decl. of Sanchez, ¶ 9. These are significant rights other class members are not waiving.

In this case, the proposed incentive awards are reasonable compared to the average class member's recovery of approximately $2,800. A $5,000 incentive award is "presumptively reasonable." *Ching v. Siemens Indus.,* 2014 WL 2926210, at *9.

Finally, in *Lo Re v. Chase Manhattan Corp.,* 1979 WL 236 (S.D.N.Y. May 25, 1979), the court recognized that one of the facts that should be considered in determining that the incentive awards were fair was the fact that none of the absent class members had objected to these payments. *Id.* at *6. In the instant case, the

requested incentive awards were disclosed in the Notice sent to all potential Class Members and not a single Class Member objected to the incentive awards.

As a result, Plaintiffs submit that the requested incentive awards are fair and reasonable and should be approved.

### CONCLUSION

In light of the forgoing, Plaintiffs respectfully request that the Court grant the motion for final approval of the class action settlement and authorize payment to the class.

Dated:  August 10, 2018              WYNNE LAW FIRM

/s/ *Edward J. Wynne*
Edward J. Wynne
Attorneys for Plaintiffs