Edward J. Wynne  (SBN 165819)
ewynne@wynnelawfirm.com
WYNNE LAW FIRM
Wood Island
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
Telephone    (415) 461-6400
Facsimile     (415) 461-3900

Plaintiffs' Counsel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITRA ERAMI, MARIA MCGLYNN, BRITTANY SANCHEZ, individually and on behalf of other members of the general public similarly situated,<br><br>          Plaintiffs,<br>   vs.<br><br>JPMORGAN CHASE BANK, National Association,<br><br>          Defendant. | Case No.: 2:15-cv-07728-PSG-PLA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:  September 10, 2018<br>Time: 1:30 p.m.<br>Courtroom: 6A<br>Hon. Philip S. Gutierrez |

## **Table of Contents**

INTRODUCTION ........................................................................................................1

CLASS COUNSEL'S ATTORNEYS' FEES SHOULD BE APPROVED ............1

    A.    Plaintiffs' Request for Attorneys' Fees Is Evaluated Under a Deferential Standard. ...................................................................1

    B.    Plaintiffs' Request for Attorneys' Fees is Reasonable as a Percentage of the Common Fund.........................................................3

        1.    The Result Achieved .................................................................5

        2.    The Risk Involved in the Litigation..........................................6

        3.    The Skill Required and Quality of Work by Counsel ..............8

        4.    The Contingent Nature of the Fee ..........................................11

        5.    Awards Made in Similar Cases ...............................................12

        6.    No Objection from the Class and Support for the Representative Plaintiffs .........................................................14

    C.    Plaintiffs' Request For Attorneys' Fees Is Reasonable By A Lodestar Cross-Check...........................................................14

        1.    Class Counsels' Hourly Rates Have Previously Been Approved. ...............................................................................15

        2.    Class Counsel's Lodestar........................................................17

        3.    A Multiplier Is Appropriate....................................................18

CLASS COUNSEL'S COSTS SHOULD BE APPROVED.................................20

CONCLUSION......................................................................................................21

# Table of Authorities

## Federal Cases

*Alyeska Pipeline Service Co. v. Wilderness Society*,
  421 U.S. 240 (1975) ................................................................................. 3

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. July 2, 2013) .............................................. 4

*Bernal v. Davita, Inc.*,
  No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) ............................. 4

*Boeing Company v.Van Gemert*,
  444 U.S. 472 (1980) ................................................................................. 3

*Brecher v. CGMI*,
  S.D. Cal. Case 09-cv-1344 CAB (MDD) ........................................... 15

*Casida v. Sears Holding Corp.*,
  2012 WL 3260423 (E.D. Cal. Aug. 8, 2012) ........................................ 7

*Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec.
  Litig.)*,
  19 F.3d 1291 (9th Cir. 1994) ................................................................. 3

*Ching v. Siemens Industry, Inc.*,
  2014 WL 2926210 (N.D. Cal., June 27, 2014) .............................. 5, 14

*Craft v. County of San Bernardino*,
  624 F.Supp.2d 1113 (C.D. Cal. 2008) ............................................... 20

*Cuevas v. Citizens Financial Group, Inc.*,
  526 F. App'x 19 (2d Cir. 2013) ............................................................ 7

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .................................................................... 2

*Davis v. DS Waters of America, Inc.*,
  S.D. Cal. Case 14-cv-250-BAS ........................................................... 15

*Epic Systems Corp. v. Lewis*,
  138 S.Ct. 1612 (May 21, 2018) ........................................................... 11

*Gales v. Winco Foods*,
  2011 WL 3794887 (N.D. Cal. Aug. 26, 2011) ..................................... 7

*Glass v. UBS Fin. Serv., Inc.*,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...................................... 12

*Greko v. Diesel, U.S.A., Inc.*,
   2013 WL 1789602 (N.D. Cal. April 26, 2013) ........................................................ 4

*Hanlon v.Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................. 1

*Henderson, et al. v. JPMorgan Chase Bank*,
   C.D. Cal. Case No. 2:11-cv-03428-PSG-PLA ....................................................... 7

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................. 2

*Hightower v. JPMorgan Chase Bank*,
   C.D. Cal. Case No. 11-cv-01802-PSG (PLAx) ............................................... 6, 8

*Hwang v. JPMorgan Chase Bank, N.A.*,
   Case No. 11-cv-10782 (C.D. Cal. Aug. 16, 2012) ................................................ 8

*In Re Activision Sec. Litig.*,
   723 F. Supp. 1373 (ND. Cal. 1989) .................................................................... 12

*In re Apple Computer, Inc. Derivative Litig.*,
   No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov.
   5, 2008) ................................................................................................................. 2

*In re Atmel Corp. Derivative Litig.*,
   2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) ................................... 2

*In re Bluetooth*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................. 14

*In re Citigroup Inc. Securities Litigation*,
   S.D. New York, Lead Case 09 MDL 2070 (SHS), 1:09-cv-07359-SHS ............ 16

*In Re D. R. Horton, Inc.*,
   357 NLRB 2277 (2012), *enf. denied,* 737 F.3d 344 (5th Cir. 2013) ................... 11

*In re Immune Response Sec. Litig.*,
   497 F.Supp.2d 1166 (S.D. Cal. 2007) ................................................................ 14

*In re M.D.C. Holdings Sec. Litig.*,
   No. CV 89-0090, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990) ........ 2

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................................. 4F

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................... 3

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................. 4

*In Re Pacific Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................12

*In re Rite Aid Corp. Secs. Litig.*,
   396 F.3d 294 (3d Cir. 2005)....................................................................14

*In re Washington Pub.Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (1994)................................................................................14

*In Re Washington Public Power Supply System Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ..................................................................11

*In re Wells Fargo Loan Processor Overtime Pay Litigation*,
   2011 WL 3352460 (N.D. Cal., Aug. 2, 2011) ........................................14

*JPMorgan Chase Bank v. Jones*,
   No. 15-1176, 2016 WL 1182153 (W.D. Wash. Mar. 28, 2016)................8

*Kress v. PriceWaterhouseCoopers*,
   E.D. Cal. Case 2:08-cv-00965-TLN-AC .........................................13, 15

*Laguna v. Coverall North America*,
   753 F.3d 918 (9th Cir. June 3, 2014) .......................................................2

*Lapan et al. v. PVH Corp. et al.*,
   N.D. Cal. Case 13-cv-05006-LHK ..........................................................15

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. 1997) .........................................................12

*Miguel v. JPMorgan Chase Bank, N.A.*,
   2013 U.S. Dist. LEXIS 16865 (C.D. Cal. Feb. 5, 2013) .........................8

*Mills v. Auto-Lite Co.*,
   396 U.S. 375 (1970)..................................................................................3

*Morris v. Ernst & Young, LLP*,
   834 F.3d 975 (9th Cir. 2016), *vacated*, 894 F.3d 1093 (9th Cir. 2018)..............11

*Musgraves v. Sears Holding Mgmt. Corp.*,
   2012 WL 3222905 (C.D. Cal. July 19, 2012)...........................................6

*Patel v. Nike Retail Servs., Inc.*,
   2016 WL 1241777 (N.D. Cal. Mar. 29, 2016) .........................................7

*Paul, Johnson, Alston & Hunt v.Graulty*,
   886 F.2d 268 (9th Cir. 1989) ...................................................................3

*Pierce v County of Orange*,
   905 F.Supp.2d 1017 (C.D. Cal. 2012) ...................................................17

*Sarinana v. D.S. Waters of America, Inc.*,
   N.D. Cal. Case 3:13-cv-00905 EMC .........................................................13, 16

*Singer v. Becton Dickinson & Co.*,
   2010 U.S. Dist. LEXIS 53416 (S.D. Cal. Jun. 1, 2010) ......................................4

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................................3, 5

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................................2

*Steiner v. American Broad. Co.*,
   248 Fed.Appx. 780 (9th Cir. 2007)......................................................................19

*Stuart v. Radioshack Corp.*,
   2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010) .....................4, 12, 17

*Taylor et al. v. JP Morgan Chase*,
   S.D.N.Y. Consolidated Case No. 14 Civ. 1718 (PGG) ......................................11

*Thompson v. JPMorgan Chase Bank*,
   C.D. Cal. Case No. SACV 14-01181-JLS (JPRx)..................................................8

*Valdivia v Brown*,
   848 F.Supp.2d. 1141 (E.D. Cal. 2011) .................................................................17

*Van Vranken v. Atlantic Richfield*,
   901 F.Supp. 294 (N.D. Cal 1995) .........................................................................19

*Varghese v. JP Morgan Chase*,
   S.D.N.Y. Consolidated Case No. 14 Civ. 1718 (PGG) ......................................11

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) .....................................................................4, 12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ....................................................................passim

*Williams v. MGMPatheCommc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ................................................................................5

*Zackaria v. Wal-Mart Stores, Inc.*,
   2015 WL 2412103 (C.D. Cal. May 18, 2015)........................................................7

**State Cases**

*Aldo U.S. Wage & Hour Cases*,
   Orange County Superior Court, JCCP No. 4581 .................................................13

*Bello v. JPMorgan Chase Bank*,
   Case No. 37-2013-00075469-CU-WT-NC (San Diego Sup. Ct. June 4,
   2014) ......................................................................................................8

*Chau v. CVS RX Services, Inc.*,
   Los Angeles County Superior Court No. BC349224 ..........................19

*Duran v. U.S. Bank N.A.*,
   59 Cal.4th 1 (2014) .......................................................................8, 9

*Glendora Community Redev. Agency v. Demeter*,
   155 Cal.App.3d 465 (1984) ...............................................................20

*Harris v. CUSO Financial Services, Inc.*,
   San Diego County Superior Court Case 37-2015-4960-CU-OE-CTL...........13, 15

*In re Natural Gas Anti-Trust Cases*,
   J.C.C.P. Nos. 4221, 4224, 4226, and 4228 ........................................19

*In re Pharmaceutical Cases, I, II, and III*,
   J.C.C.P. Nos. 2969, 2971, and 2972 ..................................................20

*In re Ret. Cases*,
   2003 WL 22506555 (Cal. Ct. App. Nov. 4, 2003) ..............................19

*Jordan v. Dept. Motor Vehicles*,
   JAMS Ref. No. 1100040574 ..............................................................19

*Kashmiri v. Regents of U.C.*,
   San Francisco Superior Court No. CGC-03-422747 ...........................19

*Kholousi v. True Religion*,
   Marin County Sup. Ct. Case Civ-1302055 .........................................16

*Lee v. Activision Blizzard, Inc.*,
   Los Angeles County Superior Court Case BC 575664 ........................13

*Paparella v. JPMorgan Chase Bank*,
   Orange County Superior Court Case 30-2010-370146 ...............13, 16

*Sav-On Drug Stores, Inc. v. Sup. Ct.*,
   34 Cal. 4th 319 (2004) .................................................................9, 17

*Walsh v. Overton*,
   Alameda County Superior Court Case RG 13679913 .................13, 16

*Wershba v. Apple Computer, Inc.*,
   91 Cal.App.4th 224 (2001) ...............................................................19

Pursuant to the Court's order granting Plaintiffs' Motion for Preliminary Approval, Plaintiffs Mitra Erami, Maria McGlynn, and Brittany Sanchez ("Plaintiffs") hereby submit the following memorandum of points and authorities in support of Plaintiffs' Counsel's request for attorneys' fees and costs. (Dkt. 86.)

## INTRODUCTION

From the Maximum Settlement Amount of $8,333,333, Class Counsel hereby requests an award of $2,777,777 (33% of the total settlement) plus litigation expenses of $54,665.13. Class Counsel submits that the fee request is fair and reasonable under the percentage of recovery method given the overall result; the benefit provided to the Class; the substantial risks of this litigation; and the complexity of this case and issues presented. Likewise, Class Counsel submits that using the lodestar method as a cross-check confirms the fairness and reasonableness of the fee request. Plaintiffs note that the proposed settlement has received overwhelming support from the class with 76% of the class claiming 83% of the possible workweeks. Moreover, all of the Class Members were notified that Class Counsel would seek a fee of one-third of the Settlement Fund and not a single Class Member objected to that fee request. As a result, Class Counsel requests that the fee request be approved.

Plaintiffs incorporate by reference herein the facts and legal discussion set forth in the Motion for Final Approval submitted concurrently with this memorandum.

## CLASS COUNSEL'S ATTORNEYS' FEES SHOULD BE APPROVED

**A.  Plaintiffs' Request for Attorneys' Fees Is Evaluated Under a Deferential Standard.**

Courts have encouraged litigants to resolve fee issues by agreement. *Hanlon v.Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). This is consistent with the strong public policy of encouraging and approving non-collusive settlements, including those in class actions, and avoiding a "second major

litigation" arising from a request for attorneys' fees after the matter has been resolved. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *see also, In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090, 1990 U.S. Dist. LEXIS 15488, at \*12 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement…. including the amount of the fee... if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement.").

In considering unopposed fee applications, district courts must account for the fact that "the parties are compromising to avoid litigation." *Laguna v. Coverall North America*, 753 F.3d 918, 922 (9th Cir. June 3, 2014). Accordingly, the Ninth Circuit holds that "the district court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Id.* (*quoting Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003)). Thus, while the Court must conduct an independent inquiry into the reasonableness of the fee request, it should give substantial weight to the parties' agreement as to the reasonableness of the amount of attorneys' fees.

These considerations are particularly appropriate where, as here, the parties opened up negotiations for the settlement at arm's-length with the guidance of Mark Rudy, a well-respected mediator of wage and hour class actions. *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement); *In re Atmel Corp. Derivative Litig.*, 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."). At all times the settlement negotiations were adversarial and non-collusive, and the resulting

settlement of attorneys' fees, as a function of the overall settlement value, is likewise fair, reasonable, and free of collusion.

**B.     Plaintiffs' Request for Attorneys' Fees is Reasonable as a Percentage of the Common Fund.**

The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fee from the fund as a whole." *Boeing Company v.Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970). The common fund doctrine is a well-recognized exception to the general American rule that a litigant must bear its own attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257-58 (1975).

The common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v.Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are "easily met" where—as here—"each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'" *Id.* at 271, *citing Van Gemert*, *supra*, 444 U.S. at 479.

District courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method or the percentage method proposed here. *Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994). Notwithstanding that discretion, use of the percentage method is the "dominant" approach in common fund cases. *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

The Ninth Circuit has generally established 25% of a common fund as a "benchmark" award for attorney fees. *Vizcaino*, 290 F.3d at 1047. However, the "exact percentage [awarded] varies depending on the facts of the case, and **in most common fund cases, the award exceeds that benchmark**." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added). Within the Ninth Circuit, it is generally recognized that "it is common practice to award attorney's fees at a higher percentage than the twenty-five percent (25%) benchmark in cases that involve a relatively small – i.e., under ten million dollar ($10 Million) – settlement fund. *Greko v. Diesel, U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. April 26, 2013).

Indeed, district courts within this circuit routinely award attorneys' fees of approximately one-third of the common fund, particularly for wage and hour class action settlements. *See*, *e.g.*, *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. July 2, 2013) (awarding one-third percent in wage and hour class action); *Vasquez*, 266 F.R.D. at 491-92 (awarding one-third percent in wage and hour class action); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards); *Stuart v. Radioshack Corp.*, 2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Bernal v. Davita, Inc*., No. 5:12-cv-03255-PSG, *1-2 (N.D. Cal. Jan. 14, 2014) (awarding one-third of the settlement fund in wage-and-hour class action). Such awards are likewise routinely upheld by the Ninth Circuit. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million common fund).

And while the exact percentage depends on the facts of the case, the calculation of attorneys' fees is always a percentage of the *entire* potential benefit created by class counsel, rather than just the amount claimed against the fund. *See Williams v. MGMPatheCommc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Six Mexican Workers*, 904 F.2d at 1311 ("The Supreme Court has stated that attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members."). Accordingly, Plaintiffs' request for attorneys' fees in the amount of $2,777,777, or 33% of the $8,333,333 common fund, is consistent with established Ninth Circuit precedent.

The Court's determination of a fair and reasonable attorney fee must take into account all of the circumstances of the case, including:  1) the result achieved; 2) the risk involved in the litigation; 3) the skilled required and quality of work by counsel; 4) the contingent nature of the fee; and 5) awards made in similar cases. *Ching v. Siemens Industry, Inc.*, 2014 WL 2926210, at *7 (N.D. Cal., June 27, 2014); *Vizcaino*, 290 F.3d at 1048-50.

### 1.    The Result Achieved

The overall result and benefit to the Class from the litigation is generally the most critical factor in granting a fee award. *Ching*, 2014 WL 2926210, at *7. Here, the results achieved are exceptional.

First, the response by the Class is overwhelmingly positive. Fully 76% of the Class Members claimed approximately 83% of the total workweeks available. Defendant had negotiated a floor of 65% of the recovery and that metric was surpassed by a considerable measure. Relatedly, the overwhelmingly positive response by Class is demonstrated in the lack of a single objection to any aspect of the settlement – including the requested fee. Additionally, only one person out of 2,060 decided to opt-out of the settlement. These figures underscore that the result achieved was excellent.

Second, the amount received by the Class Members is significant. As

reported in the accompanying Motion for Final Approval, Class Members will receive on average $2,818.02 with some Class Members receiving up to $7,244.37. And these amounts will increase because of the interest earned on the Settlement Fund that Class Counsel negotiated for the benefit of the Class. Putting these figures in perspective, these amounts are **ten times higher** than the amount approved by this Court in the related case, *Hightower v. JPMorgan Chase Bank*, C.D. Cal. Case No. 11-cv-01802-PSG (PLAx), where class members received $200 on average.

### 2. The Risk Involved in the Litigation

The risks of litigation in this case were substantial. Defendant was alleging both the administrative and executive exemptions as affirmative defenses including the so-called "combination" exemption, i.e., a combination of both exemptions. In support of its defense on the merits, Defendant maintained that regardless of whether Class Members claim to have been engaged in non-exempt work most of the time, such activity was inconsistent with the realistic expectations of the position. While Plaintiff contends that the realistic expectations are to be primarily engaged in non-exempt work, Defendant pointed to various documents such as the job description, performance reviews, emails, and disciplinary notices to argue that the realistic expectation for ABMs was to be primarily engaged in exempt work. If such a determination was made, there is a possibility that Defendant could have prevailed. See, e.g., *Musgraves v. Sears Holding Mgmt. Corp.*, 2012 WL 3222905, at *1-2 (C.D. Cal. July 19, 2012). In *Musgraves*, the court granted the employer's motion for summary judgment on the plaintiff's exempt status despite plaintiff's dispute that he spent the majority of his time engaged in non-exempt work. The court found that the employer's expectation that the plaintiff spent most of his time engaged in exempt work was realistic and entered judgment accordingly. *Id.* at *8.

In addition to the merits of the claim, there is also the risk that the case

would not be certified. Many courts have denied class action status in cases involving assistant manager positions due to the variations in how assistant managers spend their time. *See, e.g., Patel v. Nike Retail Servs., Inc.,* 2016 WL 1241777 (N.D. Cal. Mar. 29, 2016) (denying class certification of misclassification claims on behalf of retail assistant managers); *Zackaria v. Wal-Mart Stores, Inc*., 2015 WL 2412103, at *16 (C.D. Cal. May 18, 2015) (finding that plaintiffs could not satisfy predominance requirements in misclassification case despite evidence that assistant managers were "classifie[d] uniformly as exempt" and "overall job expectations [we]re roughly identical"); *Casida v. Sears Holding Corp*., 2012 WL 3260423 (E.D. Cal. Aug. 8, 2012) ("The [blanket exemption] policies at issue here do not tell the Court with any specificity how AMs actually spend their time."); *Gales v. Winco Foods*, 2011 WL 3794887, at *10 (N.D. Cal. Aug. 26, 2011) ("Although [WinCo's uniform classification of AMs as exempt] gives the Court a general sense of the AM job . . ., it does not tell the Court with the requisite specificity how AMs actually spend their time."); *see also Cuevas v. Citizens Financial Group, Inc.*, 526 F. App'x 19, 21 (2d Cir. 2013) (vacating lower court's decision to certify misclassification claims on behalf of assistant branch managers under New York law). Indeed, this Court has denied certification of a case against this very Defendant involving tellers finding too much variation amongst the class. *Henderson, et al. v. JPMorgan Chase Bank*, C.D. Cal. Case No. 2:11-cv-03428-PSG-PLA, Dkt. No. 116, Order Denying Class Certification, at p. 13 ("[T]he Court is concerned about the manageability of a class of thousands of employees at hundreds of branches with different job responsibilities depending on their title, location, assignment, and other factors.").

An additional area of risk is the arbitration agreements Chase had its employees sign. Approximately 80% of the class has signed some version of Chase's arbitration agreement which contain class action and collective action waivers that repeatedly have been enforced by a number of courts including this

1   Court. *Bello v. JPMorgan Chase Bank*, Case No. 37-2013-00075469-CU-WT-NC

2   (San Diego Sup. Ct. June 4, 2014); *Hightower v. JPMorgan Chase Bank, N.A.*,

3   Case No. 11-cv-1802, Dkt. No. 140 (C.D. Cal. Jan. 28, 2014); *Miguel v.*

4   *JPMorgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 16865 (C.D. Cal. Feb. 5,

5   2013) (Gutierrez, J.); *Hwang v. JPMorgan Chase Bank, N.A.*, Case No. 11-cv-

6   10782 (C.D. Cal. Aug. 16, 2012); *Thompson v. JPMorgan Chase Bank*, C.D. Cal.

7   Case No. SACV 14-01181-JLS (JPRx); *JPMorgan Chase Bank v. Jones*, No. 15-

8   1176, 2016 WL 1182153 (W.D. Wash. Mar. 28, 2016). Thus, Defendant's

9   arbitration posed a substantial risk as evidenced by the orders identified above.

10       Beyond overcoming the arbitration agreements, achieving certification and

11   prevailing on the merits, Plaintiffs faced the risk of holding onto any favorable

12   judgment through appeal. This Counsel's personal experience in *Duran v. U.S.*

13   *Bank N.A.*, 59 Cal.4th 1 (2014) perhaps best exemplifies the risk that Counsel

14   undertook to deliver this result for the Class. Counsel herein was successful in

15   obtaining certification for that case and subsequently prevailed at trial after eight

16   years of litigation only to have the entire judgment and certification ultimately

17   reversed by the California Supreme Court after an additional five years of

18   litigation. The case was remanded back to the Superior Court where class

19   certification was denied and the subsequent appeal unsuccessful after 17 years of

20   active litigation. Thus, even prevailing at the trial court is no guarantee of

21   recovery especially against a large corporate defendant like Chase. In essence, the

22   risk Class Counsel assumed for the substantial benefit of the class was substantial

23   by any measure.

24       **3.    The Skill Required and Quality of Work by Counsel**

25       Effective management of this case required a high level of skill and

26   superior work-product. As evidenced by the declaration filed by Class Counsel, it

27   is respectfully submitted that Class Counsel has unique skills and qualifications in

28   the area of wage and hour class action litigation. Class Counsel has tried several

wage and hour class action cases which is extremely rare. Decl. of Wynne. Indeed, the first line of the *Duran* opinion confirms this fact, "*We encounter here an exceedingly rare beast: a wage and hour class action that proceeded through trial to verdict*." *Duran*, 59 Cal. 4th at 1. In the contested attorney fee motion in *Duran*, the trial court made the following finding with respect to Class Counsel's skill and experience in 2010:

> The Court finds that, Plaintiffs' principal counsel, Edward J. Wynne, is a highly skilled and experienced trial attorney, with extensive class action experience and extensive recognized expertise in California's overtime laws and the various exemptions employers use to try to avoid them. Based on the evidence before the Court including declarations submitted in support of Plaintiffs' Motion, the Court finds that Mr. Wynne is highly regarded among his peers for his skill, experience, and tenacity. The Court finds that given Mr. Wynne's experience, demonstrated skill, and reputation, his $640 hourly rate is well within the range of rates charged by and awarded to similarly experienced and qualified attorneys in this area. The Court also finds that Mr. Wynne's rate is substantially lower than the rates charged by his counterparts at large commercial firms.

Decl. of Wynne, Ex. 1, Order re Attorney Fees in *Duran*, p. 27.

While *Duran* is unquestionably a significant case in the areas of class certification, trial management, and wage & hour law, another equally significant case, *Sav-On Drug Stores, Inc. v. Sup. Ct.*, 34 Cal. 4th 319 (2004), is also another case prosecuted by Class Counsel herein further highlighting Class Counsel's skill and experience as noted by the trial court in *Duran*. Decl. of Wynne, Ex. 1, Order re Attorney Fees in *Duran*, p. 3

In this case, Class Counsel demonstrated his skill and experience by

positioning this case so that it would settle on beneficial terms to the class. Specifically, Class Counsel made the tactical decision to hire Prof. Jon Krosnick to perform a survey of Class Members for whom Class Counsel had contact information. This decision demonstrates Class Counsel's skill because, as is true in any survey, there are no guarantees the results would support the allegations. While Class Counsel was confident in the veracity of the complaint's allegations, until such time as the allegations were tested – in this case through a disinterested third-party – there was no way of knowing whether the limited evidence Class Counsel had was truly representative of the Class. As it turned out, the survey did confirm the allegations. As a result, Class Counsel is of the opinion that the survey proved to be significant evidence not only supporting the Plaintiffs' allegations on the merits but also supporting the allegations of class action. Class Counsel submits that this decision proved to be a significant factor in positioning the case on favorable terms to obtain the settlement that has been met with overwhelming support by the Class. Decl. of Wynne.

Effective litigation of this case also called for significant skill in the area of wage and hour law. Defendant alleges the executive, administrative and "combination" exemptions. The executive and, especially, the administrative exemptions are complicated exemptions with multiple prongs. The "combination" exemption is seldom encountered in practice and as a result there is a dearth of authority around this claimed affirmed defense. Navigating these complicated and interlaced exemptions requires significant skill which Class Counsel demonstrated throughout these proceedings.

Relatedly, Defendant had secured arbitration agreements with class action waivers. Class Counsel demonstrated significant skill by affirmatively attacking the agreements during the window of opportunity those agreements were vulnerable and capitalizing on that uncertainty to the benefit of the Class. Specifically, Class Counsel had his clients file charges with the NLRB which had

cast doubt on the enforceability of such agreements as a result of its decision in *In Re D. R. Horton, Inc.*, 357 NLRB 2277 (2012), *enf. denied,* 737 F.3d 344 (5th Cir. 2013) which was followed for a time in the Ninth Circuit pursuant to *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *vacated,* 894 F.3d 1093 (9th Cir. 2018). Class Counsel demonstrated exceptional skill by negotiating the settlement that is before this Court while the question of the enforceability of the class action waivers in Defendant's arbitration agreements was in doubt before the Supreme Court's very recent decision in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (May 21, 2018) which rejected the NLRB's position on class action waivers.

In addition, Class Counsel was faced with two competing class actions filed in the Southern District of New York: *Varghese v. JP Morgan Chase* and *Taylor et al. v. JP Morgan Chase*, S.D.N.Y. Consolidated Case No. 14 Civ. 1718 (PGG). While it is not uncommon in that situation to have the competing cases jockey for position, Class Counsel was able to effectively manage the relationship between the three firms and enter into global negotiations with Defendant which resulted in the settlement put before the Court. Decl. of Wynne

### 4.     The Contingent Nature of the Fee

Class Counsel took this case on a contingency fee basis. Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *In Re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

None of the named Plaintiffs have the financial means to pay Class Counsel on an hourly basis to prosecute this case. Thus, without the willingness of Class Counsel to take this case on a contingency fee basis, this case would not have been prosecuted and the Class would not have received anything.

This lawsuit has been pending for over three and one-half years. During that time, Class Counsel's office has put in approximately 1,100 hours on behalf of the

Class Members without any form of payment. Decl. of Wynne During that time, Class Counsel had to forego other cases and financial opportunities in order to prosecute this case on behalf of the Class Members. Decl. of Wynne Class Counsel's efforts to date have been without compensation of any kind, and the fee has been wholly contingent upon the result achieved. Decl. of Wynne

Class Counsel respectfully submits that given the risk of non-payment; the forfeiture of other business opportunities; and the lack of compensation for three and one-half years combined with the complexity of this case, the requested fee in this case is fair and reasonable.

### 5. Awards Made in Similar Cases

Class Counsel submits that the request for attorney fees in the amount of 33% of the common fund is justified as an upward departure from the benchmark of 25% on account of the complexity, the excellent results obtained, the risks undertaken, and the skill of the prosecution. The requested fee falls within the range of acceptable attorney fees in the Ninth Circuit for similar wage & hour class action. See, e.g., *Stuart v. Radioshack Corp.*, *supra,* 2010 WL 3155645 at *5 (33% in wage and hour case); *Glass v. UBS Fin. Serv., Inc.*, 2007 WL 221862 at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of a wage and hour class actions up to 35% of the claimed damages to be reasonable in light of the uncertainties involved in the litigation); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that a 33% is within the typical range of acceptable attorney fees in the 9th Circuit); *In Re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064 at *6-7 (N.D. Cal. 1997) (approving a fee of 33% of fund) *In Re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (ND. Cal. 1989) (32.8% of fund).

Other district and superior courts from the around the state who have first-hand knowledge of Class Counsel's skill, experience, and the results obtained for

other class members have found that an award of one-third for attorneys' fee is fair and reasonable. Decl. of Wynne. Some of those orders include the following:

● *Kress v. PriceWaterhouseCoopers*, E.D. Cal. Case 2:08-cv-00965-TLN-AC, April 19, 2018, Hon. Troy Nunley (33% fee awarded to Wynne Law Firm). Decl. of Wynne, Ex. 2A.

● *Harris v. CUSO Financial Services, Inc.*, San Diego County Superior Court Case 37-2015-4960-CU-OE-CTL, September 21, 2017, Hon Richard E. L. Strauss (33% fee awarded to Wynne Law Firm). Decl. of Wynne, Ex. 3A.

● *Lee v. Activision Blizzard, Inc.*, Los Angeles County Superior Court Case BC 575664, June 14, 2017, Hon. Maren E. Nelson (33% fee awarded to Wynne Law Firm). Decl. of Wynne, Ex. 4.

● *Walsh v. Overton*, Alameda County Superior Court Case RG 13679913, May 8, 2015, Hon. Wynne Carvill (33% fee awarded to Wynne Law Firm). Decl. of Wynne, Ex. 5A.

● *Sarinana v. D.S. Waters of America, Inc.*, N.D. Cal. Case 3:13-cv-00905 EMC, February 12, 2015, Hon. Edward M. Chen (33% fee awarded to Wynne Law Firm). Decl. of Wynne, Ex. 6A.

● *Paparella v. JPMorgan Chase Bank*, Orange County Superior Court Case 30-2010-370146, August 15, 2014, Hon. Robert J. Moss (33% awarded to Wynne Law Firm). Decl. of Wynne, Ex. 7A.

● *Aldo U.S. Wage & Hour Cases,* Orange County Superior Court, JCCP No. 4581, October 24, 2012, Hon. Steven L. Perk (33% awarded to Wynne Law Firm). Decl. of Wynne, Ex. 8.

Class Counsel submits that fee awards in other similar litigation of 33% – both prosecuted by Wynne Law Firm and others – demonstrate that an upward adjustment is customary and appropriate for this type of complex litigation and further supports the requested fee of one-third.

### 6.  No Objection from the Class and Support for the Representative Plaintiffs

There were no objections from any Class Member to the requested fee. Class Counsel submits that the lack of objection from the Class Members further demonstrates the reasonableness and fairness of Class Counsel's fee request. *See*, *In re Wells Fargo Loan Processor Overtime Pay Litigation*, 2011 WL 3352460, at *10 (N.D. Cal., Aug. 2, 2011); In *Ching, supra,* the court commented that "the lack of objection from the class after notice further demonstrates the reasonableness and fairness of Class Counsel's fee request. *Id.* at *8.

Finally, as evidenced by their declarations, the Class Representatives strongly support Class Counsel's Fee Request. Erami Decl., ¶¶ 14-16, McGlynn Decl., ¶¶ 14-16; Sanchez Decl., ¶¶ 14-16.

### C.  Plaintiffs' Request For Attorneys' Fees Is Reasonable By A Lodestar Cross-Check.

Plaintiffs' fee request is also reasonable based on the lodestar analysis as a final "cross-check on the percentage method." *In re Washington Pub.Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1296-98 (1994). Where the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Secs. Litig*., 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig*., 497 F.Supp.2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check."). The lodestar method is calculated by multiplying "the number of hours reasonably expended on the litigation … by a reasonable hourly rate." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011).

### 1.     Class Counsels' Hourly Rates Have Previously Been Approved.

In terms of the hourly rate, Class Counsel has been approved, in both federal and state courts, inside and outside of California, at the hourly rate of $750 since 2014. Decl. of Wynne. Likewise, Mr. Pickett has similarly been approved at the rate of $650 per hour since 2014 in a similar number of cases. Decl. of Wynne. Class Counsel has been approved at $750 per hour in the following actions:

- *Kress et al. v. PWC*, E.D. Cal. Case 2:08-cv-00965-TLN-AC

  Order Granting Final Approval, April 19, 2018 (Dkt. 434), Hon. Troy L. Nunley. Decl. of Wynne, Ex. 2A.

  Declaration of Edward J. Wynne, March 16, 2018 (Dkt. 425-4). Decl. of Wynne, Ex. 2B.

- *Harris v. CUSO Financial*, San Diego County Superior Court Case 37-2015-4960-CU-OE-CTL

  Order Granting Final Approval, September 21, 2017, Hon. Richard E. L. Strauss. Decl. of Wynne, Ex. 3A.

  Declaration of Edward J. Wynne, July 21, 2017. Decl. of Wynne, Ex. 3B.

- *Lapan et al. v. PVH Corp. et al.,* N.D. Cal. Case 13-cv-05006-LHK

  Order Granting Final Approval, January 21, 2016 (Dkt. 103), Hon. Lucy H. Koh. Decl. of Wynne, Ex. 9A.

  Declaration of Edward J. Wynne, January 13, 2016 (Dkt. 100). Decl. of Wynne, Ex. 9B.

- *Davis v. DS Waters of America, Inc.,* S.D. Cal. Case 14-cv-250-BAS

  Order Granting Final Approval, October 19, 2015 (Dkt. 67), Hon. Cynthia Bashant. Decl. of Wynne, Ex. 10A.

  Declaration of Edward J. Wynne, September 28, 2015 (ECF 61-8). Decl. of Wynne, Ex. 10B.

- *Brecher v. CGMI,* S.D. Cal. Case 09-cv-1344 CAB (MDD)

Order Granting Final Approval, February 6, 2015 (Dkt. 147), Hon. Cathy A. Bencivengo. Decl. of Wynne, Ex. 11A.

Declaration of Edward J. Wynne, November 7, 2014 (Dkt. 142-3). Decl. of Wynne, Ex. 11B.

- *Walsh v. Overton,* Alameda County Sup. Ct. Case RG 13679913

  Order Granting Final Approval, May 8, 2015, Hon. Wynne S. Carvill. Decl. of Wynne, Ex. 5A.

  Declaration of J.E.B. Pickett, April 15, 2015. Decl. of Wynne, Ex. 5B.

- *Sarinana v. DS Waters, Inc.,* N.D. Cal. Case 3:13-cv-00905-EMC

  Order Granting Final Approval, February 26, 2015 (Dkt. 134), Hon. Edward M. Chen. Decl. of Wynne, Ex. 6A.

  Declaration of Edward J. Wynne, February 2, 2015 (Dkt. 121). Decl. of Wynne, Ex. 6B.

- *Kholousi v. True Religion,* Marin County Sup. Ct. Case Civ-1302055

  Order Granting Final Approval, February 13, 2015, Hon. Paul Haakenson. Decl. of Wynne, Ex. 12A.

  Declaration of Edward J. Wynne, January 30, 2015. Decl. of Wynne, Ex. 12B.

- *Paparella v. JPMorgan Chase Bank,* Orange County Superior Court Case 30-2010-0370146,

  Order Granting Final Approval, August 25, 2014, Hon. Robert Moss. Decl. of Wynne, Ex. 7A.

  Declaration of Edward J. Wynne, August 1, 2014. Decl. of Wynne, Ex. 7B.

- *In re Citigroup Inc. Securities Litigation,* S.D. New York, Lead Case 09 MDL 2070 (SHS), 1:09-cv-07359-SHS

  Order Granting Final Approval, May 20, 2014 (Dkt. 60), Hon. Sidney

1    H. Stein. Decl. of Wynne, Ex. 13A.

2    Declaration of Edward J. Wynne, March 14, 2014 (Dkt. 55-7). Decl.

3    of Wynne, Ex. 13B.

4        Class Counsel submits that the rates for himself and Mr. Pickett are lower

5    than what could be requested as it customary that attorney's hourly rates will

6    increase each year, yet Class Counsel has not done so for over four years. *See,*

7    *e.g., Pierce v County of Orange*, 905 F.Supp.2d 1017, 1037-38 (C.D. Cal. 2012)

8    (recognizing annual increase in hourly rates of "5% or 10% or even more");

9    *Valdivia v Brown,* 848 F.Supp.2d. 1141, 1143-44 (E.D. Cal. 2011) (approving

10    increases up to 50% during two year period). Further, the rates requested are

11    consistent with the rates approved of in *Stuart v. Radioshack Corp., supra,* 2010

12    WL 3155645, for attorneys with similar skill and experience as Class Counsel. *Id.*

13    at \*6. In fact, the plaintiffs' attorneys in *Radioshack* were Class Counsel's co-

14    counsel in *Sav-On*. Decl. of Wynne.

15        **2.**    **Class Counsel's Lodestar**

16        Class Counsel has worked on this case for over three and one-half years.

17    During this time, Class Counsels' offices collectively invested 1,122.55 hours at

18    this point in time in prosecuting this case on behalf of the Class. Decl. of Wynne.

19    Class Counsel reasonably expects to incur an additional 35 hours in order to carry

20    out all the terms of the settlement. Decl. of Wynne. Class Counsel will be

21    spending this time on such activities as: preparing for and attending the hearing on

22    final approval; conferring with the Settlement Administrator and reviewing its

23    reports; communicating with the Plaintiffs; communicating with Class Members

24    prior to and after final approval on a variety of issues including, but not limited to,

25    the status of the settlement, status of their claim, explaining the settlement,

26    handling lost checks, and address updates; communicating with defense counsel;

27    resolving disputes; and, generally carrying out the terms and conditions of the

28    settlement. Decl. of Wynne. As such, Class Counsel's office will have invested

1,157.55 hours in prosecuting this case for the benefit of the class. Decl. of Wynne.

Accordingly, Class Counsel's lodestar is $730,377.50. The time spent and the fees incurred were reasonable and necessary for the successful prosecution of this case. Decl. of Wynne. Counsel's detailed time records were kept contemporaneously. Decl. of Wynne. Due to the length of time this case has been pending and the amount and type of activities that were needed to be performed, not all time was captured in Counsel's time records. Decl. of Wynne. Class Counsel estimates that up to 5% of the firm's time was not recorded. Decl. of Wynne. A detail of Class Counsel's time records is marked and attached to the Declaration of Edward J. Wynne as Ex. 14.

A summary of hours and lodestar by biller is set forth below:

| WYNNE LAW FIRM LODESTAR SUMMARY | | | |
|---|---|---|---|
| | Hourly Rate | Total Hours | Total Fees |
| Edward J. Wynne | $750.00 | 868.90 | $651,675.00 |
| J.E.B. Pickett | $650.00 | 38.35 | $24,927.50 |
| Heidi Hall (Paralegal) | $250.00 | 196.8 | $49,200.00 |
| Lesley Amberger (Paralegal) | $250.00 | 18 | $4,500.00 |
| Janice Berry (Legal Assistant) | $150.00 | .5 | $75.00 |
| | | 1,122.55 | **$730,377.50** |

## 3.   A Multiplier Is Appropriate.

In common fund cases, courts frequently apply multipliers to the lodestar to reflect the risks involved, the complexity of the litigation, and other relevant factors. *See Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases"). Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Id.*

Here, Class Counsel bore a particularly high contingent risk. Based on this risk, as well as the other relevant factors, the resulting multiplier of 3.67 on the lodestar cross-check is squarely within the range of multipliers that courts regularly approve as fair and reasonable. In *Vizcaino*, the Ninth Circuit affirmed a lodestar multiplier of 3.65, after analyzing a table of the most commonly applied multipliers. *Vizcaino*, 290 F.3d at 1051. This is within the "3-4 range [of] common" multipliers for sophisticated class actions. *Van Vranken v. Atlantic Richfield*, 901 F.Supp. 294, 298 (N.D. Cal 1995); *see also, Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) (multipliers can range from 2 to 4 or even higher); *In re Ret. Cases,* 2003 WL 22506555, at *8 (Cal. Ct. App. Nov. 4, 2003) (affirming 4.0 multiplier in determining statutory fees); *Steiner v. American Broad. Co*., 248 Fed.Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65).

Numerous courts have found reasonable multipliers well-above the multiplier Class Counsel seeks here. For instance:

- In *Jordan v. Dept. Motor Vehicles*, JAMS Ref. No. 1100040574, Arbitration Award and Decision, dated April 14, 2004, a panel of three arbitrators, including retired judges Daniel Weinstein and Charles Legge and retired Justice Edward J. Wallin, applied a **5.0** multiplier. Decl. of Wynne, Ex. 15.

- In *Chau v. CVS RX Services, Inc.,* Los Angeles County Superior Court No. BC349224, a **3.8** multiplier was applied in a wage and hour class actions. Decl. of Wynne, Ex. 16.

- In *Kashmiri v. Regents of U.C.*, San Francisco Superior Court No. CGC-03-422747, the court approved a **3.7** multiplier to counsel's lodestar. Decl. of Wynne, Ex. 17.

- In *In re Natural Gas Anti-Trust Cases,* J.C.C.P. Nos. 4221, 4224, 4226, and 4228, **4.5** and **3.32** multipliers were applied, for total fee of $50

million; in fact, the court described the 3.32 multiplier as "extremely low." Decl. of Wynne, Ex. 18.

● In *In re Pharmaceutical Cases, I, II, and III,* J.C.C.P. Nos. 2969, 2971, and 2972, a **5.23** multiplier was applied. Decl. of Wynne, Ex. 19.

● In *Glendora Community Redev. Agency v. Demeter,* 155 Cal.App.3d 465 (1984), a fee that effectively included a **12** multiplier was affirmed.

● In *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1125 (C.D. Cal. 2008), the court awarded a **5.2** multiplier; as the court noted, "there is ample authority for such awards resulting in multipliers in this range or higher" collecting cases with multipliers ranging from 4.5-19.6.

Here, the application of a 3.67 multiplier is warranted given the significant results achieved for the Class and the substantial risks and complexity of the litigation, as higher multipliers are regularly approved in similar cases. Thus, the lodestar cross-check demonstrates that the $2,777,777 fee is fair and reasonable.

## CLASS COUNSEL'S COSTS SHOULD BE APPROVED

Class Counsel requests that the Court grant final approval to Class Counsel's request for reimbursement of actual costs incurred in prosecuting this action. Class Counsel's out-of-pocket expenses total $54,665.13 which includes projected future costs of $610 incurred for courier and travel expenses for the instant hearing. Decl. of Wynne, Ex. 20.

The requested costs of $54,665.13 were reasonably incurred and no Class Member has objected to the requested costs. Decl. of Wynne. A summary of my firm's actual costs are as follows:

| Cost Type | Total Amount |
| --- | --- |
| Advertising | $471.76 |
| Document Copies\Download | $881.17 |
| Expert Fees | $31,973.79 |
| Filing Fee | $435.00 |
| Legal Research | $3,412.85 |
| Office Supplies | $24.96 |

| Postage and Delivery | $13.60 |
|---|---|
| Postage\Courier | $1,446.59 |
| Process Serving | $37.95 |
| Professional Fees | $6,250.00 |
| Research | $1,696.90 |
| Travel\Meals\Auto | $8,020.56 |

**$54,665.13**

All of the expenses were reasonably incurred in prosecuting the case and are reasonable in their amount. As a result, Class Counsel requests that the Court approve reimbursement of $54,665.13 for litigation expenses.

## CONCLUSION

In light of the forgoing, Plaintiffs respectfully request that the Court award the requested attorney fees in the amount of $2,777,777 and costs in the amount of $54,665.13.

Dated:  August 10, 2018                    WYNNE LAW FIRM


                                           /s/ *Edward J. Wynne*
                                           Edward J. Wynne
                                           Class Counsel